# UNITED STATES DISTRICT COURT
# FOR THE SEVENTH CIRCUIT
# HAMMOND DIVISION

FILED

JUL 24 2014

ROBERT HOLLAND,                      )
    Plaintiff – Appellant        )        ROBERT N. TROVICH, Clerk
                                 )        U.S. DISTRICT COURT
                                 )        NORTHERN DISTRICT OF INDIANA
VS.                                  )        District Court Case No.: 2:13-CV-00491
                                 )
CERBERUS CAPITAL                     )
MANAGEMENT, LLP, et al,              )
    Defendants – Appellees.       )

## RESPONSE TO THE MOTION TO DISMISS

### FILED BY THE BOSAK MOTORS DEFENDANTS

Comes now the Plaintiff Robert Holland and files this Response to the Motion to Dismiss

Filed by the Bosak Motors Defendants pursuant to FRCP 12(b)(6).  In support of this Motion the

Plaintiff Robert Holland states the following:

**DISCUSSION**

It appears that the attorney for the Bosak Defendants, James Buchholz, simply copied and

pasted part of the motion to dismiss filed by the Cerberus Defendants.(DE #29)  The only new

issue is that Mr. Buchholz erroneously claims that there is a "same action pending in another

state court" (Bosak Motion to Dismiss P.5) involving Holland and Bosak.  Mr. Buchholz cites

Cause No. 45D09-0904-SC-01180, a small claims matter (Bosak Motion to Dismiss bottom of

P.4) that is not pending and not relevant to this RICO lawsuit.  In its totality, the Motion to

Dismiss Filed by the Bosak Motors Defendants is an insufficient defense, **redundant,**

immaterial, impertinent, and **scandalous** interposed for the purpose of delay.  However, the

Plaintiff will address the pernicious defenses cited in the motion to dismiss.

**PLAINTIFF'S ALLEGATIONS PERTAINING BOSAK MOTORS (P. 2)**

Please see the entire complaint. (DE #1).

**STANDARD OF REVIEW (P. 2)**

1

The standard of review for a Rule 12(b)(6) **motions to dismiss** is de novo. We construe the complaint in the light most favorable to the plaintiffs, accepting as true all well-pled facts alleged, taking judicial notice of matters within the public record, and drawing all reasonable inferences in the plaintiffs' favor. See *General Electric Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1080-81 (7th Cir. 1997) (permitting courts to take judicial notice of matters of public record without converting a Rule 12(b)(6) motion into a motion for summary judgment). Pro Se complaints are liberally construed.

**ARGUMENT (P.2)**

The Plaintiff Robert Holland alleges that Bosak Motors Defendants violated 18 U.S.C. §§ 1962(a), (c) and (d).  (DE #1)

**ANALYSIS**

**Association-in-Fact Enterprise Under Sections 1962(c)**

"To state a claim under § 1962(c), a RICO plaintiff must show the '(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity.'" *Richmond v. Nationwide Cassel L.P.*, 52 F.3d 640, 644 (7th Cir. 1995) (quoting *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496, 87 L.Ed.2d 346, 105 S.Ct. 3275 (1985)) cited in Crissen vs. Gupta, 2:12-CV-0355-JMS, 2014 WL 301615 (S.D. Ind.).

**The Conduct (or Participation)**

Holland has alleged and demonstrated that the Bosak Defendants, i.e., the Bosak Motors Auto Dealership, Mr. & Mrs. Skip Bosak (Owners of Bosak Motors Auto Dealership), Jonathan Schultheis (General Manager Bosak Motors), Jonathan Jeffries (Service Manager Bosak Motors)

and Mike Grzbowski (Salesman Bosak Motors) each "conduct[ed] or participate[d], directly or indirectly, in the conduct of such enterprise's affairs." 18 U.S.C. § 1962(c). The Supreme Court has explained what it means to conduct or participate in the conduct of an enterprise. To be liable, one must "have some part in directing" the affairs of the enterprise. *Reves v. Ernst & Young,* 507 U.S. 170, 179, 113 S. Ct. 1163, 122 L. Ed. 2d 525 (1993). The Seventh Circuit has explained that "simply performing services for an enterprise, even with knowledge of the enterprise's illicit nature, is not enough to subject an individual to **RICO** liability under § 1962(c); instead, the individual must have participated in the operation and management of the enterprise itself." *Goren,* 156 F.3d at 728 but see Indiana Civil RICO, *Keesling v. Beegle*, 880 N.E.2d 1202, 1206-08 (Ind. 2008). ) Each Defendant "conduct[ed] or participate[d], directly or indirectly, in the conduct of such enterprise's affairs." 18 U.S.C. § 1962(c).

Mr. & Mrs. Skip Bosak were the CEOs and Owners of Bosak Motors Auto Dealership, owned, directed and controlled the the Bosak Motors Auto Dealership, including sales, repair service and its operations. In addition, Mr. & Mrs. Skip Bosak given the Chrysler dealership license were responsible for the dealerships compliance with applicable law, its policies and interaction with directives from Chrysler, Chrysler Financial, LLC, including all mail, wire and bank transfers. (DE #1 P. 13-16 Par. 51-66 and P. 17-22 Par. 67-117)

Jonathan Schultheis as General Manager Bosak Motors reported to Mr. & Mrs. Skip Bosak and was responsible for the overall daily operating performance of the Bosak Motors Auto Dealership including including sales, sales financing, repair service and its overall operations which include all mail, wire and bank transfers. Mr. Schultheis took part in the sales presentation and financing of the Chrysler 300 and the warranty. Mr. Schultheis is

responsible for dealership compliance with applicable laws, setting and establishing dealership policies and staff training and all correspondence sent to customers from the auto dealership. (DE #1 P. 15 Par. 56, P. 13-16 Par. 51-65, P.16-22 Par. 67-117)

Jonathan Jeffries as Service Manager Bosak Motors is responsible for maintenance and repair employees and services provided by the Bosak Dealership including but not limited to invoicing, receipt of monies, representations regarding service to customers and mail distributed to potential customers. The false representations made to Holland by Mr. Jeffries breached the warranty contract and contract to repair causing Holland undue hardship. (See (DE #1 P. 13-16 Par. 51-66, P.16-22 Par. 67-117)  In addition, Mr. Jeffries as part of the scheme to defraud sent mail to Holland in furtherance of the scheme just prior to his repair service on February 24, 2009. (See DE #32 Exhibit 4 Mail from Jonathan Jeffries Bosak Repair Service)(Mail Fraud).  Even though the repairs were not provided pursuant to the warranty, Holland could not receive his car unless payment was made. (Extortion)  Mr. Jeffries was directly involved in the racketeering activity on or about October 27, 2007 and February 26, 2009 to March 27, 2009 and the conspiracy. (DE #1 P. 13-16 Par. 51-66, Par. 56 and P. 17-22 Par. 67-117, Par. 91)

Mike Grzbowski as Salesman Bosak Motors along with Jonathan Schutheis made false representations regarding the Chrysler 300 and its warranties and the financial condition of Chrysler. (DE #1 P. 15 Par. 56, P. 13-16 Par. 51-65, P.16-22 Par. 67-117)  In addition, Mr. Grzbowski as part of the scheme to defraud provided advertising materials from the Bosak Dealership Offices and sent Holland correspondence in the mail prior to his purchase of the vehicle. Mr. Grzbowski was directly involved in the racketeering activity on or about October 27, 2007 and February 26, 2009 to March 27, 2009 and the conspiracy. (DE #1 P. 13-16 Par.

4

51-66, Par. 56 and P. 17-22 Par. 67-117, Par. 91)   Finally, **the titles of each one of these defendants is given indicating there role and function in the conspiracy.** (DE #1 Par. 15-19)

**The Enterprise**

The Bosak Defendants argue, from different angles, that the alleged **enterprise** was not sufficiently plead.  Specifically, Defendants argue that "Plaintiff's Complaint has failed to demonstrate the existence of any enterprise" and any enterprise pleaded lacks structure pursuant to Boyle. (Motion to Dismiss P. 3)  In response, the Plaintiff asserts that he has sufficiently plead that there is an **enterprise** that it has a structure.  The **RICO** statute defines "**enterprise**" as including "any individual, partnership, corporation, association, or other legal entity, and *any union or group of individuals associated in fact although not a legal entity*." 18 U.S.C. § 1961(4) (emphasis added). The Supreme Court reads this definition quite broadly. *See **Boyle** v. United States*, 556 U.S. 938, 944-45, 129 S. Ct. 2237, 173 L. Ed. 2d 1265 (2009). In **Boyle** the Court held that an "association-in-fact **enterprise**" has just three elements: "a purpose," "relationships among those associated with the **enterprise**," and "longevity sufficient to permit these associates to pursue the **enterprise's** purpose." *Id.* at 946; *see also Jay E. Hayden Found. v. First Neighbor Bank, N.A.*, 610 F.3d 382, 389 (7th Cir. 2011) ("[T]he alleged **enterprise** in this case had purpose and relationships and it certainly had 'longevity,' and if ***Boyle*** is taken at face value[,] nothing more is required to make a conspiracy a **RICO enterprise**.").(DE #1 P. 30-31 Par. 183-185)

In addition the contacts between the Defendants were not just incidental contacts. Compl. Par. 42.  The following language applies to the instant case and is taken from a footnote in ***Boyle***,

5

"It is easy to envision situations in which proof that individuals engaged in a pattern of racketeering activity would not establish the existence of an **enterprise.** For example, suppose that several individuals, *independently and without coordination*, engaged in a pattern of crimes listed as **RICO** predicates—for example, bribery or extortion.  Proof of these patterns would not be enough to show that the individuals were members of an **enterprise.** 556 U.S. at 947 n.4 (emphasis added). Id.  **But here, the defendants' course of conduct, viewed in the light most favorable to the verdict (Plaintiff), was neither independent nor lacking in coordination. Together the defendants operated auto dealerships, sharing bank accounts, health insurance, and employees.  They transferred money back and forth with some frequency, referred customers to each other, and sold vehicles.** Cited in UNITED STATES OF AMERICA vs. AMIR HOSSEINI, 679 F.3d 544 (7th Cir. 2011) (DE #1 P. 12 par. 42, P. 30 par. 183-185)   <u>**These statements refer to all the Defendants in the instant complaint.**</u> Id.

This evidence was easily sufficient to permit a reasonable jury to conclude that the alleged **RICO enterprise** had a purpose (P. 30 Par. 183 - profiting through unreported acts of fraud in auto sales to customers), relationships (P. 30 Par. 184 - dealerships' interlocking relationship), and longevity (P. 31 Par. 185 - 2007 to date).  Under ***Boyle*** the evidence was easily sufficient to establish a **RICO enterprise.**  In this matter, Plaintiffs have alleged an intricate structure that more than meets the hierarchical requirement of a **RICO enterprise,** identifying which defendants own and operate the others and how each named defendant fits into the hierarchy.

**The Racketeering Activity**

**The Bosak Defendants state that the "Plaintiff did not plead with specificity any act of racketeering" citing the Compl. Par. 65 and 116. (Motion to Dismiss P. 4)** This simply is

not true. **All the fraudulent transactions with corresponding receipt of moneys, in the instant case, <u>constitute money laundering</u> - are proceeds from an unlawful activity intended to conceal the source of these proceeds and make them appear legitimate.** UNITED STATES OF AMERICA vs. AMIR HOSSEINI, 679 F.3d 544, (7th Cir. 2011).[1] The Plaintiff Robert Holland has sufficiently stated at least **5 predicate acts of racketeering** - money laundering against the Defendants. (DE #1 P. 31-32 Par. 186)   The Defendants knew about these acts of money laundering, acted in a coordinated and concerted fashion, benefitted from these acts of money laundering and ratified the other defendants conduct.  This would incorporate all the schemes in the complaint and liability based upon many different theories, i.e., agency, ratification, aiding and abetting, respondeat superior (vicarious liability), direct liability, and conspiracy theory. Id. The allegations in Holland's complaint suggest that the **RICO** defendants engaged in activities that constitute **"specified unlawful activity"** within the meaning of the **money laundering** statute.

A civil plaintiff asserting a federal **RICO** claim must establish that the **enterprise** in question committed at least two predicate acts of racketeering activity occurring within ten years of each other. *See* 18 U.S.C. § 1961(5); *DeGuelle v. Camilli*, 664 F.3d 192, 199 (7th Cir. 2011).

The acts of racketeering committed by the Bosak Defendants were not just garden variety fraud but were schemes to defraud furthered by the use of the mails.  **The predicate acts of racketeering include but are not limited to mail fraud, wire fraud, bank fraud, money laundering, extortion, corrupt business influence and conspiracy.[2] The acts of**

---

[1] Hosseini discusses money laundering under the "promotion" and "concealment" versions of money laundering and the proof required.

[2] Conspiracy is considered a seperate act of racketeering pursuant to Indiana Civil RICO. (DE #1 P. 31 Par. 186.  The Bosak Defendants were involved in at least 4 acts of racketeering activity.

**racketeering activity include 1) Chrysler and Bosak Motors fraudulent inducement to**
**purchase the Chrysler 300 and extended warranty, 2) Chrysler and Bosak Motors**
**breach of warranty contract and contract to repair, 3) the wrongful repossession of the**
**Chrysler 300 by Bull Dog Towing at the direction of Chrysler Financial, LLC, 4) the**
**unlawful collection and attempts to collect a debt 5) a scheme(s) to defraud through the**
**use of the mail and 6) the conspiracy.** *Jaguar Cars, Inc. v. Royal Oaks Motor Co.*, 46 F.3d
258, 270 (3d Cir. 1995) cited in American Auto. Accessories, Inc. v. Fishman, No. 98-
1266, UNITED STATES COURT OF APPEALS FOR THE SEVENTH CIRCUIT, 175 F.3d
534; 1999.

1. On or about October 1, 2007 - Fraudulent inducement to purchase vehicle and warranty
   (receipt of money through financing), mail fraud, wire fraud and bank fraud (DE #1 P.
   13-16 Par. 51-65, P.16-22 Par. 67-117)

2. On or about February 26 (DE #1 P. 18 Par. 81 and DE #32 tow receipt) to March, 27,
   2009 (DE #32 Bosak Repair Invoice) - Bad faith Breach of Contract to Repair, mail
   fraud, wire fraud, bank fraud omitted extortion (extortion explained but not stated) work
   not performed pursuant to contract but held car unless payment made (DE #1 P. 20-21
   Par. 105 and 113, P.16-22 Par. 67-117)

3. Fraudulent representations related to breach of contract to repair (DE #1 P.16-22 Par. 67-
   117)(Also see DE #32 Exhibit 4 Bosak Repair Service mail sent by Jonathan Jeffries
   (Bosak Repair Service Manager) on 02/24/09 just before tow for repair)

4. Bad faith Breach of Warranty - no repair pursuant to warranty, no new Chrysler part
   provided, no rental car or replacement new car (if over 30 days can not repair pursuant to
   Indiana Law a new car must be provided)(DE #1 P. 13-16 Par. 51-65, P.16-22 Par. 67-

117)

5. Fraud related to Warranty – deceptive, misleading misrepresentations made about repair, part and rental car (DE #1 P. 13-16 Par. 51-65, P.16-22 Par. 67-117)

6.  Bad Faith Breach of Sales Contract – car not operable over 30 days no other vehicle provided  (DE #1 P. 13-16 Par. 51-65, P.16-22 Par. 67-117)

7. Fraud related to breach of (installment) sales contract - deceptive, misleading misrepresentations about car replacement (DE #1 P.16-22 Par. 67-117)

8. Fraud related to breach of (installment) sales contract - inducing last payment DE #1 P. 13-16 Par. 51-65, P.17-22 Par. 67-117)

9. Fraud related to breach of (installment) sales contract – (robbed of car even though payments made)

10. Fraud related to unlawful attempts to collect debt and credit reporting (DE #1 P. Par. )

Any of these alleged offenses would be enough — if proven — to constitute a predicate act. See 18 U.S.C. 1961(1)(B), (D) and/or Indiana Civil RICO.

**The Mail and Wire Fraud was stated with particularity**

Racketeering activity includes a number of indictable offenses, including mail and wire fraud. 18 U.S.C. § 1961(1). The elements of **mail fraud** under 18 U.S.C. § 1341 and wire fraud under 18 U.S.C. § 1343 are: (1) the defendant's participation in a **scheme to defraud**; (2) defendant's intent to defraud; and (3) defendant's use of the mails or wires in furtherance of the fraudulent scheme. *United States v. Radziszewski,* 474 F.3d 480, 484-485 (7th Cir. 2007). It suffices if the defendant acted with knowledge that use of wires or mail would occur in the ordinary course of business or if the use was reasonably foreseeable. *United States v. Ratliff-White,* 493 F.3d 812, 818 (7th Cir. 2007).  The sales and repair staff use the mail and wire quite

often in their contacts with customers and potential customers. The plaintiff has described the purported fraud and the mailings used in connection with it.

Holland for Compl. ¶ 65, names Mike Grzbowski and other unknown staff at Bosak Motors (DE #1 par. 56) acting on behalf of Bosak Motors, Chrysler and Chrysler Financial, LLC, Chrysler marketing materials and advertisements (DE #1 par. 57) occurring on or about October 1, 2007 in the Bosak Motors Offices (DE #1 par. 65) and Chrysler Financial, LLC, offices (DE #1 par. 65) The Defendants know that the financing process requires communications with the Chrysler Financial, LLC,(DE #1 par. 53, 61, and 65) offices via mail, telephone, fax and/or electronic means.(mail and wire fraud) Also, it is the routine practice of Bosak Motors to follow up sales, potential sales and repair services with correspondence. The sale in question took more than one day but was consummated on the day in question. (Also, see DE #46 Bosak Motors Service Manager Jonathan Jeffries sends periodically in the mail representations about the quality of its repair services; Holland does not know all the dates of all mailings, again this information is in the possession of the Defendants) Finally, the Cerberus Defendants omit any reference to the bank fraud and money laundering committed by the Defendants which require mail and/or wire fraud to be completed.(DE #1 par. 65)

Holland for Compl. ¶ 116 Compl. names Chrysler and Bosak motors sales and repair staff (DE #1 p. 18 par. 77), Troy (De #1 p. 18 par. 87), Mike Grzbowski (De #1 par. 92-93), receptionist (DE# 1 par. 97), Jonathan Jeffries (DE #1 par. 99) and gives the approximate dates of the communications (DE #1 par. 81, 87, 88, 89, 90-93, 94-103, 105, 106, 116) communications made to and in the Bosak Motors Offices.

Holland for ¶ 174 names employees of Bull Dog Towing, Kimberly Johnson, Chrysler Financial, LLC, agents and/or assigns  (DE #1 par. 156, 159, 163, and 171 respectively) on or about June 28 and July 3, 2010, in the Chrysler Financial offices.

Holland properly makes **RICO** claims of predicate acts of **mail fraud** and **wire fraud** are required to meet the heightened **pleading** requirements of Rule 9(b). Fed. R. Civ. P. 9(b); *Jepson, Inc. v. Makita Corp.*, 34 F.3d 1321, 1328 (7th Cir. 1994)  **Robert Holland gave his personal knowledge of the mail and wire fraud** to put the Defendants on notice of what his claims were so that they could defend themselves.

However, with regard to Plaintiffs' Fraudulent Inducement to Purchase claim, the complaint clearly states in paragraphs 51-65 that the Defendants Chrysler (purchase of Chrysler car and warranty par. 56-60, 71-77), financed (through Chrysler Financial, LLC par. 60-61, 64) sale by Bosak Defendant Mike Grzbowski and other Bosak employees and/or agents acting on their behalf. (Par. 56-59, 62-63)  **The "bumper to bumper warranty"** is in parenthesis in paragraph 75 of the complaint as this term was used in a fraudulently materially false deceptive and misleading way.  The warranty does not cover the entire vehicle from "bumper to bumper". (DE #1 par. 72, 74, 75, 78)  Also, the Defendants knew or should have known that 1) Chrysler Financial, LLC, financial problems, 2) the parts shortage and 3) the auto crisis would affect its ability to cover warrantied parts.(DE #1 par. 52, 54, 63-64)   Also, **warranties were made about the performance of the Chrysler 300** that the defendants knew were false, fraudulent, deceptive and misleading. (DE #1 par. 55-60, 62, 73, 78)

Other misrepresentations include but are not limited to misrepresentations about the long delay (DE #1 par. 82, 87 and 107),  Holland was told that he was not entitled to a rental car pursuant to the warranty (De #1 par. 84 and 85), and finally, no loaner car was given pursuant to

the warranty (DE #1 par. 100). These Defendants "visibly performed" the fraudulent activity, as evidenced by alleged facts, while "the strings are ultimately pulled" by each of the other corporate and individual defendants. (DE #1 p. 14 par. 52).  As *Bestfoods* and *Koch* indicate, it is plausible for a company or its owners or executives to be held liable for the fraudulent misrepresentations of its agent or alter ego. The Plaintiff Robert Holland has properly and sufficiently plead these theories, so Defendants' argument that they were improperly "lumped" together similarly fails in the **RICO** context.

The Cerberus Defendants further argue, "In other instances, Plaintiff alleges generally that he spoke to individuals on the phone, but those alleged conversations suffer the same pleading defects, and Plaintiff fails to demonstrate how the conversations contained fraudulent representations. *See, e.g.*, Compl. ¶¶ 142-143 (noting a conversation with Defendant Kimberly Johnson but failing to plead any statements that constituted alleged fraud).' This argument fails to realize agency, ratification, vicarious, conspiracy (through support and aiding and abetting) theories of liability.

A corporation acts only through its agents. Under general agency rules, a corporation (principal) will be vicariously responsible for the wrongful acts of its employees (agents) when the acts are: (1) related to and committed within the course of employment; (2) committed in furtherance of the corporation; and (3) authorized or subsequently acquiesced in by the corporation. 10 W. Fletcher, *Cyclopedia of the Law of Private Corporations*, § 4942 at 620-21. In using Bosak Motors as agent in the fraudulent inducement to purchase and finance the car and the warranty, Robert Nardelli acted as CEO of Chrysler and Chrysler Financial, LLC, acts redounded to the benefit of those companies. Robert Nardelli was informed by letter of the Fraud and nothing was done. Chrysler and Chrysler Financial, LLC, accepted the benefits of its

12

employees and agents wrongdoing, ratified and/or acquiesced the misconduct. See *Liquid Air*, 834 F.2d at 1303-05;

**The Pattern**

The "Plaintiff's Complaint further fails to demonstrate  a **pattern of racketeering activity**." (Motion to Dismiss P. 3)  18 U.S.C. §§ 1961(5).  The "Plaintiff is required to allege a pattern of racketeering activity for each RICO defendant."  DeFalco vs. Bernas, 244 F.3d 306 (2d Cir. 2001) (Motion to Dismiss P. 3 and 4)

The Defendants  shared its profits with others in the alleged enterprise. *See, e.g.*, *United Food*, 719F.3d at 855, by increasing business, increasing their cash flows, reducing costs and expenses through the illegal activities increased profits thus increasing the value of the companies allowed them to be sold at a higher price.[3] (DE # 1 P. 43-50) The vertically integrated structure of the Defendants forcing pressure to commit illegal activities from the top down allowed each of the defendants to continue benefit from the illegal activities during the financial crisis rather than go out of business.  See Hosseini - The Supreme Court granted certiorari in *Santos*.  Four justices held that "proceeds" always means net profits. *United States v. Santos*, 553 U.S. 507, 509, 128 S. Ct. 2020, 170 L. Ed. 2d 912 (2008) (plurality opinion). Four held that "proceeds" always means gross revenues. *Id*. at 531 (Alito, J., dissenting). Justice Stevens wrote separately, suggesting that the meaning of the term could vary depending on the type of conduct

---

[3] See Hosseini - The Supreme Court granted certiorari in *Santos*.  Four justices held that "proceeds" always means net profits. *United States v. Santos*, 553 U.S. 507, 509, 128 S. Ct. 2020, 170 L. Ed. 2d 912 (2008) (plurality opinion). Four held that "proceeds" always means gross revenues. *Id*. at 531 (Alito, J., dissenting). Justice Stevens wrote separately, suggesting that the meaning of the term could vary depending on the type of conduct at issue and the penalties involved.  [*552]  *Id*. at 524 (Stevens, J., concurring in the judgment). Under the circumstances in *Santos*, he agreed with the plurality that "proceeds" meant net profits. *Id*. at 528.

at issue and the penalties involved. *Id.* at 524 (Stevens, J., concurring in the judgment). Under the circumstances in *Santos*, he agreed with the plurality that "proceeds" meant net profits. *Id.* at 528

 While Plaintiffs will have to prove that each defendant, a **RICO** person who executes, directly or indirectly, the pattern of racketeering activity, has control over the **RICO enterprise,** *Fitzgerald v. Chrysler Corp.*, 116 F.3d 225, 227 (7th Cir. 1997), the Court does not at this point make any findings on the merits. On a motion to dismiss, the Court accepts all well-pleaded facts as true, and thus it is plausible that the "structure," as distinct from racketeering activity and each distinct defendant, is a **RICO enterprise.** Accordingly, Plaintiffs' **RICO** claims pursuant to section 1962(a) and (c) should not be dismissed.

### Association-in-Fact Enterprise Under Sections 1962(a)

 The Bosak Defendants were indispensable in establishing the 1962(a) claim. The flow of the racketeering proceeds flow from the Bosak Defendants to Chrysler and Chrysler Financial and thus Cerberus. The Plaintiff Robert Holland has proven RICO section 1962(a), "by proving an injury resulting [by reason of] the investment of racketeering income distinct from an injury caused by the predicate acts themselves." *Lightening Lube, Inc.*, 4 F.3d at 1188; *St. Paul Mercury Ins. Co. v. Williamson*, 224 F.3d 425, 441 (5th Cir. 2000); *see also Davis-Lynch, Inc.,* 667 F.3d at 550; *Nugget Hydroelectric, L.P. v. Pacific Gas and Elec. Co.*, 981 F.2d 429, 437 (9th Cir. 1992). The Plaintiff Robert Holland alleged and proved more than a mere reinvestment injury. First, the Defendants did not merely reinvest in the same entity, rather, they created a new and different company with different operational policies of particular note was the collections department. Chrysler Financial, LLC, i.e., Chrysler

Holding, LLC, (DE #1 p. 10 par. 30) became completely separate and distinct from Chrysler. No longer using Chrysler to obtain most of its business. This is an emphatic statement that New Chrysler no longer wanted to be associated with (its namesake) Chrysler Financial, LLC, and its policies. Secondly, even if Congress did not intend subsection (a)'s prohibition to reach the use of RICO tainted funds by the RICO violator in its own ongoing operation, the legislative history does not permit the inference that Congress meant to allow such entities, with impunity, to use those funds to branch out to new locations.

Had the investment not been made, there would have been no a significantly different Chrysler and Chrysler Financial that would commit the racketeering activities as described in the complaint, for example, Fraudulent inducement to purchase car and warranty (mail, fraud, wire fraud, bank fraud, fraudulently providing cash flows for Chrysler and Chrysler Financial, LLC), the fraudulent delay, not giving a replacement rental car or new car, not providing a new part (protecting Chrysler via warranty) and the extorting of moneys by the Bosak Defendants even though repair was not made pursuant to warranty (providing cash flow for Chrysler), stealing Holland's money (fraudulent inducement of last payment), robbing Holland of his car, laundering the car at auction for a not fair value and then submitting the false information to the 3 major credit bureaus. *Ideal Steel Corp. v. Anza*, 652 F.3d 310 (2d. Cir. 2011), at 322, 328; *Rao v. BP Prods. N.A., Inc.*, 589 F.3d 389, 398 (7th Cir. 2009) (citing *Vicom*, 20 F.3d at 778 n. 6).

**The Conspiracy to violate RICO – Section 1962(d)**

A section 1962(d) **conspiracy** charge thus does not require proof that the defendant committed two **predicate acts of racketeering**, *Salinas*, 522 U.S. at 63, 65-66, 118 S. Ct. at 476,

478, that he agreed to commit two predicate acts, *ibid.*, or, for that matter, that any such acts were ultimately committed by anyone, *id.* at 63, 118 S. Ct. at 476 (noting that section 1962(d) includes "no requirement of some overt act or specific act"); *Gagan v. American Cablevision, Inc.*, 77 F.3d 951, 959 (7th Cir. 1996) cited in U.S. vs. Tello, 687 F.3d 785 (7th Cir. 2012). The Plaintiff contends that he need not allege two predicate acts of racketeering activity by **each defendant,** only by the enterprise as a whole. (DE #1 P. 12 par. 42)This would be true if the plaintiffs' claim was for a **RICO** conspiracy under section 1962(d). *Slaney v. Int'l Amateur Athletic Fed'n,* 244 F.3d 580, 600 (7th Cir. 2001).

 *Salinas v. United States*, 522 U.S. 52, 63-64 (1997) held that "If conspirators have a plan which calls for some conspirators to perpetrate the crime and others to provide support, the supporters are as guilty as the perpetrators." *Id.* at 64. A conspirator must simply intend to further an endeavor which, if completed, would satisfy all elements of a civil RICO claim. *Id.* at 65. A RICO conspiracy can be proven by the concerted coordinated conduct of the defendants. *United States v. **Neapolitan***, 791 F.2d 489, 498 (7th Cir. 1986)

 Indeed, "[a] **conspiracy** to violate **RICO** may be shown by proof that the  defendant, by his words or actions, objectively manifested an **agreement to participate**, directly or indirectly, in the affairs of an enterprise"; mere participation is not enough. *DeGuelle v. Camilli*, 664 F.3d 192, 204 (7th Cir. 2011) (emphasis added). However, once the plan is in place, a partner, supporter, or even a third party who agreed to participate can be guilty of **RICO conspiracy**. *Salinas v. United States*, 522 U.S. 52, 64, 118 S. Ct. 469, 139 L. Ed. 2d 352 (1997)  While it is not enough to be familiar with and responsible for the allegedly illegal policies of a company,  the inclusion of each defendant's corporate **title** and the roles that each would play in the enterprise can help a **RICO conspiracy** claim survive a motion to dismiss by implying

agreement to participate. *Goren v. New Vision Int'l, Inc.*, 156 F.3d at 732.

The conspiracy claims were proven by the required coordinated and concerted conduct of the Defendants. "If conspirators have a policy, plan and/or scheme which calls for some conspirators to perpetrate the crime and others to provide support, the supporters are as guilty as the perpetrators." (See DE #1 P. 12-13 par. 43-50)(DE #45 and 46 Exhibit 2-6 and the attached information from the Cerberus website regarding its Executive Leadership and on Cerberus' significant control over Chrysler Financial, LLC, effecting collections (third bullet point))(IRE and FRE 201(d), 401, 402, 404(b), 406, 407, 801(d)(2), 803(6), 803(4), 807, 902) *Id.* at 64. (DE #45 and 46 Exhibit 4 Bosak Repair Service Mailer sent from Jonathan Jeffries to Holland for the purpose to defraud, Bosak Defendants knew at this time 02/24/09 that there was a parts shortage and many parts could not be obtained; Also See DE #32 Exhibit 5 Forbes Article on Parts Shortage dated 04/03/09)(DE #32 Exhibit 3 Bosak Repair Invoice and Exhibit 4 Tow Invoice)

**Aiding and Abetting Theory of Liability**

Alternatively, Holland argues that each Defendant is liable for violating § 1962(c) under an aider and abettor theory. This court has not yet determined whether aiding and abetting liability applies in civil **RICO** actions, although several other circuits have recognized it in such cases. See *In re Vicars Ins. Agency, Inc.*, 96 F.3d 949, 954 (7th Cir. 1996). To prevail under an aider and abettor theory, Appellants must show, among other things, that Fishman acted with the requisite scienter, that he knew of the commission of the mail and wire fraud and acted with the intent to facilitate it. See *Jaguar Cars, Inc. v. Royal Oaks Motor Co.*, 46 F.3d 258, 270 (3d Cir. 1995).

In order to find a defendant liable for aiding and abetting a predicate act under RICO, the plaintiff must prove (1) that the substantive act has been committed, and (2) that the defendant alleged to have aided and abetted the act knew of the commission of the act and acted with intent to facilitate it. *United States v. Local 560*, 780 F.2d 267, 284. (3d Cir. 1985) The first element has concededly been met in this case. With regard to the second, a plaintiff need not offer direct evidence of intent. Rather, the fact finder may infer a defendant's knowledge and intent from circumstantial evidence. *See Genty v. Resolution Trust Corp.*, 937 F.2d 899 (3d Cir. 1991); *Local 560*, 780 at 284. ("It has long been settled that it is permissible to infer from circumstantial evidence the existence of intent.").

The facts in the instant case are similar to *Jaguar Cars, Inc. v. Royal Oaks Motor Co.*, 46 F.3d 258, 270 (3d Cir. 1995) cited in American Auto. Accessories, Inc. v. Fishman, No. 98-1266, UNITED STATES COURT OF APPEALS FOR THE SEVENTH CIRCUIT, 175 F.3d 534; 1999.  In Jaguar, there was "sufficient evidence from which a jury reasonably could find that Theodore knew of the fraud and acted with the intent to facilitate it. We recognize, as Jaguar concedes, that no single piece of evidence links Theodore directly to the fraud. Rather, Jaguar contends that while Mark directed the fraudulent scheme, Theodore's experience and active participation in the Royal Oaks dealership, combined with the extent of the fraud, present a sufficient basis from which a reasonable jury could have concluded that he was aware of and facilitated the fraudulent scheme. We agree."

"Theodore was the 51% owner and active president of the Royal Oaks Jaguar dealership. While Theodore had been a car dealer since 1956, his son Mark had relatively little experience in operating a dealership. Theodore was actively involved in the operation of Royal Oaks. He spent roughly twenty-five to thirty hours a week at the dealership and had

ultimate supervisory responsibility for the dealership's operations. Theodore was Mark's supervisor, and met with him daily to discuss the operation of the dealership, including its parts and service department."

In order to have exculpate the Bosak Defendants, the court in this instance, would have believe that they never interacted and discussed, in any depth, the operation of the service sales and departments and the source of that department's income. *Jaguar Cars, Inc. v. Royal Oaks Motor Co.*, 46 F.3d 258, 270 (3d Cir. 1995) cited in American Auto. Accessories, Inc. v. Fishman, No. 98-1266, UNITED STATES COURT OF APPEALS FOR THE SEVENTH CIRCUIT, 175 F.3d 534; 1999.

**Indiana State RICO Claims**

The *Keesling v. Beegle*, 880 N.E.2d 1202, 1206-08 (Ind. 2008) court specifically concluded that the state **RICO** provision doesn't contain the *Reves* requirement that a **RICO** defendant must exert some degree of management or direction over the **enterprise.** *Id.* Instead, mere participation *will* be enough. *Id.* at 1206.  That makes the state **RICO** claim easier to prove than its federal counterpart. ARTHUR PRINGLE III, Plaintiff, v. MARISA GARCIA, et al., Defendants, Case No. 2:09-cv-022-PPS, UNITED STATES DISTRICT COURT FOR THE **NORTHERN DISTRICT OF INDIANA, HAMMOND** DIVISION, 2013 U.S. Dist. LEXIS 20482, **February 13, 2013**, Decided.

In addition, conspiracy is a separate act of racketeering activity pursuant to Indiana Civil RICO.  Indiana Code section 35-45-6-1 defines "racketeering activity" as meaning "to commit, to attempt to commit, **or to *conspire* to commit a violation**, or **aiding and abetting** [4]in a violation" of numerous statutory crimes, including theft and burglary. A "pattern of racketeering

---

[4] Indiana Civil RICO is much more expansive and easier to prove than its counterpart Federal RICO statute.  Indiana Civil RICO does not require operation or management of the enterprise but just mere participation.  Also, those who aid or abet can be found liable.  Finally, conspiracy is considered a separate predicate act.

activity" is defined by Ind. Code § 35-45-6-1 as "engaging in at least two [2] incidents of racketeering activity that have the same or similar intent, result, accomplice, victim, or method of commission, or that are otherwise interrelated by distinguishing characteristics that are not isolated incidents.

**CONCLUSION**

For the reasons stated above, the Plaintiff requests that the Court DENY the Bosak Defendants' Motion to Dismiss Plaintiff's Complaint with prejudice in its entirety pursuant to Rule 12(b)(6). However, if the complaint be found deficient in any manner allow for the amendment of the Complaint pursuant to FRCP 15.

Sincerely,

Robert Holland, Pro Se

1120 Baker Street

Gary, Indiana 46404

TEL (219) 944-2323

### UNITED STATES DISTRICT COURT
### FOR THE NORTHERN DISTRICT OF INDIANA

### CERTIFICATE OF SERVICE

I certify that on the 21st day of July, 2014, service of a true and complete copy of the above and foregoing pleading or paper was made upon:

**The Clerk of the Court**, United States District Court, 5400 Federal Plaza, Hammond, IN 46320

**Judge Rudy Lozano**
7th Circuit District Court Judge
Northern District of Indiana, Hammond Division
5400 Federal Plaza, Hammond, Indiana 46320
TEL (219) 852-6700

**Jason R. Barclay and Mark D. Stuann**, Barnes & Thornburg, LLP, 11 South Meridian Street, Indianapolis, IN 46204
Attorneys for Defendants Cerberus Capital Management, LP, Stephen Feinberg (CEO of Cerberus Capital Management, LP), and Robert Nardelli (CEO of Cerberus O & AC, LLC)
TEL (317) 231-7250

**Howard Godnick and Joshua Schonauer**, Schulte, Roth & Zabel, LLP, 919 Third Avenue, New York, New York 10022
Attorneys for Defendants Cerberus Capital Management, LP, Stephen Feinberg (CEO of Cerberus Capital Management, LP), Robert Nardelli (CEO of Cerberus O & AC, LLC), Chrysler Financial, LLC (aka TD Bank, Group (N.A.))
TEL (212) 593-5955

**James P. Buchholz**, 127 W. Berry Street, Suite 1200, Fort Wayne, Indiana 46802
Attorney for Bosak Motors Auto Dealership, Mr. & Mrs. Skip Bosak (Owners of Bosak Motors Auto Dealership), John Schultheis (General Manager, Bosak Motors), Jonathan Jeffries (Service Manager, Bosak Motors)
TEL (260) 426-0545

**James Todd**, Weltman, Weinberg & Reis Co., LPA, 525 Vine St., Suite 800, Cincinnati, Ohio 45202
Attorney for Chrysler Financial, LLC and Kimberly Johnson (Chrysler Financial Collections/Repossession Unit)
TEL (513) 723-2200

**Robert Holland**, Pro Se, Plaintiff, 1120 Baker Street, Gary, Indiana 46404
TEL (219) 427-4582

_____X_____   By depositing in the U.S. Mail properly addressed and with sufficient first class postage affixed or the federal electronic filing system at the office of the clerk.

_____   By personal delivery or fax.

Robert M. Holland III, Pro Se