# UNITED STATES DISTRICT COURT
# FOR THE SEVENTH CIRCUIT
# HAMMOND DIVISION

**-FILED-**

JUL 3 1 2014

At _____ M
ROBERT N. TRGOVICH, Clerk
U.S. DISTRICT COURT
NORTHERN DISTRICT OF INDIANA

ROBERT HOLLAND,                    )
    Plaintiff – Appellant         )
                                  )
VS.                                )    District Court Case No.: 2:13-CV-00491
                                  )
CERBERUS CAPITAL                   )
MANAGEMENT, LLP, et al,            )
    Defendants – Appellees.       )

## RICO CASE STATEMENT

Comes now the Plaintiff Robert Holland and files this RICO Case Statement intended as a Response to the Motion to Dismiss filed by all the Defendants in this case pursuant to FRCP 12(b)(2) and 12(b)(6). In support of this Motion the Plaintiff Robert Holland states the following:

## STANDARD OF REVIEW

The standard of review for a Rule 12(b)(6) **motions to dismiss** is de novo. We construe the complaint in the light most favorable to the plaintiffs, accepting as true all well-pled facts alleged, taking judicial notice of matters within the public record, and drawing all reasonable inferences in the plaintiffs' favor. See *General Electric Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1080-81 (7th Cir. 1997) (permitting courts to take judicial notice of matters of public record without converting a Rule 12(b)(6) motion into a motion for summary judgment).

**Rule 8**(a) of the Federal Rules of Civil Procedure requires that a complaint contain a "short and plain statement of the claim showing that the pleader is entitled to relief." In deciding whether it is sufficient to state a claim, the court must "accept the complaint's well-pleaded allegations as true and draw all favorable inferences for the plaintiff." *Killingsworth v. HSBC Bank Nevada, N.A.*, 507 F.3d 614, 618 (7th Cir. 2007). The allegations must be sufficient "to

1

District Court Case No.: 2:13-CV-00491

give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell*

*Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007) (quoting

*Conley v. Gibson*, 355 U.S. 41, 47, 78 S. Ct. 99, 2 L. Ed. 2d 80 (1957)). A complaint attacked by

a Rule 12(b)(6) motion to dismiss does not need detailed factual allegation.  The factual

allegations must be enough to raise a right to relief above the speculative level." *Id.* (citations

omitted); *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009).

But where, as here, a complaint's allegations are sufficient to establish a fact for Rule

12(b)(6) purposes, the plaintiff's failure to include other allegations that might have established

that fact more firmly does not warrant dismissal. A requirement that a complaint include every

factual allegation that might support the plaintiff's claims would effectively nullify **Rule 8**(a)(2)'s

requirement of only "a short and plain statement of the claim showing that the pleader is entitled

to relief." *See Mehta v. Beaconridge Improvement Ass'n,* 432 F. App'x 614, 616 (7th Cir. 2011)

("To cross the [**Rule 8**(a)(2)] threshold, a plaintiff must provide enough details about the subject

matter of the case to present a story that holds together.").  cited in Priority Int'l Animal

Concepts, Inc. v. Bryk, 2012 2012 U.S. Dist. LEXIS 171132; 2012-2 Trade Cas. (CCH) P78,174

(December 2012)

Here, Holland alleges that the defendants engaged in several schemes to defraud him of

monies and launder those monies through the guise of legitimate transactions related to the

purchase of his Chrysler 300 and warranty.

Thus, even if the heightened pleading standard did apply to the allegations suggestive of

**fraud,** they are adequately met. Holland's complaint contains as much particularity as could be

expected at this stage of the proceedings. The 35 page 196 paragraphs of detailed allegations in

2

District Court Case No.: 2:13-CV-00491

the complaint provide more than sufficient notice to the defendants as to Priority's claims and the

factual basis for them. The detail and breadth of the allegations also demonstrate that, to the

extent allegations of **fraud** are present, a sufficient factual basis is provided.Id.  Moreover, "The

circumstances of **fraud** or mistake include the identity of the person who made the

misrepresentation, the time, place and content of the misrepresentation, and the method by which

the misrepresentation was communicated to the plaintiff." *Windy City Metal Fabricators &*

*Supply, Inc. v. CIT Tech. Fin. Servs., Inc.,* 536 F.3d 663, 668 (7th Cir. 2008) (internal quotation

marks omitted);  *see also Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. Walgreen*

*Co.,* 631 F.3d 436, 441-42 (7th Cir. 2011).  Holland has satisfied these requirements. Finally, in

considering the complaint in this case the Court is reminded that *pro se* **complaints,** "however

inartfully pleaded," are to be **liberally construed**. *Erickson*, 551 U.S. at 94; *Hughes v. Rowe*,

449 U.S. 5, 9, 101 S. Ct. 173, 66 L. Ed. 2d 163 (1980) (quoting *Haines v. Kerner*, 404 U.S. 519,

520, 92 S. Ct. 594, 30 L. Ed. 2d 652 (1972) (per curiam))

**ARGUMENT**

The Plaintiff Robert Holland alleges that the Defendants violated 18 U.S.C. §§ 1962(a),

(c) and (d).  (DE #1 P. 32-35 Par. 188 to end)

**DISCUSSION**

The complaint in this case alleges very different Chrysler and Chrysler Financial, LLC,

not found in Fitzgerald v. Chrysler Corp., 116 F.3d 225, 228 (7th Cir. 1997).  In the instant case,

the Cerberus Defendants, owners of Chrysler and Chrysler Financial, LLC, had taken over the

companies and the companies were now in financial distress.(desperate)  The operations and

policies had changed. (DE #1 par. 31) Even the name was changed to Chrysler Holding,

3

District Court Case No.: 2:13-CV-00491

LLC.(DE #1 par. 30)   Holland's complaint identifies a completely different owner and a

different CEO with a completely different management/operating style bent on criminal activity

known to have committed similar bad acts in the past.(DE # 1 P. 23 par. 121)   In addition,

Holland alleges that the new corporations are being used to engage in a pattern of racketeering

activity through legal entities beyond its control, such as independent banks, law firms,

accounting firms, or public relations firms, the person / enterprise distinction will more than

likely be satisfied. *See* Living Designs, Inc. v. E.I. Dupont De Nemours and Co., 431 F.3d 353,

362 (9th Cir. 2005)

The instant case is similar to Hosseini, where the defendants' course of conduct, viewed

in the light most favorable to the verdict (Plaintiff), was neither independent nor lacking in

coordination. Together the defendants **operated auto dealerships**, sharing bank accounts, health

insurance, and employees. They transferred money back and forth with some frequency, referred

customers to each other and sold vehicles. **The association in fact Defendants' course of**

**conduct, viewed in the light most favorable to the verdict (Plaintiff), was neither**

**independent nor lacking in coordination.  Together the defendants operated auto**

**dealerships, sharing bank accounts, health insurance, and employees.  They transferred**

**money back and forth with some frequency, referred customers to each other, and sold**

**vehicles.** Cited in UNITED STATES OF AMERICA vs. AMIR HOSSEINI, 679 F.3d 544 (7th

Cir. 2011) (DE #1 P. 12 par. 42, P. 30 par. 183-185)   <u>These statements refer to all the</u>

<u>Defendants in the instant complaint.</u> Id.

In order to have exculpate the Defendants, the court in this instance, would have

believe that they never interacted and discussed, in any depth, the operation of the service

4

District Court Case No.: 2:13-CV-00491

sales and departments and the source of that department's income, *Jaguar Cars, Inc. v. Royal*

*Oaks Motor Co.*, 46 F.3d 258, 270 (3d Cir. 1995) cited in American Auto. Accessories, Inc. v.

Fishman, No. 98-1266, UNITED STATES COURT OF APPEALS FOR THE SEVENTH

CIRCUIT, 175 F.3d 534; 1999, and that Chrysler, Chrysler Financial, LLC and Cerberus

Capital Management, LP, had little or no control over the operations, required no compliance

to their standards and regulations and no knowledge of their revenues, expenses and costs

associated with the sale of Chrysler vehicles and warranties.

## ANALYSIS

### Association-in-Fact Enterprise Under Sections 1962(c)

"To state a claim under § 1962(c), a RICO plaintiff must show the '(1) conduct (2) of an

enterprise (3) through a pattern (4) of racketeering activity.'" *Richmond v. Nationwide Cassel*

*L.P.*, 52 F.3d 640, 644 (7th Cir. 1995) (quoting *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479,

496, 87 L.Ed.2d 346, 105 S.Ct. 3275 (1985))

### The Conduct (Participation or Operation and Management)

The Associate in Fact Defendants conspired and seized control of Chrysler and Chrysler

Financial assets and utilized the companies to further its criminal objectives. (DE #1 P. 12 Par.

42-50) **Cerberus Capital Management, LP is a privately owned company founded by**

**Stephen Feinberg (the CEO of the Company and owns an interest in the company) that**

**does not have to publicly report its financial operations.** (DE #1 P. 9 Par. 25) **The CEO of**

**Cerberus Capital Management, LP, Stephen Feinberg,** appointed Robert Nardelli as CEO of

Chrysler and Chrysler Financial, LLC, to implement Cerberus' new policies and practices. (DE

5

District Court Case No.: 2:13-CV-00491

#1 P. 5 Par. 8; P.13 Par. 43-50) **Robert Nardelli implemented the illegal and fraudulent**

**policies and practices of Chrysler and Chrysler Financial, LLC.** (DE #1 P. 5 Par. 9; P. 13-

Par. 43-50) Mr. Nardelli ratified the conduct of Chrysler Financial, LLC.(DE #1 P. 25 Par. 145)

Mr. Nardelli was ranked as one of the worst CEOs of all time (DE #1 P. 23 Par. 121) and had

committed similar bad acts in the past. (DE #32, 45 and 46) **Chrysler (Old Chrysler and/or**

**New Chrysler)** (DE #1 P. 5 and/or 6 Par. 11 and/or 12) ratified the conduct of the Bosak

Defendants and did not honor its warranty. (DE #1, #32, #45 and #46)

Holland has alleged and demonstrated that the Bosak Defendants, i.e., the Bosak Motors

Auto Dealership, Mr. & Mrs. Skip Bosak (Owners of Bosak Motors Auto Dealership), Jonathan

Schultheis (General Manager Bosak Motors), Jonathan Jeffries (Service Manager Bosak Motors)

and Mike Grzbowski (Salesman Bosak Motors) each "conduct[ed] or participate[d], directly or

indirectly, in the conduct of such enterprise's affairs." 18 U.S.C. § 1962(c). The Supreme Court

has explained what it means to conduct or participate in the conduct of an enterprise. To be

liable, one must "have some part in directing" the affairs of the enterprise. *Reves v. Ernst &*

*Young,* 507 U.S. 170, 179, 113 S. Ct. 1163, 122 L. Ed. 2d 525 (1993). The Seventh Circuit has

explained that "simply performing services for an enterprise, even with knowledge of the

enterprise's illicit nature, is not enough to subject an individual to **RICO** liability under §

1962(c); instead, the individual must have participated in the operation and management of the

enterprise itself." *Goren,* 156 F.3d at 728 but see Indiana Civil RICO, *Keesling v. Beegle*, 880

N.E.2d 1202, 1206-08 (Ind. 2008). ) Each Defendant "conduct[ed] or participate[d], directly or

indirectly, in the conduct of such enterprise's affairs." 18 U.S.C. § 1962(c).

6

District Court Case No.: 2:13-CV-00491

**Mr. & Mrs. Skip Bosak** were the CEOs and Owners of Bosak Motors Auto Dealership, owned, directed and controlled the **the Bosak Motors Auto Dealership**, including sales, repair service and its operations.  In addition, Mr. & Mrs. Skip Bosak given the Chrysler dealership license were responsible for the dealerships compliance with applicable law, its policies and interaction with directives from Chrysler, Chrysler Financial, LLC, including all mail, wire and bank transfers. (DE #1 P. 13-16 Par. 51-66 and P. 17-22 Par. 67-117)

**Jonathan Schultheis** as General Manager Bosak Motors reported to Mr. & Mrs. Skip Bosak and was responsible for the overall daily operating performance of the Bosak Motors Auto Dealership including including sales, sales financing, repair service and its overall operations which include all mail, wire and bank transfers. Mr. Schultheis took part in the sales presentation and financing of the Chrysler 300 and the warranty.   Mr. Schultheis is responsible for dealership compliance with applicable laws, setting and establishing dealership policies and staff training and all correspondence sent to customers from the auto dealership. (DE #1 P. 15 Par. 56, P. 13-16 Par. 51-65, P.16-22 Par. 67-117)

**Jonathan Jeffries** as Service Manager Bosak Motors is responsible for maintenance and repair employees and services provided by the Bosak Dealership including but not limited to invoicing, receipt of monies, representations (false representation made to holland regarding the repair of his vehicle) regarding service to customers and (scheme to defraud furthered by the use of mail) mail distributed to potential customers.  The false representations made to Holland by Mr. Jeffries breached the warranty contract and contract to repair causing Holland undue hardship. (See (DE #1 P. 13-16 Par. 51-66, P.16-22 Par. 67-117)  In addition, Mr.

7

District Court Case No.: 2:13-CV-00491

Jeffries as part of the scheme to defraud sent mail to Holland in furtherance of the scheme just prior to his repair service on February 24, 2009. (See DE #32 Exhibit 4 Mail from Jonathan Jeffries Bosak Repair Service)(Mail Fraud). Even though the repairs were not provided pursuant to the warranty, Holland could not receive his car unless payment was made. (Extortion) Mr. Jeffries was directly involved in the racketeering activity on or about October 27, 2007 and February 26, 2009 to March 27, 2009 and the conspiracy. (DE #1 P. 13-16 Par. 51-66, Par. 56 and P. 17-22 Par. 67-117, Par. 91)

**Mike Grzbowski** as Salesman Bosak Motors along with Jonathan Schutheis made false representations regarding the Chrysler 300 and its warranties and the financial condition of Chrysler. (DE #1 P. 15 Par. 56, P. 13-16 Par. 51-65, P.16-22 Par. 67-117) In addition, Mr. Grzbowski as part of the scheme to defraud provided advertising materials from the Bosak Dealership Offices and sent Holland correspondence in the mail prior to his purchase of the vehicle. Mr. Grzbowski was directly involved in the racketeering activity on or about October 27, 2007 and February 26, 2009 to March 27, 2009 scheme to defraud regarding repair of Chrysler 300 and warranty and the conspiracy. (DE #1 P. 13-16 Par. 51-66, Par. 56 and P. 17-22 Par. 67-117, Par. 91)

**Paul Davis of Chrysler** ratified the conduct of the Chrysler Financial, LLC, Defendants and did nothing. (DE #1 P. 6 Par. 13; P. 25 Par. 145) **Kimberly Johnson,** manager of the Collections Department at Chrysler Financial, LLC, fraudulently induced Holland to make his Chrysler payment, then used the Bull Dog Towing Defendants to rob Holland and take the Chrysler 300 anyway, defamed Holland by disseminating information to

8

District Court Case No.: 2:13-CV-00491

the 3 credit bureaus, harassed Holland through attempts to collect a debt, and damaged his

credit. (DE #1 P. 6 Par. 14; P. 22-26 Par.118-153 ; P. 26 Par. 154 -175; P. 29-32 Par. 176-186)

**Chrysler Financial, LLC ratified the illegal conduct of Kimberly Johnson and the Bull**

**Dog Towing Defendants.  CEO Robert Nardelli who helped change the operations of the**

**collections department (DE #45 and 46), still had control over Chrysler Financial, LLC**

**at this time.** (DE #1 P. 5 Par. 10; P. 23 Par. 123)(P. 22-26 Par.118-153; P. 26 Par. 154 -175; P.

29-32 Par. 176-186)

      **The CEO of Bull Dog Towing** failed to acknowledge and correct the actions (robbery,

money laundering, i.e., liquidation of Chrysler 300 and knowing facilitating the damage to

Holland's credit) of his employees. (This is of course if the CEO of Bull Dog Towing himself

was not the individual who robbed Holland of his Chrysler 300) The CEO of Bull Dog Towing

cannot be purposely indifferent, ignorant and put his head in the sand in order to escape

liability. (DE #1 P. 7 Par. 20)  **Bull Dog Towing** benefitted from the illegal actions of its staff

and thus is liable pursuant to RICO. (DE #1 P. 8 Par. 21; P. 22-26 Par.118-153 ; P. 26 Par. 154

-175; P. 29-32 Par. 176-186)  Finally, **the titles of each one of these defendants is given**

**indicating there role and function in the conspiracy.** (DE #1 Par. 15-19)

### The Enterprise

      The Plaintiff asserts that he has sufficiently plead that there is an associate in fact

**enterprise**.(DE #1 P. 12 par. 42)  The **RICO** statute defines "**enterprise**" as including "any

individual, partnership, corporation, association, or other legal entity, and *any union or group of*

*individuals associated in fact although not a legal entity*." 18 U.S.C. § 1961(4) (emphasis

District Court Case No.: 2:13-CV-00491

added). The Supreme Court reads this definition quite broadly. *See* **Boyle** *v. United States*, 556 U.S. 938, 944-45, 129 S. Ct. 2237, 173 L. Ed. 2d 1265 (2009). In **Boyle** the Court held that an "association-in-fact **enterprise**" has just three elements: "a purpose," "relationships among those associated with the **enterprise**," and "longevity sufficient to permit these associates to pursue the **enterprise's** purpose." *Id.* at 946; *see also Jay E. Hayden Found. v. First Neighbor Bank, N.A.*, 610 F.3d 382, 389 (7th Cir. 2011) ("[T]he alleged **enterprise** in this case had purpose and relationships and it certainly had 'longevity,' and if **Boyle** is taken at face value[,] nothing more is required to make a conspiracy a **RICO enterprise**.").(DE #1 P. 30-31 Par. 183-185)

In addition the contacts between the Defendants were not just incidental contacts. Compl. Par. 42. The following language applies to the instant case and is taken from a footnote in **Boyle**, "It is easy to envision situations in which proof that individuals engaged in a pattern of racketeering activity would not establish the existence of an **enterprise.** For example, suppose that several individuals, *independently and without coordination*, engaged in a pattern of crimes listed as **RICO** predicates—for example, bribery or extortion.  Proof of these patterns would not be enough to show that the individuals were members of an **enterprise.** 556 U.S. at 947 n.4 (emphasis added). Id.  **But here, the defendants' course of conduct, viewed in the light most favorable to the verdict (Plaintiff), was neither independent nor lacking in coordination. Together the defendants operated auto dealerships, sharing bank accounts, health insurance, and employees.  They transferred money back and forth with some frequency, referred customers to each other, and sold vehicles.** Cited in UNITED STATES OF AMERICA vs. AMIR HOSSEINI, 679 F.3d 544 (7th Cir. 2011) (DE #1 P. 12 par. 42, P. 30 par. 183-185)  **These statements refer to all the Defendants in the instant complaint.** Id.

10

District Court Case No.: 2:13-CV-00491

This evidence was easily sufficient to permit a reasonable jury to conclude that the alleged **RICO enterprise** had a purpose (P. 30 Par. 183 - profiting through unreported acts of fraud in auto sales to customers), relationships (P. 30 Par. 184 - dealerships' interlocking relationship), and longevity (P. 31 Par. 185 - 2007 to date).  Under ***Boyle*** the evidence was easily sufficient to establish a **RICO enterprise.**  In this matter, Plaintiffs have alleged an intricate structure that more than meets the hierarchical requirement of a **RICO enterprise,** identifying which defendants own and operate the others and how each named defendant fits into the hierarchy.

## The Racketeering Activity

The acts of racketeering committed by the Defendants were not just garden variety fraud but were schemes to defraud furthered by the use of the mail, wire and bank transfers. **The predicate acts of racketeering include but are not limited to mail fraud, wire fraud, bank fraud, money laundering, extortion, intimidation, corrupt business influence and conspiracy[1] but, extortionate credit transactions; mail fraud; wire fraud; bank (financial institution) fraud; interference with commerce; robbery; extortion; engaging in monetary transactions in property derived from specified unlawful activity (money laundering); interstate transportation of stolen motor vehicles and other stolen property; trafficking in certain motor vehicles or motor vehicle parts**. 18 U.S.C. § 1961(1)(B).[2]

---

[1] Conspiracy is considered a seperate act of racketeering pursuant to Civil RICO.  (DE #1 P. 31 Par. 186.  The Bosak Defendants were involved in at least 4 acts of racketeering activity.

[2] The Hobbs Act makes it a crime to obstruct commerce "by robbery or extortion" or by committing or threatening "physical violence to any person or property in furtherance of a plan" to violate section 1951. Also, 18 USCS § 894.  Collection of extensions of credit by extortionate means

District Court Case No.: 2:13-CV-00491

The separate acts of racketeering activity include 1) fraudulent inducement to purchase the Chrysler 300 and extended warranty, 2) breach of warranty contract and contract to repair, 3) the wrongful repossession (robbery) of the Chrysler 300 by Bull Dog Towing at the direction of Chrysler Financial, LLC, 4) the unlawful collection and attempts to collect a debt 5) a scheme(s) to defraud (in the purchase and repair) through the use of the mail, wire and bank and 6) the conspiracy. *Jaguar Cars, Inc. v. Royal Oaks Motor Co.*, 46 F.3d 258, 270 (3d Cir. 1995) cited in American Auto. Accessories, Inc. v. Fishman, No. 98-1266, UNITED STATES COURT OF APPEALS FOR THE SEVENTH CIRCUIT, 175 F.3d 534; 1999.

1. On or about October 1, 2007 - Fraudulent inducement to purchase vehicle and warranty (receipt of money through financing), corrupt business influence, mail fraud (scheme to defraud by the use of mail), wire fraud, bank fraud (DE #1 P. 13-16 Par. 51-65, P.16-22 Par. 67-117) money laundering and conspiracy.

2. On or about February 26 (DE #1 P. 18 Par. 81 and DE #32 tow receipt) to March, 27, 2009 (DE #32 Bosak Repair Invoice) - Bad faith Breach of Contract to Repair, corrupt business influence, mail fraud, wire fraud, bank fraud omitted extortion (extortion alleged and explained but not stated) work not performed pursuant to contract but held car unless payment made (DE #1 P. 20-21 Par. 105 and 113, P.16-22 Par. 67-117), trafficking in motor vehicle parts, interference with commerce, money laundering and conspiracy.

3. Fraudulent  representations related to breach of contract to repair (DE #1 P.16-22 Par. 67-117)(Also see DE #32 Exhibit 4 Bosak Repair Service (scheme to defraud by use of the

(a) Whoever knowingly participates in any way, or conspires to do so, in the use of any extortionate means
  (1) to collect or attempt to collect any extension of credit, or
  (2) to punish any person for the nonrepayment thereof,

shall be fined under this title or imprisoned not more than 20 years, or both.

District Court Case No.: 2:13-CV-00491

mail) mail sent by Jonathan Jeffries (Bosak Repair Service Manager) on 02/24/09 just

before tow for repair), corrupt business influence and conspiracy.

4. Bad faith Breach of Warranty - no repair pursuant to warranty, no new Chrysler part

   provided, no rental car or replacement new car (if over 30 days can not repair pursuant to

   Indiana Law a new car must be provided)(DE #1 P. 13-16 Par. 51-65, P.16-22 Par. 67-

   117) corrupt business influence, breach of contract, fraud and conspiracy.

5. Fraud related to Warranty – deceptive, misleading misrepresentations made about repair,

   part and rental car (DE #1 P. 13-16 Par. 51-65, P.16-22 Par. 67-117) and conspiracy.

6. Bad Faith Breach of Sales Contract – car not operable over 30 days no other vehicle

   provided  (DE #1 P. 13-16 Par. 51-65, P.16-22 Par. 67-117) Fraud.

7. Fraud related to breach of (installment) sales contract - deceptive, misleading

   misrepresentations about car replacement (DE #1 P.16-22 Par. 67-117) and conspiracy.

8. Fraud related to breach of (installment) sales contract - inducing last payment DE #1 P.

   13-16 Par. 51-65, P.17-22 Par. 67-117) corrupt business influence, theft, scheme to

   defraud by mail, wire and bank, extortionate credit transactions, money laundering and

   conspiracy.

9. Fraud related to breach of (installment) sales contract – (robbed of car even though

   payments made), corrupt business influence, robbery, intimidation, extortionate credit

   transactions, interstate transportation of stolen motor vehicles, money laundering and

   conspiracy.

Fraud related to unlawful attempts to collect debt and credit reporting (DE #1 P. Par. ),

corrupt business influence, FDCPA, FCRA, extortionate credit transactions, money laundering

District Court Case No.: 2:13-CV-00491

and conspiracy. (The Defendants Collection of an Unlawful Debt was in whole or in part as to

principal and interest because of the laws related to Usury). Any of these alleged offenses would

be enough — if proven — to constitute a predicate act. See 18 U.S.C. 1961(1)(B), (D) and/or

Indiana Civil RICO.

The Defendants shared its profits with others in the alleged enterprise. *See, e.g.*, *United*

*Food*, 719F.3d at 855, by increasing business, increasing their cash flows, reducing costs and

expenses through the illegal activities increased profits thus increasing the value of the

companies allowed them to be sold at a higher price. See Hosseini. (DE # 1 P. 43-50) The

vertically integrated structure of the Defendants forcing pressure to commit illegal activities from

the top down allowed each of the defendants to continue benefit from the illegal activities during

the financial crisis rather than go out of business.

**The Pattern**

The statute in turn defines a **pattern of racketeering activity** to require at least two acts

of racketeering activity committed within a ten-year period. *See* 18 U.S.C. § 1961(5). To be

guilty of the substantive 1962(c) offense, then, an individual must, among other things,

participate in two or more predicate acts of racketeering. § 1962(c); *see Salinas v. United States*,

522 U.S. 52, 62-63, 118 S. Ct. 469, 476, 139 L. Ed. 2d 352 (1997).

In *Morgan v. Bank of Waukegan*, 804 F.2d 970 (7th Cir. 1986), the Court opted for a

"middle course between th[e] two extremes," requiring the predicate acts to be "ongoing over an

identifiable period of time so that they can fairly be viewed as constituting separate transactions."

*Id.* at 975. In determining whether the predicate acts are sufficiently **continuous** and **related,** we

urged courts to examine the following factors: the number and variety of predicate acts and the

14

District Court Case No.: 2:13-CV-00491

length of time over which they were committed, the number of victims, the presence of separate schemes and the occurrence of distinct injuries. *Id.* at 975. (DE #1 p. 30-32 par. 183-186) We noted however that "the mere fact that the predicate acts relate to the same overall scheme or involve the same victim does not mean that the acts automatically fail to satisfy the pattern requirement." *Id.* at 975-76. Thus, *Morgan* envisioned a fact-specific inquiry, in which no single factor would be determinative. *Marshall & Ilsley Trust Co. v. Pate*, 819 F.2d 806, 809-10 (7th Cir. 1987). In *Lipin Enterprises v. Lee*, 803 F.2d 322 (7th Cir. 1986). The parties do not dispute that these alleged predicate acts occurred within a ten-year period.

In their attempt to claim that the Plaintiff Robert Holland has not sufficiently pled a pattern of racketeering activity the Cerberus defendants claim that, "The most Plaintiff can offer are implausible, general allegations about Cerberus' strategies of implementing "new aggressive illegal operational policies and procedures" upon its acquisition of Chrysler." The relevant "new aggressive illegal operational policies and procedures" upon its acquisition of Chrysler" were made against Holland and others similarly situated (DE #1 P. 30-31 par. 183-186) by the defendants and in detailed fashion Holland described the plausible nature of the predicate acts that have been committed by the Defendants in his complaint.(DE #1)

In the alternative, pattern has been found within a single scheme. In Liquid Air the Court found that a single scheme which lasted seven months and defrauded a single victim. The Court found that the repeated infliction of economic injury upon a single victim of a single scheme is sufficient to establish a pattern of racketeering activity for purposes of civil RICO. In *SK Hand Tool Corp.*, we noted that it is an exception to the general rule to find a pattern within a single scheme. 852 F.2d at 941 (citing *Jones*, 845 F.2d at 758-59). However, we have done just that in a

15

District Court Case No.: 2:13-CV-00491

number of cases, including this court's most recent decision on the issue, in *Deppe*, 863 F.2d at

1364-66, and in *Morgan*, where we said "the mere fact that the predicate acts relate to the same

overall scheme or involve the same victim does not mean that the acts automatically fail to

satisfy the pattern requirement." 804 F.2d at 976. *See also Horak*, 833 F.2d at 1240; ***Liquid Air***,

834 F.2d at 1303-05; *Appley*, 832 F.2d at 1027-28.

## Association-in-Fact Enterprise Under Sections 1962(a)

The Bosak Defendants were indispensable in establishing the 1962(a) claim.  The flow

of the racketeering proceeds flow from the Bosak Defendants to Chrysler and Chrysler

Financial and thus Cerberus.  The Plaintiff Robert Holland has proven RICO section 1962(a),

"by proving an injury resulting [by reason of] the investment of racketeering income distinct

from an injury caused by the predicate acts themselves." *Lightening Lube, Inc.*, 4 F.3d at

1188; *St. Paul Mercury Ins. Co. v. Williamson*, 224 F.3d 425, 441 (5th Cir. 2000); *see*

*also Davis-Lynch, Inc.,* 667 F.3d at 550; *Nugget Hydroelectric, L.P. v. Pacific Gas and Elec.*

*Co.*, 981 F.2d 429, 437 (9th Cir. 1992).  The Plaintiff Robert Holland alleged and proved more

than a mere reinvestment injury.  First, the Defendants did not merely reinvest in the same

entity, rather, they created a new and different company with different operational policies of

particular note was the collections department.  Chrysler Financial, LLC, i.e., Chrysler

Holding, LLC, (DE #1 p. 10 par. 30) became completely separate and distinct from Chrysler.

No longer using Chrysler to obtain most of its business.  This is an emphatic statement that

New Chrysler no longer wanted to be associated with (its namesake) Chrysler Financial, LLC,

and its policies.  Secondly, even if Congress did not intend subsection (a)'s prohibition to

reach the use of RICO tainted funds by the RICO violator in its own ongoing operation, the

16

District Court Case No.: 2:13-CV-00491

legislative history does not permit the inference that Congress meant to allow such entities,

with impunity, to use those funds to branch out to new locations.

Had the investment not been made, there would have been no a significantly different

Chrysler and Chrysler Financial that would commit the racketeering activities as described in

the complaint, for example, Fraudulent inducement to purchase car and warranty (mail, fraud,

wire fraud, bank fraud, fraudulently providing cash flows for Chrysler and Chrysler Financial,

LLC), the fraudulent delay, not giving a replacement rental car or new car, not providing a

new part (protecting Chrysler via warranty) and the extorting of moneys by the Bosak

Defendants even though repair was not made pursuant to warranty (providing cash flow for

Chrysler), stealing Holland's money (fraudulent inducement of last payment), robbing Holland

of his car, laundering the car at auction for a not fair value and then submitting the false

information to the 3 major credit bureaus. *Ideal Steel Corp. v. Anza*, 652 F.3d 310 (2d. Cir.

2011), at 322, 328; *Rao v. BP Prods. N.A., Inc.*, 589 F.3d 389, 398 (7th Cir. 2009) (citing

*Vicom*, 20 F.3d at 778 n. 6).

**The Conspiracy to violate RICO – Section 1962(d)**

A section 1962(d) **conspiracy** charge thus does not require proof that the defendant

committed two **predicate acts of racketeering**, *Salinas*, 522 U.S. at 63, 65-66, 118 S. Ct. at 476,

478, that he agreed to commit two predicate acts, *ibid.*, or, for that matter, that any such acts

were ultimately committed by anyone, *id.* at 63, 118 S. Ct. at 476 (noting that section 1962(d)

includes "no requirement of some overt act or specific act"); *Gagan v. American Cablevision,*

*Inc.*, 77 F.3d 951, 959 (7th Cir. 1996) cited in U.S. vs. Tello, 687 F.3d 785 (7th Cir. 2012).  The

Plaintiff contends that he need not allege two predicate acts of racketeering activity by **each**

District Court Case No.: 2:13-CV-00491

**defendant,** only by the enterprise as a whole. (DE #1 P. 12 par. 42)This would be true if the

plaintiffs' claim was for a **RICO** conspiracy under section 1962(d). *Slaney v. Int'l Amateur*

*Athletic Fed'n,* 244 F.3d 580, 600 (7th Cir. 2001).

   *Salinas v. United States*, 522 U.S. 52, 63-64 (1997) held that "If conspirators have a plan

which calls for some conspirators to perpetrate the crime and others to provide support, the

supporters are as guilty as the perpetrators." *Id.* at 64. A conspirator must simply intend to

further an endeavor which, if completed, would satisfy all elements of a civil RICO claim. *Id.* at

65. A RICO conspiracy can be proven by the concerted coordinated conduct of the defendants.

*United States v. Neapolitan*, 791 F.2d 489, 498 (7th Cir. 1986)

   Indeed, "[a] **conspiracy** to violate **RICO** may be shown by proof that the  defendant, by

his words or actions, objectively manifested an **agreement to participate**, directly or indirectly,

in the affairs of an enterprise"; mere participation is not enough. *DeGuelle v. Camilli*, 664 F.3d

192, 204 (7th Cir. 2011) (emphasis added). However, once the plan is in place, a partner,

supporter, or even a third party who agreed to participate can be guilty of **RICO conspiracy**.

*Salinas v. United States*, 522 U.S. 52, 64, 118 S. Ct. 469, 139 L. Ed. 2d 352 (1997)  While it is

not enough to be familiar with and responsible for the allegedly illegal policies of a

company,  the inclusion of each defendant's corporate **title** and the roles that each would play in

the enterprise can help a **RICO conspiracy** claim survive a motion to dismiss by implying

agreement to participate. *Goren v. New Vision Int'l, Inc.*, 156 F.3d at 732.

   The conspiracy to defraud Holland of money claims were proven by the required

coordinated and concerted conduct of the Defendants.  "If conspirators have a policy, plan

and/or scheme which calls for some conspirators to perpetrate the crime and <u>others to provide</u>

18

District Court Case No.: 2:13-CV-00491

support, the supporters are as guilty as the perpetrators." See DE #1 P. 12-13 par. 43-50 and

DE #45 and 46 Exhibit 2-6 and the attached information from the Cerberus website (third

bullet point)) regarding its Executive Leadership and on Cerberus' significant control over

Chrysler and Chrysler Financial, LLC, Cerberus CEO Stephen Feinberg appointed Robert

Nardelli as CEO of Chrysler and Chrysler Financial, LLC, effecting the collections

department where Kimberly Johnson is the manager (IRE and FRE 201(d), 401, 402, 404(b),

406, 407, 801(d)(2), 803(6), 803(4), 807, 902) *Id.* at 64. who ratified the conduct of the Bull

Dog Towing Defendants (acting on behalf of the collections department), Dealership Repair

Service Mailer sent from Jonathan Jeffries to Holland for the purpose to defraud, Bosak

Defendants knew at this time 02/24/09 that there was a parts shortage and many parts could

not be obtained for repair (Also See DE #32 Exhibit 5 Forbes Article on Parts Shortage dated

04/03/09) (DE #32 Exhibit 3 Bosak Repair Invoice and Exhibit 4 Tow Invoice) (DE #45 and

46 Exhibit 4 Bosak (Chrysler) Invoice) and Paul Davis of Chrysler and Robert Nardelli

ratified their conduct.

**Aiding and Abetting Theory of Liability**

Alternatively, Holland argues that each Defendants are liable for violating § 1962

under an aider and abettor theory. This court has not yet determined whether aiding and

abetting liability applies in civil **RICO** actions, although several other circuits have

recognized it in such cases. See *In re Vicars Ins. Agency, Inc.*, 96 F.3d 949, 954 (7th Cir.

1996). To prevail under an aider and abettor theory, Appellants must show, among other

things, that the defendants acted with the requisite scienter, that he knew of the commission of

the mail and wire fraud and acted with the intent to facilitate it. See *Jaguar Cars, Inc. v.*

19

District Court Case No.: 2:13-CV-00491

*Royal Oaks Motor Co.*, 46 F.3d 258, 270 (3d Cir. 1995).

The facts in the instant case are similar to *Jaguar Cars, Inc. v. Royal Oaks Motor Co.*,

46 F.3d 258, 270 (3d Cir. 1995) cited in American Auto. Accessories, Inc. v. Fishman, No.

98-1266, UNITED STATES COURT OF APPEALS FOR THE SEVENTH CIRCUIT, 175

F.3d 534; 1999.  In Jaguar, there was "sufficient evidence from which a jury reasonably could

find that Theodore knew of the fraud and acted with the intent to facilitate it. We recognize,

as Jaguar concedes, that no single piece of evidence links Theodore directly to the fraud.

Rather, Jaguar contends that while Mark directed the fraudulent scheme, Theodore's

experience and active participation in the Royal Oaks dealership, combined with the extent of

the fraud, present a sufficient basis from which a reasonable jury could have concluded that

he was aware of and facilitated the fraudulent scheme. We agree."

"Theodore was the 51% owner and active president of the Royal Oaks Jaguar

dealership. While Theodore had been a car dealer since 1956, his son Mark had relatively

little experience in operating a dealership. Theodore was actively involved in the operation of

Royal Oaks. He spent roughly twenty-five to thirty hours a week at the dealership and had

ultimate supervisory responsibility for the dealership's operations. Theodore was Mark's

supervisor, and met with him daily to discuss the operation of the dealership, including its

parts and service department."

In order to have exculpate the Defendants, the court in this instance, would have

believe that they never interacted and discussed, in any depth, the operation of the service

sales and departments and the source of that department's income, *Jaguar Cars, Inc. v. Royal*

*Oaks Motor Co.*, 46 F.3d 258, 270 (3d Cir. 1995) cited in American Auto. Accessories, Inc. v.

20

District Court Case No.: 2:13-CV-00491

Fishman, No. 98-1266, UNITED STATES COURT OF APPEALS FOR THE SEVENTH

CIRCUIT, 175 F.3d 534; 1999, and that Chrysler, Chrysler Financial, LLC and Cerberus

Capital Management, LP, had little or no control over the operations, required no compliance

to their standards and regulations and no knowledge of their revenues, expenses and costs

associated with the sale of Chrysler vehicles and warranties.

**Indiana State RICO Claims**

The *Keesling v. Beegle*, 880 N.E.2d 1202, 1206-08 (Ind. 2008) court specifically

concluded that the state **RICO** provision doesn't contain the *Reves* requirement that a **RICO**

defendant must exert some degree of management or direction over  the **enterprise.** *Id.* Instead,

mere participation *will* be enough. *Id.* at 1206.  That makes the state **RICO** claim easier to prove

than its federal counterpart. ARTHUR PRINGLE III, Plaintiff, v. MARISA GARCIA, et al.,

Defendants, Case No. 2:09-cv-022-PPS, UNITED STATES DISTRICT COURT FOR THE

**NORTHERN DISTRICT OF INDIANA, HAMMOND** DIVISION, 2013 U.S. Dist. LEXIS

20482, **February 13, 2013**, Decided.

In addition, conspiracy is a separate act of racketeering activity pursuant to Indiana Civil

RICO. Indiana Code section 35-45-6-1 defines "racketeering activity" as meaning "to commit,

to attempt to commit, **or to *conspire* to commit a violation**, or **aiding and abetting** [3] in a

violation" of numerous statutory crimes, including theft and burglary. A "pattern of racketeering

activity" is defined by Ind. Code § 35-45-6-1 as "engaging in at least two [2] incidents of

racketeering activity that have the same or similar intent, result, accomplice, victim, or method of

---

[3] Indiana Civil RICO is much more expansive and easier to prove than its counterpart Federal RICO statute.  Indiana Civil RICO does not require operation or management of the enterprise but just mere participation.  Also, those who aid or abet can be found liable.  Finally, conspiracy is considered a separate predicate act.

District Court Case No.: 2:13-CV-00491

commission, or that are otherwise interrelated by distinguishing characteristics that are not

isolated incidents.

In the event Holland's Federal RICO claims are dismissed this District Court still has

jurisdiction through diversity and pendent jurisdiction for all the state law claims. (DE #1 P. 4

Par. 1)   In an action in which jurisdiction is based upon diversity, the District Court applies the

Federal Rules of Civil Procedure in determining claims arising from state law, in this case,

Indiana. *See Gasperini v. Center for the Humanities, Inc.,* 518 U.S. 415, 426, 116 S. Ct. 2211,

2219, 135 L. Ed. 2d 659 (1996). Also see, ARTHUR PRINGLE III, Plaintiff, v. MARISA

GARCIA, et al., Defendants, Case No. 2:09-cv-022-PPS, UNITED STATES DISTRICT

COURT FOR THE **NORTHERN DISTRICT OF INDIANA, HAMMOND** DIVISION, 2013

U.S. Dist. LEXIS 20482, **February 13, 2013**, Decided.

In addition to the Federal Racketeering Activity pursuant to 18 U.S.C. § 1961(1)(B), the

Defendants committed the following acts of racketeering activity pursuant to Indiana Little

RICO **35-45-6-1.  Definitions.**

**(e)** "Racketeering activity" means to commit, to attempt to commit, to conspire to commit a violation of, or aiding and abetting in a violation of any of the following:

   **(1)** A provision of IC 23-19, or of a rule or order issued under IC 23-19.

   **(2)** A violation of IC 35-45-9.(Criminal Gang)

   **(10)** Robbery (IC 35-42-5-1).

   **(11)** Carjacking (IC 35-42-5-2) (before its repeal).

   **(14)** Theft (IC 35-43-4-2).

   **(15)** Receiving stolen property (IC 35-43-4-2).

   **(17)** Fraud (IC 35-43-5-4(1) through IC 35-43-5-4(10)).

   **(23)** Intimidation (IC 35-45-2-1).

   **(34)** Money laundering (IC 35-45-15-5).

District Court Case No.: 2:13-CV-00491

Other racketeering activity not enumerated in 35-45-6-1 that the Defendants committed include criminal conversion, IC § 35-43-4-3, theft/receiving stolen property, IC § 35-43-4-2, fraud, IC § 35-43-5-4, and deception, IC § 35-43-5-3.

## The Court has Personal Jurisdiction Over All the Defendants

The Plaintiff Robert Holland requests that the Court deny Defendants' 12(b)(2) Motion to Dismiss for lack of personal jurisdiction on the independent grounds of RICO's nationwide service of process, the level of economic activity, the Cerberus Defendants' significant control over Defendants Chrysler and Chrysler Financial, LLC, their suppliers, dealers and agents acting on their behalf and by piercing the corporate veil. *KM Enters., Inc. v. Global Traffic Techs., Inc..*, 725 F.3d 718 (**7th Cir.** 2013); *Reed v. Reid*, 980 N.E.2d 277, 301 (**Ind.** 2012). The precise inquiry is exceedingly fact specific, and "a careful review of the entire relationship between various corporate entities, their directors and officers reveal that such an equitable action is warranted." *Id.*

The Plaintiff's claims against the defendants are viable claims based upon 1) the Defendants interdependence that renders them a "**single economic** enterprise." Cox vs. Sherman Capital, LLC, Case No. 1:12-cv-01654-TWP-MJD, UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF INDIANA, INDIANAPOLIS DIVISION, 2014 U.S. Dist. LEXIS 43147 citing *Jenkins v. Union Corp.*, 999 F. Supp. 1120, 1142-43 (N.D. Ill. 1998) (citing *Harrison v. NBD, Inc*., 968 F. Supp. 837, 845 (E.D.N.Y. 1997)) FDCPA, 2) various theories of liability, i.e., agency, ratification, joint and several, vicarious (respondeat superior), direct liability, conspiracy, aiding and abetting, and 3) the equitable remedy of Piercing the Corporate Veil. *KM Enters., Inc. v. Global Traffic Techs., Inc..*, 725 F.3d 718 (**7th Cir.** 2013). *Reed v. Reid*, 980 N.E.2d 277, 301 (**Ind.** 2012).

The appointment of Robert Nardelli an executive of Cerberus Capital Management,

23

District Court Case No.: 2:13-CV-00491

LP, by Stephen Feinberg CEO of Cerberus Capital Management, LP, and the actions and omissions of Robert Nardelli of the "Cerberus Defendants" as CEO of Chrysler and Chrysler Financial, LLC, and as CEO of Cerberus O & AC, LLC, significantly controlling the policies and operations of Chrysler Financial, LLC, provides the link to the other defendants misconduct that creates liability for the "Cerberus Defendants." (DE #1 p. 23 par. 123)  Mr. Nardelli has a long history of bad CEO performance. (DE #1 p. 23 par.121)(DE #46)(FRE and IRE 401, 402, 404(b), 406, 803(6), 807)

**CONCLUSION**

For the reasons stated above, the Plaintiff requests that the Court DENY the Defendants' Motion to Dismiss Plaintiff's Complaint with prejudice in its entirety pursuant to Rule 12(b)(6) and  12(b)(2).  However, if the complaint be found deficient in any manner allow for the amendment of the Complaint pursuant to FRCP 15.

Sincerely,

Robert Holland, Pro Se
1120 Baker Street
Gary, Indiana 46404
TEL (219) 944-2323

District Court Case No.: 2:13-CV-00491
## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF INDIANA

### CERTIFICATE OF SERVICE

I certify that on the 31st day of July, 2014, service of a true and complete copy of the above and foregoing pleading or paper was made upon:

**The Clerk of the Court**, United States District Court, 5400 Federal Plaza, Hammond, IN 46320

**Judge Rudy Lozano**
7th Circuit District Court Judge
Northern District of Indiana, Hammond Division
5400 Federal Plaza, Hammond, Indiana 46320
TEL (219) 852-6700

**Jason R. Barclay and Mark D. Stuann**, Barnes & Thornburg, LLP, 11 South Meridian Street, Indianapolis, IN 46204
Attorneys for Defendants Cerberus Capital Management, LP, Stephen Feinberg (CEO of Cerberus Capital Management, LP), and Robert Nardelli (CEO of Cerberus O & AC, LLC)
TEL (317) 231-7250

**Howard Godnick and Joshua Schonauer**, Schulte, Roth & Zabel, LLP, 919 Third Avenue, New York, New York 10022
Attorneys for Defendants Cerberus Capital Management, LP, Stephen Feinberg (CEO of Cerberus Capital Management, LP), Robert Nardelli (CEO of Cerberus O & AC, LLC), Chrysler Financial, LLC (aka TD Bank, Group (N.A.))
TEL (212) 593-5955

**James P. Buchholz**, 127 W. Berry Street, Suite 1200, Fort Wayne, Indiana 46802
Attorney for Bosak Motors Auto Dealership, Mr. & Mrs. Skip Bosak (Owners of Bosak Motors Auto Dealership), John Schultheis (General Manager, Bosak Motors), Jonathan Jeffries (Service Manager, Bosak Motors)
TEL (260) 426-0545

**James Todd**, Weltman, Weinberg & Reis Co., LPA, 525 Vine St., Suite 800, Cincinnati, Ohio 45202
Attorney for Chrysler Financial, LLC and Kimberly Johnson (Chrysler Financial Collections/Repossession Unit)
TEL (513) 723-2200

**Robert Holland**, Pro Se, Plaintiff, 1120 Baker Street, Gary, Indiana 46404
TEL (219) 427-4582

District Court Case No.: 2:13-CV-00491

____X_____   By depositing in the U.S. Mail properly addressed and with sufficient first class postage affixed or the federal electronic filing system at the office of the clerk.

_____   By personal delivery or fax.

_____

Robert M. Holland III, Pro Se