**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION**

```
ROBERT HOLLAND              )
                           )
Plaintiff,                  )
                           )
vs.                         )  No. 2:13-cv-00491
                           )
CERBERUS CAPITAL MANAGEMENT, )
et al.,                     )
                           )
Defendants.                 )
```

<u>**OPINION AND ORDER**</u>

This matter is before the Court on the: (1) Defendants' Cerberus Capital Management, LP, Stephen Feinberg, and Robert Nardelli's Motion to Dismiss Plaintiff's Verified Complaint Pursuant to Fed. R. Civ. P. 12(b)(6) and (b)(2), filed by Defendants, Cerberus Capital Management, LP, Stephen Feinberg, and Robert Nardelli, on June 17, 2014 (DE #28); (2) Motion for Oral Argument on Cerberus Defendants' Motion to Dismiss Plaintiff's Verified Complaint Pursuant to Fed. R. Civ. P. 12(B)(6) and (B)(2), filed by Cerberus Capital Management, LP, Robert Nardelli, and Stephen Feinberg, on July 23, 2014 (DE #65); (3) Defendants, Bosak Motors Auto Dealership, et al.'s Motion to Dismiss, filed by Defendants, Bosak Motors Auto Dealership, Mr. & Mrs. Skip Bosak, John Schultheis, Jonathan Jeffries, and Mike Grzbowski, on July 14, 2014 (DE #57); (4) Defendants' Motion to Dismiss, filed by

Defendants, Kimberly Johnson and TD Auto Finance LLC, Successor in interest to Chrysler Financial LLC, on July 24, 2014 (DE #69); (5) Defendants' Motion to Dismiss, filed by Defendants, Kimberly Johnson and TD Auto Finance LLC, Successor in interest to Chrysler Financial LLC, on July 24, 2014 (DE #70); (6) "Request for Default Judgment Sum Certain by the Clerk of the Court," filed by Plaintiff, Robert Holland, on July 29, 2014 (DE #71); (7) "Request for Clerk's Entry of Default Judgment," filed by Plaintiff, Robert Holland, on June 19, 2014 (DE #37); (8) "Application for Judgment by Default Sum Certain," filed by Plaintiff, Robert Holland, on November 10, 2014 (DE #99); (9) "Request for the Court to Issue an Order for the Defendants to Remove Damaging Credit Information From the Credit Reporting Agencies," filed by Plaintiff, Robert Holland, on November 10, 2014 (DE #100); and (10) "Brief on Treble Damages Pursuant to State Law," filed by Plaintiff, Robert Holland, on November 10, 2014 (DE #101).

For the reasons set forth below: (1) Defendants' Cerberus Capital Management, LP, Stephen Feinberg, and Robert Nardelli's Motion to Dismiss Plaintiff's Verified Complaint Pursuant to Fed. R. Civ. P. 12(b)(6) and (b)(2) (DE #28), is **GRANTED.** The Clerk is **ORDERED** to **DISMISS** the federal claims against these defendants, Cerberus Capital Management, LP, Stephen Feinberg, and Robert Nardelli, **WITH PREJUDICE** and the state claims are **DISMISSED WITHOUT PREJUDICE.** (2) The Motion for Oral Argument on Cerberus Defendants'

2

Motion to Dismiss Plaintiff's Verified Complaint Pursuant to Fed. R. Civ. P. 12(B)(6) and (B)(2) (DE #65) is **DENIED**. (3) Defendants, Bosak Motors Auto Dealership, et al.'s Motion to Dismiss (DE #57) is **GRANTED**.   The Clerk is **ORDERED** to **DISMISS** the federal claims against these defendants, Bosak Motors Auto Dealership, Mr. and Mrs. Skip Bosak, John Schultheis, Jonathan Jeffries, and Mike Grzbowski **WITH PREJUDICE** and the state claims are **DISMISSED WITHOUT PREJUDICE**. (4) Defendants' Motion to Dismiss (DE #69) is **GRANTED**. The Clerk is **ORDERED** to **DISMISS** the federal claims against these Defendants, Kimberly Johnson and TD Auto Finance LLC, Successor in interest to Chrysler Financial LLC, **WITH PREJUDICE** and the state claims are **DISMISSED WITHOUT PREJUDICE**.  (5) Defendants' Motion to Dismiss (DE #70), is duplicative and therefore **DENIED AS MOOT**; (6) The "Request for Default Judgment Sum Certain by the Clerk of the Court," (DE #71), is **DENIED**. (7) The "Request for Clerk's Entry of Default Judgment," (DE #37), is **DENIED**.  The Clerk is **ALSO ORDERED** to **DISMISS** the federal claims against these defendants, Paul Davis, Bull Dog Towing, and the CEO of Bull Dog Towing, **WITH PREJUDICE** and **DISMISS** the state claims **WITHOUT PREJUDICE**.  (8) The "Application for Judgment by Default Sum Certain" (DE #99), is **DENIED**.  (9) The "Request for the Court to Issue an Order for the Defendants to Remove Damaging Credit Information From the Credit Reporting Agencies," (DE #100), is **DENIED**.  (10) The relief requested in the

3

"Brief on Treble Damages Pursuant to State Law," (DE #101), is **DENIED**.  Finally, the Clerk is **ORDERED** to **CLOSE THIS CASE**.


BACKGROUND

Pro se Plaintiff, Robert Holland, filed his complaint against multiple defendants on December 30, 2013 (DE #1).  In his difficult to read and rambling 35- page complaint, he sets forth several different allegations of the Racketeer Influenced and Corrupt Organizations Act ("RICO") violations.  Holland is no stranger to the Court and has been accused by this Court before of filing cases that are "fantastic," "delusional," and "malicious."  *See, e.g.*, *Holland v. City of Gary*, No. 2:12-CV-62-TS, 2012 WL 974882, at *3 (N.D. Ind. Mar. 21, 2012).

In a nutshell, the allegations of the complaint are as follows.  In October 2007, Holland purchased a 2006 Chrysler 300 plus an extended warranty from Defendant, Bosak Motors in Merrillville, Indiana, and obtained financing for the purchase through Defendant, Chrysler Financial, LLC.  (Compl. ¶¶ 53, 61.) Holland alleges he relied on "express representations and warranties" made by Defendant, Mike Grzbowski (a Bosak salesman) about the financial condition of Chrysler and the dependability of the Chrysler 300 and that it did not have any problems and/or major manufacturing defects.  (*Id.* ¶¶ 54-55, 61.)  Plaintiff alleges that Bosak knew at the time of sale that the vehicle "had numerous

4

repeated mechanical problems under normal driving conditions . . . ." (*Id.* ¶ 62.)

Holland claims on February 27, 2009, his Chrysler 300 was towed to Bosak for repair to its ignition switch, and after Bosak's repair department was unable to secure a new ignition switch part after the car had been in the shop for a month, one was retrieved from the junk yard and used to fix his car on March 27, 2009. (*Id.* ¶¶ 81, 105-06.) Plaintiff alleges he was "not compensated for the manufacturing problems and had to pay for the repairs." (*Id.* ¶ 113.) He also alleges that on July 3, 2010, Chrysler Financial directed that his Chrysler 300 be repossessed by Defendant, Bull Dog Towing, despite Plaintiff's claim that he made his monthly car payment the day before his car was towed. (*Id.* ¶¶ 125, 129.) Finally, he alleges the Chrysler 300 was sold at auction without compensation to him. (*Id.* ¶¶ 146-47.) These facts basically comprise Plaintiff's claim that he financed the purchase of a car, the car had mechanical problems, and it was repossessed for nonpayment despite the fact that he allegedly made payment the day before his car was towed. (*Id.* ¶¶ 61, 78, 131.)

Plaintiff's theory of recovery is much more convoluted. To support his RICO claims, Plaintiff has alleged that in May 2007, Cerberus acquired a majority stake in Chrysler, an investment he conclusorily asserts was made to "establish . . . illegal fraudulent strong arm policies and practices with [Chrysler's]

5

customers, dealers and suppliers, etc. in order to increase cash flows and reduce expenses." (*Id.* ¶¶ 28, 31.) Plaintiff also alleges that the $7.4 billion acquisition was not for any legitimate business purpose, but "to establish and/or maintain[] an entirely new business with new aggressive illegal operational policies and procedures" and that Cerberus "used the Chrysler and Chrysler Financial Enterprises (and their appearance of legitimacy to perpetrate more, and less easily discovered, criminal acts than it could do on it[s] own) to obtain money, property and other assets generated by a pattern of racketeering activity." (*Id.* ¶¶ 37-38.)

Holland also alleges that after it acquired Chrysler, Cerberus, along with all the other Defendants, comprised an unlawful association-in-fact and "seized influence and/or control of Chrysler and Chrysler Financial Assets and utilized the companies as a criminal enterprise to further its criminal objectives." (*Id.* ¶ 42.) In furtherance of the supposed scheme, Plaintiff suggests that Defendant Stephen Feinberg, the CEO of Cerberus, installed Defendant Robert Nardelli "to head Chrysler . . . and implement Cerberus' new policies and practices" and that those policies and practices led to "considerable pressure from Chrysler and Chrysler Financial CEO Robert Nardelli through . . . Cerberus to increase performance through its illegal collections activities, cost reductions, through directives to its dealerships

to help increase revenues, decrease expenses (and costs) and efforts to obtain favorable financing for operations." (*Id.* ¶¶ 44, 50.)

Supposedly acting in concert, Plaintiff claims Defendants committed the following alleged predicate acts of racketeering activity giving his to his RICO claims: (1) making "materially false deceptive misrepresentations" to induce Plaintiff to buy a car (*id.* ¶ 52); (2) holding his car hostage, in bad faith, for a month to make repairs to his ignition switch (*id.* ¶¶ 68, 106-07); (3) committing extortionate trespass, wrongful repossession and theft/conversion by repossessing the car despite Plaintiff's assurances he was not delinquent in his payment (*id.* ¶¶ 119, 132); and (4) unlawful collection of a debt, defamation and damage to credit resulting from the repossession (*id.* ¶ 155). Plaintiff further asserts Defendants participated in a wide-ranging conspiracy because they "were NOT acting in the course and scope of their employment in the traditional rendering of their services but were acting in concert committing predicate acts of racketeering that all occurred in a related concerted fashion in connection to the Chrysler 300, its repairs and warranties." *Id.* ¶ 179 (emphasis in original).

The instant motions to dismiss were filed by Defendants, Cerberus Capital Management, LP, Stephen Feinberg, and Robert Nardelli (hereinafter "Cerberus Defendants") (DE #28) pursuant to

7

Federal Rule of Civil Procedure 12(b)(6) and (b)(2)[1]; Defendants, Bosak Motors Auto Dealership, Mr. and Mrs. Skip Bosak, John Schultheis, Jonathan Jeffries, and Mike Grzbowski (hereinafter "Bosak Defendants") (DE #57) pursuant to Rule 12(b)(6); and Defendants, Kimberly Johnson and TD Auto Finance, LLC, Successor in interest to Chrysler Financial LLC (hereinafter "TDAF") (DE #69) pursuant to Rule 12(b)(6).[2]  They move to dismiss all the claims in the complaint: Count I for violation of RICO, 18 U.S.C. § 1962(a) and Indiana Civil Rico; Count II for violation of RICO, 18 U.S.C. § 1962(c) and Indiana Civil RICO; and Count III for violation of RICO 18 U.S.C. § 1962(d) and Indiana Civil RICO.  The motions to dismiss are fully briefed and ready for adjudication.[3]

Three parties in this case have not appeared.  Defendants, Paul Davis, "CEO Bull Dog Towing," and Bull Dog Towing.  The Clerk made an entry of default as to Paul Davis.  (DE #60.) Additionally, this Court made an entry of default as to the CEO of

---

[1] The Cerberus Defendants argue that to the extent that a claim based upon the Indiana RICO might survive, the Court lacks personal jurisdiction over the Cerberus Defendants, and the Court should dismiss under Rule 12(b)(2).  As elucidated later in this Order, the Court finds that Plaintiff failed to properly state federal RICO claims, thus all the federal claims have been dismissed prior to trial.  It is this Court's practice to dismiss without prejudice state supplemental claims whenever all federal claims have been dismissed.  *See Groce v. Eli Lilly & Co.*, 193 F.3d 496, 501 (7th Cir. 1999). Thus, the Court need not address this argument under Rule 12(b)(2), and this case will be analyzed under the 12(b)(6) standard.

[2] Defendants, Kimberly Johnson and TD Auto Finance, LLC, Successor in interest to Chrysler Financial LLC ("TDAF") filed another motion to dismiss, also dated July 24, 2014 (DE #70).  It appears to be word for word the same as the document at DE #69, and is therefore denied as moot.

[3] Plaintiff also filed a "Rico Case Statement," on July 31, 2014 (DE #78), and this Court has given it the weight to which it is entitled.

Bull Dog Towing and Bull Dog Towing on October 8, 2014 (DE #94).
Plaintiff filed a motion for default judgment as to Defendants, the
CEO of Bull Dog Towing and Bull Dog Towing on June 19, 2014 (DE
#37). He also filed a motion for default judgment against Paul
Davis on July 29, 2014 (DE #71). In support of these motions,
Plaintiff filed a lengthy affidavit with attachments detailing his
alleged damages. (DE #32.) Plaintiff stated he was seeking
$41,833,455 in total punitive damages against the various
defendants. *Id.* On November 4, 2014, this Court held a hearing
that was set aside for Plaintiff to prove his damages for the
defaulted defendants, at which Plaintiff appeared but Paul Davis,
the CEO of Bull Dog Towing, and Bull Dog Towing did not appear.
However, the Court informed Plaintiff at this hearing that it
believed the allegations of the complaint were not sufficient to
establish legal claims. Plaintiff then filed another application
for default judgment on November 10, 2014, this time seeking
damages in the amount of $66,123,878.90. (DE #99.)


DISCUSSION

Motion to Dismiss for Failure to State a Claim

     Federal Rule of Civil Procedure 12(b)(6) provides for the
dismissal of a complaint, or any portion of a complaint, for
failure to state a claim upon which relief can be granted. "To
survive a motion to dismiss, a complaint must contain sufficient

factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotations omitted); *see also Ray v. City of Chicago*, 629 F.3d 660, 662-63 (7th Cir. 2011) (citation omitted) ("While the federal pleading standard is quite forgiving . . . the complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.").

A complaint should not be dismissed for failure to state a claim "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 561 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)). Plus, *Iqbal* requires that a plaintiff plead content which allows this Court to draw a reasonable inference that the defendant is liable for the alleged misconduct. 556 U.S. at 678.

In ruling on a motion to dismiss brought pursuant to Federal Rule of Civil Procedure 12(b)(6), the court must draw all reasonable inferences that favor the plaintiff, construe the allegations of the complaint in the light most favorable to the plaintiff, and accept as true all well-pleaded facts and allegations in the complaint. *Thompson v. Ill. Dep't of Prof'l Regulation*, 300 F.3d 750, 753 (7th Cir. 2002); *Perkins v. Silverstein*, 939 F.2d 463, 466 (7th Cir. 1991). In order to withstand a motion to dismiss, a complaint must allege the

10

"operative facts" upon which each claim is based. *Kyle v. Morton High Sch.*, 144 F.3d 448, 454-55 (7th Cir. 1998); *Lucien v. Preiner*, 967 F.2d 1166, 1168 (7th Cir. 1992). A plaintiff is required to include allegations in the complaint that "plausibly suggest that the plaintiff has a right to relief, raising that possibility above a 'speculative level' " and "if they do not, the plaintiff pleads itself out of court." *E.E.O.C. v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007) (quoting in part *Twombly*, 550 U.S. at 569 n. 14 (2007)). "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Twombly*, 550 U.S. at 555 (quotation marks, ellipsis, citations and footnote omitted). Thus, a "plaintiff must do better than putting a few words on paper that, in the hands of an imaginative reader, *might* suggest that something has happened to her that *might* be redressed by the law." *Swanson v. Citibank*, N.A., 614 F.3d 400, 403 (7th Cir. 2010) (emphasis in original).

The Court notes that Plaintiff is appearing *pro se* in this matter. Generally, although "pro se litigants are masters of their own complaints," and "[d]istrict judges have no obligation to act as counsel or paralegal to pro se litigants," *Myles v. United States*, 416 F.3d 551, 552 (7th Cir. 2005), a document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than

formal pleadings drafted by lawyers. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). However, "on a motion to dismiss, courts are not bound to accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555 (citing *Papasan v. Allain,* 478 U.S. 265, 286 (1986) (quotation marks omitted)). In this case, the Court notes that Holland was a former attorney and purports to have been "an attorney that practices law in the state of Indiana" "at all material time relevant in [his] complaint." (Compl. ¶ 6.) According to the Seventh Circuit, "[a]s a former attorney, [Holland] has only the most tenuous claim to the more forgiving pleading standards we afford typical pro se plaintiffs."). *Weston v. Illinois Dep't Of Human Services*, 433 Fed. Appx. 480, 482 n.1 (7th Cir. 2011). No matter what, even a liberal construction of the complaint is not "an invitation to apply RICO to new purposes that Congress never intended." *Reves v. Ernst & Young*, 507 U.S. 170, 183 (1993).

This Court recently noted that "RICO was never intended to turn garden-variety state law fraud claims into federal RICO actions." *Evan v. JP Morgan Chase Credit Cards*, No. 2:10-CV-246, 2011 WL 2946134, at *3 (N.D. Ind. July 21, 2011) (citing *Jennings v. Auto Meter Prods., Inc.*, 495 F.3d 466, 472 (7th Cir. 2007)). Yet, Defendants argue that Plaintiff has done exactly that.

<u>Plaintiff Fails To State a Claim Under 1962(c) Because There</u>

<u>Are No Adequately Pled Predicate Acts of Racketeering</u>
<u>Activity</u>

It appears from the complaint that Plaintiff has charged all Defendants in Count II with violations of 18 U.S.C. § 1962(c), which makes it "unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt." 18 U.S.C. § 1962(c).   The necessary elements of a RICO claim under section 1962(c) are: "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Vicom, Inc. v. Harbridge Merchant Servs., Inc.*, 20 F.3d 771, 778 (7th Cir. 1994) (quotation omitted); *see also Crissen v. Gupta*, No. 2:12-CV-00355, 2014 WL 301615, at *6 (S.D. Ind. Jan. 28, 2014) (reciting same elements). Additionally, a plaintiff must allege and prove the existence of two distinct entities: (1) a person; and (2) an enterprise. *Cedric Kushner Promotions, Ltd. v. King*, 533 U.S. 158, 161 (2001).

First, Defendants argue that this count must be dismissed due to Plaintiffs' failure to adequately plead acts of mail fraud or any predicate acts of racketeering activity.[4]   Not every alleged

---

[4] The Court pauses to note that the three counts of action are contained in 2 pages of the 35-page complaint. (Compl., pp. 33-34.)  Plaintiff merely recites the statutory language of RICO, and incorporates hundreds of earlier paragraphs of the complaint (for example, paragraphs 1 - 190 are incorporated in Count II) (Compl. ¶ 191).  This is simply insufficient under Rule 8(a)(2) and Rule 9(b)'s requirement of particularity regarding fraud.  *See, e.g.,*

bad act constitutes racketeering activity under RICO - the federal RICO statute enumerates an exclusive list of specific offenses that qualify as predicate acts of "racketeering activity" for purposes of RICO liability. *See* 18 U.S.C. § 1961(1); *McDonald v. Schencker*, 18 F.3d 491, 495 (7th Cir. 1994) (affirming dismissal of RICO claim where plaintiff failed to plead a racketeering activity under Section 1961(1)).

Regarding the Cerberus Defendants, Plaintiff has failed to plead that any of them committed even a single predicate act of racketeering activity themselves, thus they cannot be liable as RICO defendants. (Pls.' Mem., pp. 8-12.) *See Pringle v. Garcia*, No. 2:09-cv-022-PPS-PRC, 2014 WL 1651976, at *4 (N.D. Ind. Apr. 23, 2014) (dismissing RICO claim where plaintiff failed to plead that defendant personally committed requisite predicate acts).

In response, Plaintiff merely states that his predicate acts were "clearly stated in the Complaint. . . and included mail fraud, wire fraud, bank fraud, extortion, intimidation, unlawful collection of debt, harassment, fraud, conversion, etc." and contends "Indiana Civil RICO requir[es] less stringent claims."

---

*Arnold v. Alphatec Spine, Inc.*, No. 1:13-cv-714, 2014 WL 2896838, at *11 n.15 (S.D. Ohio June 26, 2014) ("incorporation into a single claim of approximately 100 incoherently pled paragraphs wholly fails to provide 'a short and plain statement of the claim;'" citing Fed. R. Civ. P. 8(a)(2)); *Sterling Nat'l Mortg., Co., Inc. v. Infinite Title Solutions, LLC*, No. 10-22147, 2011 WL 1303225, at *5 (S.D. Fla. Mar. 4, 2011) ("even if [the Court] were able to find the makings of a conspiracy somewhere within the 217 paragraphs [plaintiff] incorporates by reference in [the RICO conspiracy count], it would be insufficient to satisfy [plaintiff's] obligations under Rule 9(b).").

(Pl.'s Resp., DE #58, pp. 12-13.)   Nevertheless, both federal (and Indiana Civil) RICO still only include specific listed offenses as racketeering activity giving rise to predicate acts.   *See* 18 U.S.C. § 1961(1); Ind. Code § 35-45-6-1(e).   Moreover, Plaintiff's allegations of claims sounding in extortion, intimidation, unlawful collection of a debt, harassment, general fraud, and conversion against Defendants TDAF are either not in the defined terms under the statutes, or they are inadequately pled and give no notice for the basis of the claim.

The allegations of mail fraud, wire fraud and bank fraud, are among the enumerated racketeering activities in § 1961(1); however, they are subject to the heightened pleading standard set forth in Rule 9(b) of the Federal Rules of Civil Procedure, which requires a plaintiff to plead all allegations of fraud with particularity.[5] *See Slaney v. Int'l Amateur Athletic Fed'n*, 244 F.3d 580, 597 (7th Cir. 2001) ("allegations of fraud in a civil RICO complaint are subject to the heightened pleading standard of Fed. R. Civ. P. 9(b), which requires a plaintiff to plead all averments of fraud particularity."); *Emery v. American General Finance, Inc.*,71 F.3d 1343, 1348 (7th Cir. 1995) (stating to prevail in a RICO case, where the acts are of fraud, "the circumstances of each act must be pleaded with particularity.").   In other words, a plaintiff is

---

[5] The complaint alleges "racketeering activity" of "mail fraud, wire fraud, and bank fraud." (Compl. ¶ 174.)

required to explain how the predicate act of mail fraud, wire fraud, or bank fraud constitutes "racketeering activity." *Williams v. Aztar Indiana Gaming Corp.*, 351 F.3d 294, 298 (7th Cir. 2003). This is done by explaining how each element of the predicate act is satisfied. *Id.* at 299.

The elements of mail and wire fraud, 18 U.S.C. sections 1341 and 1343, are: "(1) the defendant's participation in a scheme to defraud; (2) defendant's commission of the act with intent to defraud; and (3) use of the mails or wire communication in furtherance of the fraudulent scheme." *United States v. Walker*, 9 F.3d 1245, 1249 (7th Cir. 1993). In order to satisfy this standard, a RICO plaintiff must allege "the identity of the person who made the representation, the time, place and content of the misrepresentation, and the method by which the misrepresentation was communicated to the plaintiff." *Slaney,* 244 F.3d at 599 (citation omitted); *Windy City Metal Fabricators & Supply, Inc. v. CIT Technology Financing Services, Inc.*, 536 F.3d 663, 668 (7th Cir. 2008) (reciting the required circumstances of fraud); *Hefferman v. Bass*, 467 F.3d 596, 601 (7th Cir. 2006) (also listing facts that must be alleged in detail). In a case involving multiple defendants, like this one, "the complaint should inform each defendant of the nature of his alleged participation of the fraud." *Vicom*, 20 F.3d at 778 (quotation omitted).

In response to all the defendants' arguments that he failed to

16

plead mail and wire fraud with the requisite particularity,
Plaintiff argues he met his burden because he "gave his personal
knowledge of the mail and wire fraud" and could not provide more
specifics because "[o]bviously, a person does not keep information
about every person they communicate with." (Resp., DE #67, p. 11.)
Even pleading the entirety of one's personal knowledge may not be
enough. *See, e.g., Cox* v. Sherman Capital, LLC, No. 1:12-cv-01654-
TWP-KJD, 2014 WL 1328147, at *5 (S.D. Ind. Mar. 31, 2014) ("One of
the purposes of the heightened pleading requirements in Rule 9(b)
is to prevent 'fishing expeditions,' so to excuse [a plaintiff's]
failure to include the requisite information in the Complaint
because [he] lack[s] information that would otherwise be unearthed
in discovery would defeat the purpose behind the rule.").

This Court finds that Plaintiff has failed to plead the
alleged mail and wire fraud claims with particularity as required
by Rule 9(b).  Sweeping generalizations that "mail [and] wire . .
. fraud occurred" (Compl. ¶¶ 65, 116, 174) are insufficient without
identifying exactly which defendant engaged in the alleged fraud.
*See, e.g., Vicom,* 20 F.3d at 777-78 (finding allegations that
misrepresentations made "at the direction, under the supervision,
or with the knowledge and consent" of all the defendants not
specific enough); *see also Sears v. Likens*, 912 F.2d 889, 893 (7th
Cir. 1990) (holding complaint properly dismissed where it "lump[ed]
all the defendants together and [did] not specify who was involved

17

in what activity"). There are no specific allegations that any of the defendants used the mail or wires in connection with this action (with the exception of Plaintiff's purported receipt of "Chrysler Marketing and Advertising materials") (Compl. ¶ 65), and Plaintiff failed to specify the date, sender, or content of any such mailing. Without specifying when he received the mailing, who sent it, and what statements in the mailing were allegedly false or fraudulent, such assertions cannot support a mail or wire fraud claim. *Slaney*, 244 F.3d at 599-600; *see also Catlin v. Hanser*, No. 1:10-CV-0451, 2011 WL 1002736, at *5 (S.D. Ind. Mar. 17, 2011) (finding "conclusory allegations . . . are not enough to plead the requisite pattern of fraud."). Plaintiff alleges he spoke to some individuals on the phone, like Defendant Kimberly Johnson (Compl. ¶¶ 142-43), but again, he has failed to give the requisite detail about the alleged conversations or show how they contained any statements that constituted alleged fraudulent representations. *See Jepsen, Inc. v. Makita Corp.*, 34 F.3d 1321, 1328 (7th Cir. 1994) ("loose references to mailing and telephone calls in furtherance of a purported scheme to defraud will not do.").

As noted by TDAF, in addition to an adequacy of pleading problem, Holland also has a standing issue with respect to any allegation that any of the Defendants committed bank fraud. 18 U.S.C. § 1344 specifically defines bank fraud as defrauding "a financial institution." 18 U.S.C. § 1344. Holland has not, and

18

cannot, allege that he is a financial institution.  *See, e.g., Whitehead v. Gateway Chevrolet*, No. 03 C 5684, 2004 WL 316413, at *6 (N.D. Ill. Feb. 2, 2004) (only financial institutions have standing to allege violations of the financial institution fraud statute as predicate acts for RICO).

Additionally, TDAF is the only Defendant which Plaintiff alleges conducted money laundering.  (Compl. ¶ 152.)  The applicable statute narrowly defines money laundering as a person who "knowing that the property involved in a financial transaction represents the proceeds of some form of unlawful activity, conducts or attempts to conduct such a financial transaction which in fact involves the proceeds of specified unlawful activity . . . ."  18 U.S.C. § 1956.  The statute goes on to define "specified unlawful activity" to include criminal activities like kidnapping, smuggling of goods, etc., but does not cover the alleged criminal activity in this case (money obtained from an auction house after a repossession sale of a car).  Because the facts alleged do not constitute "specified unlawful activity" under the money laundering statute, they are not actionable as a predicate act of racketeering activity.  *See, e.g., Starfish Inv. Corp. v. Hanson*, 370 F.Supp.2d 759, 773-74 (N.D. Ill. 2005) (dismissing RICO count where complaint failed to allege defendants engaged in activities constituting "specified unlawful activity" within meaning of the money laundering statute).

<u>Plaintiff Also Fails To State A Claim Under 1962(c) Because
There Is No Pattern of Racketeering</u>

Plaintiff has also failed to allege sufficient facts to
demonstrate there was a pattern of racketeering activity. The
compensable harm in a cause of action under 1962(c) "is the harm
caused by predicate acts sufficiently related to constitute a
pattern, for the essence of the violation is the commission of
those acts in connection with the conduct of an enterprise." *Anza
v. Ideal Steel Supply Corp.*, 547 U.S. 451, 457 (2006) (quoting
*Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 497 (1985)). A
"pattern" of racketeering activity has at least two predicate acts
of racketeering committed within a ten-year time period. 18 U.S.C.
§ 1961(5). Those "predicate acts" must all be violations of the
specified list of criminal laws, as noted in section 1961.
Moreover, Plaintiff must allege a pattern of racketeering activity
for each RICO defendant. *See Defalco v. Bernas*, 244 F.3d 286, 306
(2d Cir. 2001). The test recognizes that, in enacting RICO,
"Congress was concerned . . . with long term criminal conduct."
*Vicom*, 20 F.3d at 780.

Plaintiff has not made any cognizable or plausible allegations
that the Cerberus Defendants or the Bosak Defendants committed any
single specific predicate act of racketeering activity, much less
a pattern of racketeering activity. RICO was never intended to
allow plaintiffs to turn garden-variety state law fraud claims into

20

federal RICO actions.  *Jennings*, 495 F.3d at 472.  Regarding all the alleged wrongful activity by TDAF, the allegations allege fraud against one victim, for one single injury arising out of one specific event (the repossession of Plaintiff's vehicle) - thus no pattern of activity has been alleged for RICO purposes.  *See Brandt v. Schal Assocs., Inc.*, 854 F.2d 948, 952 (7th Cir. 1988) (plaintiff's "allegations posit only multiple acts in furtherance of a single episode of fraud . . . against a single victim . . . [S]uch a scheme cannot constitute a RICO pattern."); *Lipin Enters., Inc. v. Lee*, 803 F.2d 322, 323-24 (7th Cir. 1986) (upholding dismissal of a complaint alleging racketeering acts all designed to defraud one victim on one occasion).


### Additionally, Plaintiff Fails to State a Claim Under 1962(c) Because There Is No Properly Pled RICO Enterprise

Count II of the complaint fails for another reason, which is that Plaintiff failed to adequately allege a RICO enterprise.  An enterprise "includes any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity."  18 U.S.C. § 1961(4).  Thus, an enterprise is not merely a conspiracy, even if it involves multiple, sometimes unrelated parties.  *See Fitzgerald v. Chrysler Corp.*, 116 F.3d 225, 228 (7th Cir. 1997).

Here, it seems that Plaintiff is alleging an association in

21

fact enterprise.  (Compl. ¶ 42.)  The Supreme Court in *Boyle v. United States*, 556 U.S. 938, 946 (2009), held that an association in fact enterprise must have a "structure" and must have "at least three structural features: a purpose, relationships among those associated with the enterprise, and longevity sufficient to permit these associates to pursue the enterprise's purpose." *Id.*  The complaint in this case does not identify a purpose, relationship, or longevity sufficient to pursue a specific purpose by the Defendants.  The allegations do not show how the different actors (from Chrysler, to owners of a motor dealership, to the owner of a towing company) are associated, any plausible structure whatsoever, or what common course of conduct they had.  Dismissal is therefore warranted.  *See, e.g., Stachon v. United Consumers Club, Inc.*, 229 F.3d 673, 676 (7th Cir. 2000) (affirming dismissal where members failed to adequately allege existence of an "enterprise," finding "[W]e cannot accept Appellants' vague allegations of a RICO enterprise made up of a string of participants, known and unknown, lacking any distinct existence and structure."); *Fitzgerald*, 116 F.3d at 228 ("where a large, reputable manufacturer [Chrysler Corp.] deals with its dealers and other agents in the ordinary way, so their role in the manufacturer's [alleged] illegal acts is entirely incidental, differing not at all from what it would be if these agents were the employees of a totally integrated enterprise, the manufacturer plus its dealers and other agents (or any subset

of the member of the corporate family) do not constitute an enterprise within the meaning of the statute."); *United Food & Commercial Workers Unions & Emp'rs. Midwest Health Benefits Fund v. Walgreen Co.*, 719 F.3d 849, 855 (7th Cir. 2013) (finding no enterprise where allegations were "only that the defendants had a commercial relationship, not that they had joined together to create a distinct entity. . . ."). Here, Plaintiff has made no allegations of organization between the defendant individuals and corporations, with no set of specific goals to be reached outside of the alleged frauds committed against Plaintiff. The allegations simply do not rise to the definition of "enterprise" in 18 U.S.C. § 1961(4). *See, e.g., Holland v. Lake Cnty. Mun. Gov't.*, No. 2:13-CV-179-TLS, 2013 WL 5230242, at *4 (N.D. Ind. Sept. 16, 2013) (finding same Plaintiff's RICO claims failed to state claims upon which relief can be granted because Plaintiff failed to plausibly plead the existence of a criminal enterprise under 18 U.S.C. § 1962(c)).

The Defendants have set forth other arguments for why the complaint fails to properly set forth any federal RICO claims under 18 U.S.C. § 1962(c). Having already found the complaint is deficient because it fails to plead predicate acts, the mail/wire fraud claims are not pled with particularity, Plaintiff lacks standing to bring a bank fraud claim, there is no pattern of racketeering, and a RICO enterprise has not been sufficiently

alleged, the Court declines to elaborate upon other reasons why the complaint fails to state a claim upon which relief may be granted. However, the Court notes that Plaintiff has also failed to properly plead the collection of an unlawful debt and that all Defendants conducted the affairs of a RICO enterprise, which constitute additional reasons to dismiss the federal RICO claims under section 1962(c).

### Plaintiff Has Also Failed to State a Claim Under § 1962(a)

Count I of the complaint alleges violation of 18 U.S.C. § 1962(a), which prohibits use of income derived from a pattern of racketeering activity to be used in the furtherance of activity and further allows redress if injury is caused by the use or investment of racketeering income in the enterprise. Again, the complaint fails to identify a "pattern" of racketeering activity, and fails to allege any facts supporting the speculation that proceeds from any racketeering activity were used or invested in the acquisition of an enterprise, and further that Plaintiff sustained any injury proximately caused by the use or investment. *See RAO v. BP Prods. N.A.*, 589 F.3d 389, 399 (affirming dismissal of claim where complaint merely restated the elements of section 1962(a) "in boilerplate fashion and contains no suggestion that money was used or invested in the operation of an enterprise or that he suffered an injury caused by the use or investment of racketeering

24

income."); *Vicom*, 20 F.3d at 778.   Consequently, Count I is also dismissed.

### Plaintiff Failed to Plead Any Agreement to Conspire Under 18 U.S.C. § 1962(d)

Plaintiff's claims under 18 U.S.C. § 1962(d) in Count III of the complaint also fail.   To state a RICO conspiracy claim under section 1962(d), a plaintiff must allege "(1) that each defendant agreed to maintain an interest in or control of an enterprise or to participate in the affairs of an enterprise through a pattern of racketeering activity and (2) that each defendant further agreed that someone would commit at least two predicate acts to accomplish those goals." *Lachmund v. ADM Investor Servs., Inc.*, 191 F.3d 777, 784 (7th Cir. 1999) (quotation omitted).   There are no allegations in the complaint demonstrating Defendants made an agreement to commit RICO violations.   Although he generally alleges the Defendants "agreed, as alleged and evidenced by their concerted false statements, false representations, 'activities' and omissions to act that all have a common goal and purpose to injure Robert Holland in his person" (Compl. ¶ 196), Plaintiff fails to provide specific facts indicating each Defendant entered into an agreement to violate RICO.   *See Goren v. New Vision Int'l, Inc.*, 156 F.3d 721, 732-33 (7th Cir. 1998)(dismissing where "complaint is utterly devoid of allegations indicating either a specific agreement by these defendants to participate in the affairs of the enterprise or

an agreement to the commission of two specific predicate acts"). Moreover, "[s]ince [Plaintiff] fail[s] to establish a violation of section 1962(c), [his] 1962(d) claim based on the same facts must fail as well." *Stachon v. United Consumers Club, Inc.*, 229 F.3d 673, 677 (7th Cir. 2000). Consequently, Count III is also dismissed.

### Indiana State RICO Claims And Any Other Remaining State Claims

The complaint also states claims for violation of the Indiana Civil RICO statute. (DE #1, pp. 33-34.) Upon due consideration, the state law claims are **DISMISSED WITHOUT PREJUDICE** because the federal claims have been dismissed prior to trial. 28 U.S.C. § 1367(c)(3); *Groce*, 193 F.3d at 501 ("[I]t is the well-established law of this circuit that the usual practice is to dismiss without prejudice state supplemental claims whenever all federal claims have been dismissed prior to trial.").

### Default Judgment

Plaintiff has moved for default judgment against Defendants, Paul Davis, the CEO of Bull Dog Towing, and Bull Dog Towing, first seeking $41,833,455.00 (DE #32) in damages, then requesting $66,123,878.90 (DE #99). This Court acknowledges the Seventh Circuit's well established rule that "the well-pleaded allegations of the complaint relating to liability are taken as true[.]"

26

*Merrill Lynch Mortg. Corp. v. Narayan*, 908 F.2d 246, 253 (7th Cir. 1990)(quotation omitted).  However, pleadings that are "nothing more than conclusions" are not entitled to the assumption of truth. *Iqbal*, 556 U.S. at 678-79.  This includes legal conclusions couched as factual allegations, *see Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 465 (7th Cir. 2010), and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Iqbal*, 556 U.S. at 678.  The entry of default judgment lies within the sound discretion of the trial Court and is not automatic. *Duling v. Markun*, 231 F.2d 833, 836 (7th Cir. 1956).  "In determining whether to enter a default judgment, the court may consider a number of factors including whether there is a material issue of fact, whether the default is largely technical, whether the plaintiffs were substantially prejudiced, and how harsh an effect a default judgment might have." *Wolf Lake Terminals, Inc. v. Mut. Marine Ins. Co.*, 433 F. Supp. 2d 933, 941 (N.D. Ind. 2005)(citation omitted).  Plaintiffs seeking default judgment must demonstrate they are entitled to judgment as a matter of law. *Cass Cnty. Music Co. v. Muedini*, 55 F.3d 263, 265 (7th Cir. 1995).

"Precedent supports the principle that default judgment is only appropriate if the well-pleaded allegations, along with any evidence submitted to the court, are sufficient to establish a legal claim." *Rosenbaum v. Seybold*, No. 1:06-CV-352-TLS, 2013 WL 2285946, at *5 (N.D. Ind. May 23, 2013) (citing, *inter alia*,

*Wagstaff-EL v. Carlton Press Co.*, 913 F.2d 56, 57-58 (2d Cir. 1990) (default judgment properly vacated where plaintiff's claims were facially invalid or utterly unsupported); *Nishimatsu Constr. Co. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975) ("[A] defendant's default does not in itself warrant the court in entering a default judgment.  There must be a sufficient basis in the pleadings for the judgment entered."); *Days Inn WorldWide, Inc. v. Mayu & Roshan, LLC*, No. 06-cv-1581, 2007 WL 1674485, at *4 (D. N.J. June 8, 2007) ("Default judgment is inappropriate, even where defendants have failed to appear, unless the plaintiff has provided well pleaded facts sufficient to establish a claim."); *Terio v. Great W. Bank*, 166 B.R. 213, 218 (S.D.N.Y. 1994) ("The conclusion that the complaint is subject to dismissal strongly militates against granting [the] Plaintiff's application for a default judgment.")).  "Default judgment is appropriate only if the well-pleaded allegations of the complaint are sufficient to establish a legal claim." *Franko v. All About Travel, Inc.*, No. 2:09-CV-233, 2014 WL 2803987, at *1 (N.D. Ind. June 19, 2014) (citing *Gard v. B & T Fin. Serv.*, No. 2:12-CV-5, 2013 WL 228816, at *1 (N.D. Ind. Jan. 22, 2013); *Marshall v. Baggett*, 616 F.3d 849, 854 (8th Cir. 2010) (vacating default judgment)).

Here, as discussed earlier in this Order, Plaintiff has failed to plausibly plead RICO claims against Defendants, including Bull Dog Towing, the CEO of Bull Dog Towing, and Paul Davis, and he has

failed to show he has set forth a proper legal claim.  Plaintiff failed to properly plead predicate acts of racketeering activity, there is no pattern of racketeering activity, Plaintiff failed to adequately allege a RICO enterprise, and he has failed to properly state a RICO conspiracy claim.  Pleading requirements are to be strictly enforced when default judgment is sought under RICO.  *Alan Neuman Prods., Inc. v. Albright*, 862 F.2d 1388, 1393 (9th Cir. 1988).  The insufficiency of the complaint to state RICO claims against the defendants that failed to appear warrants denial of the motions for default judgment and dismissal of the federal claims against them with prejudice.  *See, e.g., Hargrave v. Chief Asian, LC*, 479 Fed. Appx. 827, 2012 WL 1573632 (10th Cir. May 7, 2012) (affirming denial of motion for default judgment and dismissing suit with prejudice); *Husain v. Casino Control Comm'n*, 265 Fed. Appx. 130, 2008 WL 449763, at *1 (3d Cir. Feb. 20, 2008) (affirming district court's denial of motion for default judgment and dismissing complaint with prejudice).  Like the other defendants, the state claims against the defaulted defendants will be dismissed without prejudice.


CONCLUSION

For the reasons stated above, (1) Defendants' Cerberus Capital Management, LP, Stephen Feinberg, and Robert Nardelli's Motion to Dismiss Plaintiff's Verified Complaint Pursuant to Fed. R. Civ. P.

12(b)(6) and (b)(2) (DE #28), is **GRANTED**.  The Clerk is **ORDERED** to **DISMISS** the federal claims against these defendants, Cerberus Capital Management, LP, Stephen Feinberg, and Robert Nardelli, **WITH PREJUDICE** and the state claims are **DISMISSED WITHOUT PREJUDICE.** (2) The Motion for Oral Argument on Cerberus Defendants' Motion to Dismiss Plaintiff's Verified Complaint Pursuant to Fed. R. Civ. P. 12(B)(6) and (B)(2) (DE #65) is **DENIED.** (3) Defendants, Bosak Motors Auto Dealership, et al.'s Motion to Dismiss (DE #57) is **GRANTED**.   The Clerk is **ORDERED** to **DISMISS** the federal claims against these defendants, Bosak Motors Auto Dealership, Mr. and Mrs. Skip Bosak, John Schultheis, Jonathan Jeffries, and Mike Grzbowski **WITH PREJUDICE** and the state claims are **DISMISSED WITHOUT PREJUDICE.** (4) Defendants' Motion to Dismiss (DE #69) is **GRANTED.** The Clerk is **ORDERED** to **DISMISS** the federal claims against these Defendants, Kimberly Johnson and TD Auto Finance LLC, Successor in interest to Chrysler Financial LLC, **WITH PREJUDICE** and the state claims are **DISMISSED WITHOUT PREJUDICE.**  (5) Defendants' Motion to Dismiss (DE #70), is duplicative and therefore **DENIED AS MOOT**; (6) The "Request for Default Judgment Sum Certain by the Clerk of the Court," (DE #71), is **DENIED.** (7) The "Request for Clerk's Entry of Default Judgment," (DE #37), is **DENIED.**   The Clerk is **ALSO ORDERED** to **DISMISS** the federal claims against these defendants, Paul Davis, Bull Dog Towing, and the CEO of Bull Dog Towing, **WITH PREJUDICE** and

**DISMISS** the state claims **WITHOUT PREJUDICE**.  (8) The "Application for Judgment by Default Sum Certain" (DE #99), is **DENIED**.  (9) The "Request for the Court to Issue an Order for the Defendants to Remove Damaging Credit Information From the Credit Reporting Agencies," (DE #100), is **DENIED**.  (10) The relief requested in the "Brief on Treble Damages Pursuant to State Law," (DE #101), is **DENIED**.  Finally, the Clerk is **ORDERED** to **CLOSE THIS CASE**.

DATED: November 18, 2014           /s/ RUDY LOZANO, Judge
                                   United States District Court