# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF INDIANA

# HAMMOND DIVISION

| | | |
|---|---|---|
| ROBERT HOLLAND | ) | |
|     Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | Cause No.: 2:13-CV-491 |
| Cerberus Capital Management, LP, | ) | |
| Stephen Feinberg (CEO Cerberus Capital | ) | |
| Management, LP), Robert Nardelli (CEO of Cerberus) | | |
| O & AC, LLC), CEO New Chrysler Corporation, | ) | |
| CEO Old Chrysler Corporation, | ) | |
| Chrysler Financial, LLC (TD Bank, Group (N.A.)), | ) | |
| Paul Davis, (Supervisor Chrysler Customer | ) | |
| Assistance Team), Kimberly Johnson (Chrysler | ) | |
| Financial Collections/Repossession Unit), | ) | |
| Bosak Motors Auto Dealership, | ) | |
| Mr. & Mrs. Skip Bosak (Owners of Bosak Motors | ) | |
| Auto Dealership), John Schultheis (General Manager) | | |
| Bosak Motors), Jonathan Jeffries (Service Manager | ) | |
| Bosak Motors), Mike Grzbowski (Salesman Bosak | ) | |
| Motors), CEO of Bull Dog Towing and Bull Dog | ) | |
| Towing. | ) | |
|     Defendants. | ) | |

## MEMORANDUM IN SUPPORT OF
## SUMMARY JUDGMENT

## INTRODUCTION

Comes now the Plaintiff Robert Holland and files this Memorandum in Support of a

Judgment on the Pleadings and Summary Judgment pursuant to Federal Rules of Civil

Procedure 12(c), 54, 56 and 58 against the Defendants Bull Dog Towing, CEO of Bull Dog

Towing and Paul Davis. ᴬⁿᵈ Chrysler (DE# 53)   In support of this Memorandum the Plaintiff states the following:

## THE SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine

dispute as to any material fact and the movant is entitled to judgment as a matter of law."

*Spurling v. C & M Fine Pack, Inc.*, 739 F.3d 1055, 1060 (7th Cir. 2014) (quoting

Fed.R.Civ.P. 56(a)). A genuine dispute as to any material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986). In determining summary judgment motions, "facts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." *Scott v. Harris*, 550 U.S. 372, 380, 127 S.Ct. 1769, 167 L.Ed.2d 686 (2007). The party seeking summary judgment has the burden of establishing that there is no genuine dispute as to any material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L.Ed.2d 265 (1986). After "a properly supported motion for summary judgment is made, the adverse party 'must set forth specific facts showing that there is a genuine issue for trial.'" *Anderson*, 477 U.S. at 255 (quotation omitted).

**DISCUSSION**

This case is the exact type of the "prototypical RICO case" described by 7th Circuit Judge Lozano.  The "prototypical RICO case" is, "one in which a person bent on criminal activity seizes control  of a previously legitimate firm and uses the firm's resources, contacts, facilities, and appearance of legitimacy to perpetuate more, and less easily discovered, criminal acts than he could do in his own person, that is, without channeling his criminal activities through the enterprise that he has taken over. *Fitzgerald v. Chrysler Corp.*, 116 F.3d 225, 227 (7th Cir. 1997).  In the instant case, the Cerberus Defendants, owners of Chrysler and Chrysler Financial, LLC, had taken over the companies and the companies were now in financial distress.(desperate) The operations and policies had changed. (DE #1 par. 31) Even the name was changed to Chrysler Holding, LLC.(DE #1 par. 30)    Holland's complaint identifies a completely different owner and a different CEO with a completely different management/operating style bent on

criminal activity known to have committed similar bad acts in the past.(DE # 1 P. 23 par. 121)
In addition, Holland alleges that the new corporations are being used to engage in a pattern of
racketeering activity through legal entities beyond its control, such as independent banks, law
firms, accounting firms, or public relations firms, the person / enterprise distinction will more
than likely be satisfied. *See* Living Designs, Inc. v. E.I. Dupont De Nemours and Co., 431 F.3d
353, 362 (9th Cir. 2005)

The instant case is similar to Hosseini, where the defendants' course of conduct, viewed
in the light most favorable to the verdict (Plaintiff), was neither independent nor lacking in
coordination. Together the defendants **operated auto dealerships**, sharing bank accounts, health
insurance, and employees. They transferred money back and forth with some frequency, referred
customers to each other and sold vehicles. **The association in fact Defendants' course of
conduct, viewed in the light most favorable to the verdict (Plaintiff), was neither
independent nor lacking in coordination.  Together the defendants operated auto
dealerships, sharing bank accounts, health insurance, and employees.  They transferred
money back and forth with some frequency, referred customers to each other, and sold
vehicles.** Cited in UNITED STATES OF AMERICA vs. AMIR HOSSEINI, 679 F.3d 544 (7th
Cir. 2011) (DE #1 P. 12 par. 42, P. 30 par. 183-185)  **These statements refer to all the
Defendants in the instant complaint.** Id.

In order to have exculpate the Defendants, the court in this instance, would have
believe that they never interacted and discussed, in any depth, the operation of the service
sales and departments and the source of that department's income, *Jaguar Cars, Inc. v. Royal
Oaks Motor Co.*, 46 F.3d 258, 270 (3d Cir. 1995) cited in American Auto. Accessories, Inc. v.
Fishman, No. 98-1266, UNITED STATES COURT OF APPEALS FOR THE SEVENTH

CIRCUIT, 175 F.3d 534; 1999, and that Chrysler, Chrysler Financial, LLC and Cerberus

Capital Management, LP, had little or no control over the operations, required no compliance

to their standards and regulations and no knowledge of their revenues, expenses and costs

associated with the sale of Chrysler vehicles and warranties.

**UNDISPUTED MATERIAL FACTS**

See the Plaintiff's Verified Complaint in its entirety. (DE #1)  The Defendants Paul Davis

(Chrysler), CEO of Bull Dog Towing and Bull Dog Towing did not answer or otherwise defend

in the case.  Also, Chrysler Financial, LLC, and Kimberly Johnson did not timely file their

Motion to Dismiss.

**THE ARGUMENT**

Congress designed The Racketeer Influenced and Corrupt Organizations Act ("**RICO**"),

enacted as Title IX of the Organized Crime Control Act of 1970, to combat organized crime.

**RICO** aims to eliminate organized crime by bringing "the highly diversified acts of a single

organized crime enterprise under **RICO's** umbrella" and "to curb the infiltration of legitimate

business organizations by racketeers." **RICO,** however, has broad application beyond the

organized crime context because Congress mandated that **RICO** "be liberally construed to

effectuate its remedial purposes."[1] Thus, the Supreme Court has held that **RICO** may be applied

to legitimate businesses.

---

[1] *see* United States v. Turkette, 452 U.S. 576, 587 (1981) (finding Congress's enactment of intentionally broad **RICO** statute eliminates courts' authority to restrict its application).

*See* Reves v. Ernst & Young, 507 U.S. 170, 183 (1993) (relying on Congress's intent to construe **RICO** broadly to resolve ambiguities);

4

The Plaintiff Robert Holland, Pro Se, asserts multiple claims under separate provisions of RICO, however, he seeks judgment on subsections (a), (c) and (d) of 18 U.S.C. § 1962 (c) and Indiana Civil RICO and various other state law claims. Each of the 18 U.S.C. § 1962 provisions prohibits a different type of conduct which is associated with or furthers racketeering activity.

**Association-in-Fact Enterprise Under Sections 1962(c)**

"To state a claim under § 1962(c), a RICO plaintiff must show the '(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity.'" *Richmond v. Nationwide Cassel L.P.*, 52 F.3d 640, 644 (7th Cir. 1995) (quoting *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496, 87 L.Ed.2d 346, 105 S.Ct. 3275 (1985))

In the instant case, the Plaintiff Robert Holland is entitled to Summary Judgment on all the elements of his 18 U.S.C. § 1962 (c) RICO claims. 18 U.S.C. § 1962 (c) states that, "It shall be unlawful for any a) person b) employed by or associated with an(y) enterprise c) engaged in, or the activities of which affect, interstate or foreign commerce, d) to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs e) through a pattern f) of racketeering activity or g) collection of unlawful debt." 18 U.S.C. § 1962 (c).

**A. The Defendants are Persons**

Under **RICO,** the term "person" includes "any individual or entity capable of holding a legal or beneficial interest in property." This broad definition allows for a variety of entities

---

H.J., Inc. v. Nw. Bell Tel. Co., 492 U.S. 229, 248-49 (1989) (reiterating **RICO** was broadly written to encompass a wide range of criminal activity; thus, narrow construction of the **pattern** element would be contrary to congressional intent).

other than a natural person to qualify under **RICO** as a "person," including an Automobile Manufacturer. 18 U.S.C. § 1962; 18 U.S.C. § 1961(3); *See* **Fitzgerald v. Chrysler Corp., 116 F.3d 225, 226 (7th Cir. 1997) (holding that an automobile manufacturer is a "person" under RICO)**

## B. The Associate In Fact Defendants are an Enterprise

**The Associate in Fact Defendants bent on criminal activity seized control of Chrysler and Chrysler Financial, LLC,** and used the firm's resources, contacts, facilities, and appearance of legitimacy to perpetuate more, and less easily discovered, criminal acts than they could do on their own, that is, without channeling his criminal activities through the enterprise that he has taken over.  In *Boyle* the Court held that an "association-in-fact **enterprise**" has just three elements: "a purpose," "relationships among those associated with the **enterprise,**" and "longevity sufficient to permit these associates to pursue the **enterprise's** purpose." *Id*. at 946; *see also Jay E. Hayden Found. v. First Neighbor Bank, N.A*., 610 F.3d 382, 389 (7th Cir. 2011) ("[T]he alleged **enterprise** in this case had purpose and relationships and it certainly had 'longevity,' and if *Boyle* is taken at face value[,] nothing more is required to make a conspiracy a **RICO enterprise.**"). (DE #1 P. 30-31 Par. 183-185); 18 U.S.C. § 1961(4) (emphasis added). The Supreme Court reads this definition quite broadly. *See* **Boyle** *v. United States*, 556 U.S. 938, 944-45, 129 S. Ct. 2237, 173 L. Ed. 2d 1265 (2009)

In addition the contacts between the Defendants were not just incidental contacts. Compl. Par. 42.  Proof of these patterns would not be enough to show that the individuals were members of an **enterprise.** 556 U.S. at 947 n.4 (emphasis added). Id. **But here, the defendants' course of conduct, viewed in the light most favorable to the verdict (Plaintiff), was neither**

independent nor lacking in coordination.  **Together the defendants operated auto**

**dealerships, sharing bank accounts, health insurance, and employees.  They transferred**

**money back and forth with some frequency, referred customers to each other, and sold**

**vehicles.** Cited in UNITED STATES OF AMERICA vs. AMIR HOSSEINI, 679 F.3d 544 (7th

Cir. 2011) (DE #1 P. 12 par. 42, P. 30 par. 183-185)  <u>**These statements refer to all the**</u>

<u>**Defendants in the instant complaint.**</u> Id.


## C.  The Enterprise Engaged and Affected Interstate and Foreign Commerce

The Seventh Circuit has held that the "required nexus between the activities of the

**enterprise** and interstate commerce need not be great; even a minimal effect on interstate

commerce satisfies this jurisdictional element." United States v. Muskovsky, 863 F.2d 1319,

1325 (7th Cir. 1988) (internal quotation and citation omitted).  Following this standard, past

cases have found the required nexus where the **enterprise** purchased supplies and office

equipment from companies located outside Illinois, even though the supplies and office

equipment were not shown to be used by, or central to, the Illinois racketeering activity charged.

See e.g., United States v. Murphy, 768 F.2d 1518, 1531 (7th Cir. 1985), cert. denied, 475 U.S.

1012, 89 L. Ed. 2d 304, 106 S. Ct. 1188 (1986); United States v. Conn, 769 F.2d 420, 423-24

(7th Cir. 1985).

The activities of the **enterprise** and interstate commerce need not be great; even a

minimal effect on interstate commerce satisfies this jurisdictional element." United States v.

Muskovsky, 863 F.2d 1319, 1325 (7th Cir. 1988).  The circumstances of the instant case are

similar to the circumstances found in *United States v. Shoffner*, 826 F.2d 619, 626 (7th Cir.),

*cert. denied*, 484 U.S. 958, 108 S. Ct. 356, 98 L. Ed. 2d 381 (1987), the Appellants were

convicted of conspiracy to commit offenses against the United States, interstate transportation and receipt of stolen vehicles, and mail fraud for their participation in a business which stole vehicles, disguised them, and then sold them. One appellant was convicted in separate trial for intimidation.[2] Therefore, **the Enterprise Engaged and Affected Interstate and Foreign Commerce.**   The Cerberus Defendants (Cerberus Capital Management, LP, Stephen Feinberg and Robert Nardelli) engaged in and affected Interstate and Foreign Commerce by purchasing National Companies Chrysler (Auto Manufacturer) and Chrysler Financial, LLC, (Auto Financing Company) and utilizing its assets and implementing entirely new policies and procedures. (DE #1 P. 10-13 Par. 28-32, 37-38, 43-50)  The Chrysler Defendants engaged in and affected Interstate and Foreign Commerce by the sale of Chrysler cars and warranties.   The Chrysler Financial, LLC Defendants engaged in and affected Interstate and Foreign Commerce by financing auto loans for Chrysler, wrongfully repossessing cars (robbery) and selling them at auctions across state lines.(DE #1 P. 13, 22 Par. 52, 119)  The Bosak Defendants engaged in and affected Interstate and Foreign Commerce by the sale and repair of motor vehicles for the above defendants. (DE #1 P. 14, 16-7 Par. 52, 68)  In addition, these defendants used the mail, wire and banks to carry out their schemes to defraud.

### D.  Each Defendant was Employed by or Associated with the Enterprise

---

[2] 18 U.S.C. § 2312 (1982) reads, *in extenso*:

Whoever transports in interstate or foreign commerce a motor vehicle or aircraft, knowing the same to have been stolen, shall be fined not more than $ 5,000 or imprisoned not more than five years, or both.
18 U.S.C. § 2313 (1982) reads, *in extenso*:

Whoever receives, conceals, stores, barters, sells, or disposes of any motor vehicle or aircraft, moving as, or which is a part of, or which constitutes interstate or foreign commerce, knowing the same to have been stolen, shall be fined not more than $ 5,000 or imprisoned not more than five years, or both.

Under RICO, the "persons" charged with violating the statute must be either "employed by or associated with" the enterprise. 18 U.S.C. § 1962(c). Like the other RICO elements, this requirement is construed broadly and encompasses both "insiders and *outsiders*—those merely 'associated with' an enterprise—who participate directly *and indirectly* in the enterprise's affairs through a pattern of racketeering activity." *Schacht v. Brown*, 711 F.2d 1343, 1360 (7th Cir.1983), *cert. denied*, 464 U.S. 1002 (1983) (citation and internal quotation omitted). "Thus, the RICO net is woven tightly to trap even the smallest fish, those peripherally involved with the enterprise." *Id.* (citation and internal quotation omitted). In this case, it is undisputed that each of the individual defendants was either employed by or associated with the enterprise, *i.e.*, Chrysler and Chrysler Financial, LLC. *See Schacht*, 711 F.2d at 1360 (holding that defendants who entered into contracts with the alleged enterprise were sufficiently associated with the enterprise to meet RICO's association requirement). (DE #1 P. 11, 14, 16-17, 22, 26-27 Par. 36-38, 52, 68, 119, 155)

### E.  The Defendants' Conduct in the Enterprise's Affairs

**The Cerberus Defendants**

The Associate in Fact Defendants conspired and seized control of Chrysler and Chrysler Financial assets and utilized the companies to further its criminal objectives. (DE #1 P. 12 Par. 42-50) **Cerberus Capital Management, LP is a privately owned company founded by Stephen Feinberg (the CEO of the Company and owns an interest in the company) that does not have to publicly report its financial operations.** (DE #1 P. 9 Par. 25) **The <u>CEO of Cerberus Capital Management, LP, Stephen Feinberg</u>,** appointed Robert Nardelli as CEO of Chrysler and Chrysler Financial, LLC, to implement Cerberus' new policies and practices. (DE #1 P. 5 Par. 8; P.13 Par. 43-50) **<u>Robert Nardelli</u> implemented the illegal and fraudulent**

9

**policies and practices of Chrysler and Chrysler Financial, LLC.** (DE #1 P. 5 Par. 9; P. 13-

Par. 43-50)  Mr. Nardelli ratified the conduct of Chrysler Financial, LLC.(DE #1 P. 25 Par. 145)

Mr. Nardelli was ranked as one of the worst CEOs of all time (DE #1 P. 23 Par. 121) and had

committed similar bad acts in the past. (DE #32, 45 and 46)  **Chrysler (Old Chrysler and/or**

**New Chrysler)** (DE #1 P. 5 and/or 6 Par. 11 and/or 12) ratified the conduct of the Bosak

Defendants and did not honor its warranty. (DE #1, #32, #45 and #46)

**The Bosak Motors Defendants**

      Holland has alleged and demonstrated that the Bosak Defendants, i.e., the Bosak Motors

Auto Dealership, Mr. & Mrs. Skip Bosak (Owners of Bosak Motors Auto Dealership), Jonathan

Schultheis (General Manager Bosak Motors), Jonathan Jeffries (Service Manager Bosak Motors)

and Mike Grzbowski (Salesman Bosak Motors) each "conduct[ed] or participate[d], directly or

indirectly, in the conduct of such enterprise's affairs." 18 U.S.C. § 1962(c). The Supreme Court

has explained what it means to conduct or participate in the conduct of an enterprise. To be

liable, one must "have some part in directing" the affairs of the enterprise. *Reves v. Ernst &*

*Young,* 507 U.S. 170, 179, 113 S. Ct. 1163, 122 L. Ed. 2d 525 (1993).  The Seventh Circuit has

explained that "simply performing services for an enterprise, even with knowledge of the

enterprise's illicit nature, is not enough to subject an individual to **RICO** liability under §

1962(c); instead, the individual must have participated in the operation and management of the

enterprise itself." *Goren,* 156 F.3d at 728 but see Indiana Civil RICO,  *Keesling v. Beegle*, 880

N.E.2d 1202, 1206-08 (Ind. 2008). )  Each Defendant "conduct[ed] or participate[d], directly or

indirectly, in the conduct of such enterprise's affairs." 18 U.S.C. § 1962(c).

      **Mr. & Mrs. Skip Bosak** were the CEOs and Owners of Bosak Motors Auto Dealership,

owned, directed and controlled the **the Bosak Motors Auto Dealership**, including sales, repair

service and its operations.  In addition, Mr. & Mrs. Skip Bosak given the Chrysler dealership license were responsible for the dealerships compliance with applicable law, its policies and interaction with directives from Chrysler, Chrysler Financial, LLC, including all mail, wire and bank transfers. (DE #1 P. 13-16 Par. 51-66 and P. 17-22 Par. 67-117)

**Jonathan Schultheis** as General Manager Bosak Motors reported to Mr. & Mrs. Skip Bosak and was responsible for the overall daily operating performance of the Bosak Motors Auto Dealership including including sales, sales financing, repair service and its overall operations which include all mail, wire and bank transfers. Mr. Schultheis took part in the sales presentation and financing of the Chrysler 300 and the warranty.   Mr. Schultheis is responsible for dealership compliance with applicable laws, setting and establishing dealership policies and staff training and all correspondence sent to customers from the auto dealership. (DE #1 P. 15 Par. 56, P. 13-16 Par. 51-65, P.16-22 Par. 67-117)

**Jonathan Jeffries** as Service Manager Bosak Motors is responsible for maintenance and repair employees and services provided by the Bosak Dealership including but not limited to invoicing, receipt of monies, representations (false representation made to holland regarding the repair of his vehicle) regarding service to customers and (scheme to defraud furthered by the use of mail) mail distributed to potential customers.  The false representations made to Holland by Mr. Jeffries breached the warranty contract and contract to repair causing Holland undue hardship. (See (DE #1 P. 13-16 Par. 51-66, P.16-22 Par. 67-117)  In addition, Mr. Jeffries as part of the scheme to defraud sent mail to Holland in furtherance of the scheme just prior to his repair service on February 24, 2009. (See DE #32 Exhibit 4 Mail from Jonathan Jeffries Bosak Repair Service)(Mail Fraud).  Even though the repairs were not provided pursuant to the warranty, Holland could not receive his car unless payment was made.

11

(Extortion)  Mr. Jeffries was directly involved in the racketeering activity on or about October 27, 2007 and February 26, 2009 to March 27, 2009 and the conspiracy. (DE #1 P. 13-16 Par. 51-66, Par. 56 and P. 17-22 Par. 67-117, Par. 91)

**Mike Grzbowski** as Salesman Bosak Motors along with Jonathan Schutheis made false representations regarding the Chrysler 300 and its warranties and the financial condition of Chrysler. (DE #1 P. 15 Par. 56, P. 13-16 Par. 51-65, P.16-22 Par. 67-117)  In addition, Mr. Grzbowski as part of the scheme to defraud provided advertising materials from the Bosak Dealership Offices and sent Holland correspondence in the mail prior to his purchase of the vehicle.  Mr. Grzbowski was directly involved in the racketeering activity on or about October 27, 2007 and February 26, 2009 to March 27, 2009 scheme to defraud regarding repair of Chrysler 300 and warranty and the conspiracy. (DE #1 P. 13-16 Par. 51-66, Par. 56 and P. 17-22 Par. 67-117, Par. 91)

**The Chrysler Defendants**

**Paul Davis of Chrysler** (Customer Service) ratified the conduct of the Chrysler Financial, LLC, Defendants.  (DE #1 P. 6 Par. 13; P. 25 Par. 145)   See **Robert Nardelli** CEO of Chrysler and Chrysler Financial, LLC, above.  Finally the Chrysler Corporation approved and ratified all of the Bosak Defendants conduct.

**The Chrysler Financial, LLC, (TDAF) Defendants**

**Kimberly Johnson,** Manager of the Collections Department at Chrysler Financial, LLC, fraudulently induced Holland to make his Chrysler payment, then used the Bull Dog Towing Defendants to rob Holland and take the Chrysler 300 anyway, defamed Holland by disseminating information to the 3 credit bureaus, harassed Holland through attempts to collect

a debt, and damaged his credit. (DE #1 P. 6 Par. 14; P. 22-26 Par.118-153 ; P. 26 Par. 154 -
175; P. 29-32 Par. 176-186) **Chrysler Financial, LLC ratified the illegal conduct of
Kimberly Johnson and the Bull Dog Towing Defendants.  CEO Robert Nardelli who
helped change the operations of the collections department (DE #45 and 46), still had
control over Chrysler Financial, LLC at this time.** (DE #1 P. 5 Par. 10; P. 23 Par. 123)(P.
22-26 Par.118-153; P. 26 Par. 154 -175; P. 29-32 Par. 176-186)

**The Bull Dog Towing Defendants**

**The CEO of Bull Dog Towing** failed to acknowledge and correct the actions (robbery,
money laundering, i.e., liquidation of Chrysler 300 and knowing facilitating the damage to
Holland's credit) of his employees. (This is of course if the CEO of Bull Dog Towing himself
was not the individual who robbed Holland of his Chrysler 300) The CEO of Bull Dog Towing
cannot be purposely indifferent, ignorant and put his head in the sand in order to escape
liability. (DE #1 P. 7 Par. 20) **Bull Dog Towing** benefitted from the illegal actions of its staff
and thus is liable pursuant to RICO. (DE #1 P. 8 Par. 21; P. 22-26 Par.118-153 ; P. 26 Par. 154
-175; P. 29-32 Par. 176-186)  Finally, **the titles of each one of these defendants is given
indicating there role and function in the conspiracy.** (DE #1 Par. 15-19)

### F.  The Pattern

The statute in turn defines a **pattern of racketeering activity** to require at least two acts
of racketeering activity committed within a ten-year period. *See* 18 U.S.C. § 1961(5). To be
guilty of the substantive 1962(c) offense, then, an individual must, among other things,
participate in two or more predicate acts of racketeering. § 1962(c); *see Salinas v. United States*,
522 U.S. 52, 62-63, 118 S. Ct. 469, 476, 139 L. Ed. 2d 352 (1997).

In *Morgan v. Bank of Waukegan*, 804 F.2d 970 (7th Cir. 1986), the Court opted for a "middle course between th[e] two extremes," requiring the predicate acts to be "ongoing over an identifiable period of time so that they can fairly be viewed as constituting separate transactions." *Id.* at 975. In determining whether the predicate acts are sufficiently **continuous** and **related,** we urged courts to examine the following factors: the number and variety of predicate acts and the length of time over which they were committed, the number of victims, the presence of separate schemes and the occurrence of distinct injuries. *Id.* at 975. (DE #1 p. 30-32 par. 183-186) We noted however that "the mere fact that the predicate acts relate to the same overall scheme or involve the same victim does not mean that the acts automatically fail to satisfy the pattern requirement." *Id.* at 975-76. Thus, *Morgan* envisioned a fact-specific inquiry, in which no single factor would be determinative. *Marshall & Ilsley Trust Co. v. Pate*, 819 F.2d 806, 809-10 (7th Cir. 1987). In *Lipin Enterprises v. Lee*, 803 F.2d 322 (7th Cir. 1986). The parties do not dispute that these alleged predicate acts occurred within a ten-year period.

In their attempt to claim that the Plaintiff Robert Holland has not sufficiently pled a pattern of racketeering activity the Cerberus defendants claim that, "The most Plaintiff can offer are implausible, general allegations about Cerberus' strategies of implementing "new aggressive illegal operational policies and procedures" upon its acquisition of Chrysler." The relevant "new aggressive illegal operational policies and procedures" upon its acquisition of Chrysler" were made against Holland and others similarly situated (DE #1 P. 30-31 par. 183-186) by the defendants and in detailed fashion Holland described the plausible nature of the predicate acts that have been committed by the Defendants in his complaint.(DE #1)

In the alternative, pattern has been found within a single scheme.  In Liquid Air the Court found that a single scheme which lasted seven months and defrauded a single victim.  The Court found that the repeated infliction of economic injury upon a single victim of a single scheme is sufficient to establish a pattern of racketeering activity for purposes of civil RICO. In *SK Hand Tool Corp.*, we noted that it is an exception to the general rule to find a pattern within a single scheme. 852 F.2d at 941 (citing *Jones*, 845 F.2d at 758-59). However, we have done just that in a number of cases, including this court's most recent decision on the issue, in *Deppe*, 863 F.2d at 1364-66, and in *Morgan*, where we said "the mere fact that the predicate acts relate to the same overall scheme or involve the same victim does not mean that the acts automatically fail to satisfy the pattern requirement." 804 F.2d at 976. *See also Horak*, 833 F.2d at 1240; ***Liquid Air***, 834 F.2d at 1303-05; *Appley*, 832 F.2d at 1027-28.

### G.  The Racketeering Activity

The acts of racketeering committed by the Defendants were not just garden variety fraud but were schemes to defraud furthered by the use of the mail, wire and bank transfers. **PREDICATE ACT #1 MAIL AND WIRE SCHEME TO DEFRAUD** included Fraudulent inducement (Bosak Motors staff misrepresentations – Chrysler 300), Fraudulent inducement (Bosak Motors staff misrepresentations - warranty), Marketing and Advertising Fraud (Chrysler Brochures and mail), Mail Fraud section 1341 (mail from Bosak Motors sales dept.), Wire Fraud Section 1343 (calls and financing of vehicle), Bank Fraud Section 1344 (transfer of money regarding Chrysler 300), Money Laundering (Section 1956 and 1957)(I.C. 35-45-15-5 moneys acquired through fraud), Corrupt Business Influence (I.C. 35-45-6-2), Conspiracy, and Gross Negligence (Negligent Supervision and Retention). Athey Products

Corp. v. Harris Bank Roselle, 89 F.3d 430 (7th Cir. 1996); Indemnuled Capital Investments,

SA v. R.i O'Brien & Assoc., 12 F.3d 1406 (7th Cir. 1993) (Interstate Transportation and Sale

of Motor Vehicles)

## PREDICATE ACT #2 REPAIR AND WARRANTY SCHEME TO DEFRAUD

included Bad Faith Breach of Contract to Repair (See Bosak Repair Invoice – excessive time,

used part put in not new part, violation of warranty no deductible necessary also, ignition

switch was defective), Bad Faith Breach of Warranty (See Bosak Repair Invoice – excessive

time, used part put in not new part, violation of warranty no deductible necessary also,

ignition switch was defective)(no rental car provided and no reimbursement for tow)(Also,

told new part would later be put in but was never done), Fraudulent Representations made in

Breach of Sales Contract (No other car provided after long delays pursuant to Indiana Law),

Mail Fraud Section 1341 (Repair Service Mail sent on or about 02/24/09; Bosak Repair

Invoice – Deductible Payment), Wire fraud Section 1343 (Phone Calls from Bosak

misrepresentations regarding repair; deductible payment information sent to Chrysler), Bank

Fraud Section 1344 (Deductible payment), Money Laundering Section 1956-57 (I.C. 35-45-

15-5 Deductible Payment), Extortionate Credit Transaction Section 891-894 (Chrysler 300

held until payment of deductible pursuant to warranty), Corrupt Business Influence (I.C. 35-

45-6-2), Conspiracy, and Gross Negligence (Negligent Supervision and Retention).  Id.

Above.  (Also see *Weeks v. Samsung Heavy Industries Co.,* 126 F.3d 926, 942 (7th Cir. 1997)

(holding promissory fraud is actionable). (**Trafficking in Motor Vehicle Parts) (Section**

**1951 (relating to interference with commerce, robbery, or extortion), section 1952**

**(relating to racketeering)**

**PREDICATE ACT #3 SCHEME TO DEFRAUD Wrongful Repo (Robbery) on or about 07/0310 and sale of stolen motor vehicle** includes Bad Faith Breach of Sales Contract Terms, Fraudulent Misrepresentations made in Breaching Sales Contract, Fraudulent Inducement to make last car payment of $703, Theft (Last car payment of $703), Trespass (Cullison vs. Medley 570 N.E. 2d 27, Ind. S. Ct. 1991), Invasion of Privacy (False light to public eye – neighbors saw repo and damage to credit resulting in denial of purchase of car), Assault, Breach of Peace - Massengill v. Indiana National Bank, 550 N.E.2d 97 (Ind. Ct. App. 1990), IND. CODE § 26-1-9-503. Id. at 99. ;J. Sheldon & R. Sable, *Repossessions,* § 6.3 (1988); State v. Hart, 669 N.E.2d 762, 764 (Ind. Ct. App. 1996); Census Federal Credit Union v. Wann, 403 N.E.2d 348, 350 (Ind. Ct. App. 1980);  Wallace v. Chrysler Credit Corporation, 743 F. Supp. 1228 (W.D.Va. 1990), Harassment (Repo, damage to credit, attempts to collect unlawful debt), Robbery, Intentional Infliction of Emotional Distress, (FCRA) Dalton v Capital Associated Indus. (2001, CA4 NC) 257 F3d 409, 17 BNA IER Cas 1313. *See Stevenson*, 987 F.2d at 296-97; (15 USCS §§ 1681 et seq),as well as for injury to one's reputation and creditworthiness. *Bryant v. TRW, Inc.*, 689 F.2d 72 (6th Cir.1982), Intimidation, Extortionate Credit Transactions (18 USCS 891-894), Money Laundering Section 1956-57 (I.C. 35-45-15-5), Interference with Commerce, Mail fraud Section 1341, Wire fraud section 1343, Bank Fraud Section 1344, Receiving Stolen Property I.C. 35-43-4-2, Collection of an Unlawful Debt, Fraudulent sale of Chrysler 300 at Auction (Trafficking in Motor Vehicles)(Interstate sale of stolen motor vehicles), FDCPA violated, FCRA violated, Lowry v Croft (In re Croft) (2013, BC WD Tex) 500 BR 823;  ***BMW of N. Am. Inc. v. Gore***, 517 U.S. 559, 568, 116 S. Ct. 1589, 134 L. Ed. 2d 809 (1996). (nondischargeable under 11 U.S.C.S. § 523(a)(2)(A)). **Sections 2312 and 2313 (relating to interstate transportation of**

17

**stolen motor vehicles), sections 2314 and 2315 (relating to interstate transportation of stolen property - items in trunk of Chrysler 300).** Athey Products Corp. v. Harris Bank Roselle, 89 F.3d 430 (7th Cir. 1996); Indemnuled Capital Investments, SA v. R.i O'Brien & Assoc., 12 F.3d 1406 (7th Cir. 1993) (Interstate Transportation and Sale of Motor Vehicles) (Also see *Weeks v. Samsung Heavy Industries Co.,* 126 F.3d 926, 942 (7th Cir. 1997) (holding promissory fraud is actionable).

## PREDICATE ACT #4 – SCHEME TO DEFRAUD BY THE USE OF MAIL AND

**WIRE** includes FDCPA violations, RICO violations (Unlawful Collection of a debt (Usury) (See letter from Chrysler Financial and Holland's Credit Report to establish usury violation pursuant to RICO), FCRA – (continued violation included in Predicate Act # 3), Mail Fraud Section 1341(Dunning Letters and other requests sent in the mail), Wire Fraud Section 1343 (telephone call after Repo and false info. to credit agencies), Defamation (False info. to 3 major credit bureaus), Corrupt Business Influence and Conspiracy. Athey Products Corp. v. Harris Bank Roselle, 89 F.3d 430 (7th Cir. 1996); Indemnuled Capital Investments, SA v. R.i O'Brien & Assoc., 12 F.3d 1406 (7th Cir. 1993) (Interstate Transportation and Sale of Motor Vehicles) (Also see *Weeks v. Samsung Heavy Industries Co.,* 126 F.3d 926, 942 (7th Cir. 1997) (holding promissory fraud is actionable).  (ALL SECTIONS 18 USCS 1962(a), 18 USCS 1962 (b), 18 USCS 1962(c), 18 USCS 1962(d), and Indiana Civil RICO.  Any of these alleged offenses would be enough — if proven — to constitute a predicate act. See 18 U.S.C. 1961(1)(B), (D) and/or Indiana Civil RICO.   18 U.S.C. § 1961(1)(B). [3]  . *Jaguar Cars, Inc. v. Royal Oaks Motor Co.*, 46

---

[3] The Hobbs Act makes it a crime to obstruct commerce "by robbery or extortion" or by committing or threatening "physical violence to any person or property in furtherance of a plan" to violate section 1951. Also, 18 USCS § 894.  Collection of extensions of credit by extortionate means

(a) Whoever knowingly participates in any way, or conspires to do so, in the use of any extortionate means
   (1) to collect or attempt to collect any extension of credit, or

F.3d 258, 270 (3d Cir. 1995) cited in American Auto. Accessories, Inc. v. Fishman, No. 98-1266, UNITED STATES COURT OF APPEALS FOR THE SEVENTH CIRCUIT, 175 F.3d 534; 1999.

The Defendants shared its profits with others in the alleged enterprise. *See, e.g.*, *United Food*, 719F.3d at 855, by increasing business, increasing their cash flows, reducing costs and expenses through the illegal activities increased profits thus increasing the value of the companies allowed them to be sold at a higher price. See Hosseini. (DE # 1 P. 43-50) The vertically integrated structure of the Defendants forcing pressure to commit illegal activities from the top down allowed each of the defendants to continue benefit from the illegal activities during the financial crisis rather than go out of business.

H. **The Injury by Reason of the Enterprise's Pattern of Activity 18 U.S.C. § 1962(c).**

In order to prevail on a civil RICO claim, a plaintiff must not only prove that there has been a RICO violation under 18 U.S.C. § 1962, but must also show that he was "injured in his business or property by reason of [the] violation." 18 U.S.C. § 1964(c).  In *Holmes v. Securities Investor Protection Corporation*, 503 U.S. 258, 268 (1992), the Supreme Court held that the phrase "by reason of," as it is used in § 1964(c), requires a showing of proximate cause, *i.e.*, a direct relation between the injury asserted and the injurious conduct alleged.  Further, a showing of RICO injury requires proof of a "concrete financial loss[.]" *Evans v. City of Chicago*, 434 F.3d 916, 932 (7th Cir. 2006)

( See DE # 99, 100 and 101)

---

(2) to punish any person for the nonrepayment thereof,

shall be fined under this title or imprisoned not more than 20 years, or both.

I. **The Injury by the Investment of the Racketeering Proceeds 18 U.S.C. § 1962(a)**

Section 1962(a) prohibits both direct and indirect use or investment of any income derived from a racketeering activity. The statute also forbids using the proceeds of the income to establish or operate any enterprise which could affect interstate or foreign commerce. ***Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 461, 126 S. Ct. 1991, 164 L. Ed. 2d 720 (2006); Liquid Air Corp vs. Rogers, 834 F.2d 1297 (7th Cir. Ct. App. 1987);** United States v. Vogt, 910 F.2d 1184, 1193-94 (4th Cir. 1990) (finding violation of § 1962(a) because defendant used part of bribery money from drug smuggler to establish multi-corporation laundering enterprise)

J. **The Injury by Maintaining an Interest in An Enterprise 18 U.S.C. § 1962(b)**

Section 1962(b) prohibits "any person" from acquiring or maintaining, "through a **pattern** of racketeering activity," an interest in "any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce." **Liquid Air Corp vs. Rogers, 834 F.2d 1297 (7th Cir. Ct. App. 1987); Midwest Grinding** (DE #1 P. 10 Par. 27-29)

K. **The Injury by Conspiracy to Violate 18 U.S.C. § 1962(a), (b) and (c).**

Section 1962(d) prohibits "any person" from conspiring to violate any provision of § 1962.  The conspiracy claims were proven by the required coordinated and concerted conduct of the Defendants.  "If conspirators have a policy, plan and/or scheme which calls for some conspirators to perpetrate the crime and others to provide support, the supporters are as guilty as the perpetrators." (See DE #1 P. 12-13 par. 43-50)(DE #45 and 46 Exhibit 2-6 and the attached information from the Cerberus website regarding its Executive Leadership and on Cerberus' significant control over Chrysler Financial, LLC, effecting collections (third bullet point))(IRE and FRE 201(d), 401, 402, 404(b), 406, 407, 801(d)(2), 803(6), 803(4), 807, 902)

20

*Id.* at 64. (DE #45 and 46 Exhibit 4 Bosak Repair Service Mailer sent from Jonathan Jeffries to Holland for the purpose to defraud, Bosak Defendants knew at this time 02/24/09 that there was a parts shortage and many parts could not be obtained; Also See DE #32 Exhibit 5 Forbes Article on Parts Shortage dated 04/03/09)(DE #32 Exhibit 3 Bosak Repair Invoice and Exhibit 4 Tow Invoice)  Salinas v. United States, 522 U.S. 52, 61-66 (1997); *Goren v. New Vision Int'l, Inc.*, 156 F.3d 721, 732 (7th Cir. 1998); Neapolitan.

L. **Indiana Civil RICO**

Indiana's Corrupt Business Influence Act (hereinafter "Indiana RICO"), Indiana Code §35-45-6-2, is patterned after the federal RICO statute.  *Yoder Grain, Inc. v. Antalis*, 722 N.E.2d 840, 845 (Ind. Ct. App. 2000).   Indeed, Indiana courts often analyze state and federal RICO claims jointly.  *See id*; *see also Chavez v. State*, 722 N.E.2d 885, 893-95 (Ind. Ct. App. 2000) (treating state RICO claim the same as federal RICO claim for purposes of double jeopardy analysis); *Koger v. State*, 513 N.E.2d 1250, 1257 (Ind. Ct. App. 1987) ("The federal courts liberally construe the federal [RICO] statute and we similarly interpret Indiana's RICO statute."). To avoid duplicative arguments, the Plaintiffs hereby renew and incorporate herein their arguments set forth in Part I, *supra*, and seek summary judgment on the same elements with respect to their Indiana RICO claim.  The *Keesling v. Beegle*, 880 N.E.2d 1202, 1206-08 (Ind. 2008) court specifically concluded that the state **RICO** provision doesn't contain the *Reves* requirement that a **RICO** defendant must exert some degree of management or direction over the **enterprise.** *Id*. Instead, mere participation *will* be enough. *Id.* at 1206. ARTHUR PRINGLE III, Plaintiff, v. MARISA GARCIA, et al., Defendants, Case No. 2:09-cv-022-PPS, UNITED STATES DISTRICT COURT FOR THE **NORTHERN DISTRICT OF INDIANA, HAMMOND** DIVISION, 2013 U.S. Dist. LEXIS 20482, **February 13, 2013,**

Decided. In addition, conspiracy is a separate act of racketeering activity pursuant to Indiana Civil RICO. Indiana Code section 35-45-6-1 defines "racketeering activity" as meaning "to commit, to attempt to commit, **or to *conspire* to commit a violation**, or **aiding and abetting** [4] in a violation" of numerous statutory crimes, including theft and burglary. A "pattern of racketeering activity" is defined by Ind. Code § 35-45-6-1.

## CONCLUSION

For the foregoing reasons, the Court should grant the Plaintiffs' Motion for Partial Summary Judgment.

Sincerely,

Robert Holland, Pro Se

1120 Baker Street

Gary, Indiana 46404

TEL (219) 944-2323

---

[4] Indiana Civil RICO is much more expansive and easier to prove than its counterpart Federal RICO statute. Indiana Civil RICO does not require operation or management of the enterprise but just mere participation. Also, those who aid or abet can be found liable. Finally, conspiracy is considered a separate predicate act.

# UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF INDIANA

### CERTIFICATE OF SERVICE

I certify that on the 19th day of November, 2014, service of a true and complete copy of

the above and foregoing pleading or paper was made upon:

**The Clerk of the Court**, United States District Court, 5400 Federal Plaza, Hammond, IN
46320
**Judge Rudy Lozano**
7th Circuit District Court Judge
Northern District of Indiana, Hammond Division
5400 Federal Plaza, Hammond, Indiana 46320
TEL (219) 852-6700

**Jason R. Barclay and Mark D. Stuann**, Barnes & Thornburg, LLP, 11 South Meridian
Street, Indianapolis, IN 46204
Attorneys for Defendants Cerberus Capital Management, LP, Stephen Feinberg (CEO of
Cerberus Capital Management, LP), and Robert Nardelli (CEO of Cerberus O & AC,
LLC)
TEL (317) 231-7250

**Howard Godnick and Joshua Schonauer**, Schulte, Roth & Zabel, LLP, 919 Third
Avenue, New York, New York 10022
Attorneys for Defendants Cerberus Capital Management, LP, Stephen Feinberg (CEO of
Cerberus Capital Management, LP), Robert Nardelli (CEO of Cerberus O & AC, LLC),
Chrysler Financial, LLC (aka TD Bank, Group (N.A.))
TEL (212) 593-5955

**James P. Buchholz**, 127 W. Berry Street, Suite 1200, Fort Wayne, Indiana 46802
Attorney for Bosak Motors Auto Dealership, Mr. & Mrs. Skip Bosak (Owners of Bosak
Motors Auto Dealership), John Schultheis (General Manager, Bosak Motors), Jonathan
Jeffries (Service Manager, Bosak Motors)
TEL (260) 426-0545

**James Todd**, Weltman, Weinberg & Reis Co., LPA, 525 Vine St., Suite 800, Cincinnati,
Ohio 45202
Attorney for Chrysler Financial, LLC and Kimberly Johnson (Chrysler Financial
Collections/Repossession Unit)
TEL (513) 723-2200

**Paul Davis**

**CEO of Bull Dog Towing and Bull Dog Towing**

**Robert Holland**, Pro Se, Plaintiff, 1120 Baker Street, Gary, Indiana 46404
TEL (219) 427-4582

    \_\_\_\_X\_\_\_\_\_    By depositing in the U.S. Mail properly addressed and with sufficient first class postage affixed or the federal electronic filing system at the office of the clerk.

    _____    By personal delivery or fax.


Robert M. Holland III, Pro Se