**- FILED -**

**UNITED STATES DISTRICT COURT
FOR THE SEVENTH CIRCUIT
HAMMOND DIVISION**

MAR 05 2015

At _____ M
ROBERT N. TRGOVICH, Clerk
U.S. DISTRICT COURT
NORTHERN DISTRICT OF INDIANA

| | | |
|---|---|---|
| ROBERT HOLLAND, | ) | |
| Plaintiff | ) | |
| | ) | |
| VS. | ) | District Court Case No.: 2:13-CV-00491 |
| | ) | |
| CEBERUS CAPITAL | ) | |
| MANAGEMENT, LP, et al, | ) | |
| Defendants. | ) | |

**MOTION TO CORRECT ERRORS AND SET ASIDE**

Comes now the Plaintiff, Robert Holland, Pro Se, and files this Motion to Correct Errors

and Set Aside the judgment in this case pursuant to FRCP 59 and 60.  In support of this Motion

the Plaintiff Robert Holland states the following:

**DISCUSSION**

No damages hearing was held as scheduled on November 4, 2014.  The Clerk has already

entered default pursuant to Fed. R. Civ. P. 55(a) against the Defendants Paul Davis (Chrysler,

LLC) on July 17, 2014, (DE #60) and the CEO of Bull Dog Towing and Bull Dog Towing on

October 9, 2014, (DE #95).  Therefore, Holland's Requested Entry of Default Judgment Sum

Certain by the Clerk pursuant to Federal Rule of Civil Procedure 55(b) on November 10, 2014,

(DE #99) **must** be entered prior to this Court's Order of Judgment of November 18, 2014. Fed.

R. Civ. P. 55(a) and 55(b)(1).

A **default judgment** establishes, as a matter of law, that a defendant is liable to the

plaintiff for each cause of action in the complaint. *O'Brien v. R.J. O'Brien & Assocs., Inc.*, 998

F.2d 1394, 1404 (7th Cir. 1993).  There is no need for a damages hearing.  Holland's

submissions of the Requested Entry of Default Judgment Sum Certain by the Clerk pursuant to

Federal Rule of Civil Procedure 55(b) on November 10, 2014, (DE #99) with the attached

affidavits demonstrate the requisite proof as to the amount of damages. *Dundee Cement*, 722 F.2d at 1323; see also *Pope v. United States*, 323 U.S. 1, 12, 65 S. Ct. 16, 89 L. Ed. 3, 102 Ct. Cl. 846 (1994). (Also See DE #53 the Frowe Rule)  However, if this Court determines the damages have not been proven in DE #99, Holland requests a hearing to prove them.

## THE FEDERAL CLAIMS NOT CONSIDERED

The Court fails to consider the federal claims alleged in the complaint and proven by evidence submitted to the court for the purposes of conducting a damages hearing. (DE #1 and DE #99)  The Plaintiff alleges in his complaint that the defendants were engaged in illegal (debt) collection activities. (DE #1 P. 13 Par. 50)  The actions were that of a loan shark. Chrysler Financial, LLC, (a.k.a. Chrysler, LLC) through its agents the Bull Dog Towing Defendants robbed/wrongfully repossessed Holland's Chrysler 300.  Chrysler Financial by its conduct has violated the FDCPA 15 U.S.C. § 1692 (c)(3)(c), (d), (e)(2), (e)(8), (e)(10) and (f), FCRA 15 U.S.C. § 1681 n, o, p and s, ICPA, and IUCCC. (DE #1 P. 28 Par. 167)  The defendants were NOT acting in the course and scope of their employment in the traditional rendering of their services but were acting in concert committing predicate acts of racketeering that all occurred in a related concerted fashion in connection to the collection of an unlawful debt regarding the Chrysler 300.  The defendants could not further and complete their illegal objectives without cooperation from each other. (DE #1 P. 29 Par. 180-181)

Holland has also stated a claim under either 18 U.S.C. §1951 (extortion/Hobbs Act) or §1952 (Travel Act).  Holland established a Hobbs Act violation of extortion as a predicate act in a civil RICO claim in that he alleged an extortionate credit transaction, i.e. the illegal trespass, assault, robbery/wrongful repo of his Chrysler 300 Car by the defendants obstructed, delayed, or affected commerce or  the movement of any article or

2

commodity in commerce, by extortion or attempted or conspired to do so, or committed

or threatened physical violence to any person or property in furtherance of a plan or

purpose to do so." Heinrich, 668 F.3d at 406-407 (quotations and citations omitted).

Extortion is defined as "the obtaining of property from another, with his consent, induced

by wrongful use of actual or threatened force, violence, or fear, or under color of official

right." Id. quoting 18 U.S.C. § 1951(b)(2). Fear of economic harm can be sufficient under

a claim of extortion. Id.  In that Holland has alleged that (1) the defendants obtained

[Holland's car] property (2) through wrongful use of (3) threats or fear of physical or

economic harm." Id.  The Plaintiff Robert Holland has clearly done so here. (See attached

Exhibit **PREDICATE ACT #3 SCHEME TO DEFRAUD Wrongful Repo (Robbery)**)

**THE COLLECTION OF UNLAWFUL DEBT**

A defendant can violate any subsection of § 1962 if it collects or conspires to collect "an

unlawful debt." Section 1961(6) defines "unlawful debt" to include debt arising from the operation

of an illegal gambling business, or debts that are: (a) unenforceable because of state or federal laws

against usury; (b) incurred in connection with the business of lending money at an usurious rate;

and where (c) the usurious rate was at least twice the enforceable rate.  **If the debt is usurious,**

**the plaintiff need not establish any other criminal activity to establish RICO liability for the**

**collections of an unlawful debt. In other words, the collection of an unlawful debt itself**

**violates RICO even without a "pattern" of "racketeering activity."**  The collection of an

unlawful debt most often involves efforts to collect gambling debts or "loan-sharking" operations

that charge usurious rates.

(See also Kenty v. Bank One Columbus, N.A., No. 90-CV-0709, 1992 WL 170605, at *7-8 (S.D.

Ohio Apr. 23, 1992) (finding RICO's "pattern of racketeering requirement" to be

unconstitutionally vague in an action alleging fraudulent insurance activity). 18 U.S.C.A. § 1962.

See Durante Bros. & Sons, Inc. v. Flushing Nat'l Bank, 755 F.2d 239, 247-48 (2d Cir. 1985);

Sundance Land Corp. v. Cmty. First Fed. Sav. & Loan Ass'n, 840 F.2d 653, 666-667 (9th Cir.

1988); see also United States v. Eufrasio, 935 F.2d 553, 576 (3d Cir. 1991); Wright v. Sheppard,

919 F.2d 665, 673 (11th Cir. 1990); Robidoux v. Conti, 741 F. Supp. 1019, 1021-22 (D.R.I.

1990). See Durante Bros. & Sons, Inc., 755 F.2d at 247.)   Indiana's loan sharking statute makes

it a criminal offense to charge an interest rate twice that provided in the IUCCC. I.C. § 35-45-7-

2.

## THE USURIOUS INTEREST BY CHRYSLER, LLC

In some circumstances loan origination brokerage fees may be disguised interest, such

fees support a RICO claim when they violate state usury laws. Saglioccolo v. Eagle Ins. Co., 112

F.3d 226, 229 n.1 (6th Cir. 1997).  See Nolen v. Nucentrix Broadband Networks Inc., 293 F.3d

926 (5th Cir. 2002).  See Lovick v. Ritemoney Ltd., 378 F.3d 433, 439-444 (5th Cir. 2004).

The Supreme Court recognizes that in certain contexts the term "interest" can cause some

ambiguity. *Smiley v. Citibank (South Dakota)* N.A., 517 U.S. 735, 116 S. Ct. 1730, 1732, 135 L.

Ed. 2d 25 (1996) ("It would be difficult indeed to contend that the word 'interest' in the National

Bank Act is unambiguous . . . ."). This is true unless the state has no fixed maximum interest rate,

or the discount rate on ninety-day commercial paper in effect at the Federal Reserve Bank in the

bank's district, plus one percent, is higher than the state's maximum interest rate. 12 U.S.C. § 85.

Neither of these exceptions applied during the time period material to this case.  In 1996, the Office

of the Comptroller of Currency promulgated Regulation 7.4001, interpreting the term "interest" as

4

used in 12 U.S.C. § 85. 12 C.F.R. § 7.4001.   The exact meaning of this regulation is as follows in the relevant subsection:

> (a) Definition. The term "interest" as used in 12 U.S.C. § 85 includes any payment compensating a creditor or prospective creditor for an extension of credit, making available of a line of credit, or any default or breach by a borrower of a condition upon which credit was extended. **It includes, among other things, the following fees connected with credit extension or availability: numeric periodic rates, late fees, not sufficient funds (NSF) fees, overlimit fees, annual fees, cash advance fees, and membership fees.**  It does not ordinarily include appraisal fees, premiums and commissions attributable to insurance guaranteeing repayment of any extension of credit, finders' fees, fees for document preparation or notarization, or fees incurred to obtain credit reports. 12 C.F.R. § 7.4001(a) (emphasis added). This regulation draws a distinction between fees which compensate the bank for extending credit, and fees which reimburse the bank for actual expenses associated with the **loan.**

The Supreme Court addressed Regulation 7.4001(a) and the definition of interest by the Office of the Comptroller of the Currency was entitled to deference pursuant to *Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 81 L. Ed. 2d 694, 104 S. Ct. 2778 (1984). *See Smiley*, 116 S. Ct. at 1732-33. [2] **The Supreme Court held that late fees were interest under § 7.4001(a)**.  It further commented that the regulation draws a distinction "between those charges that are *specifically assigned* to such expenses [as insuring the **loan,**] and **those that are assessed for simply making the** loan, **or for the borrower's default," the latter being interest**; the former, not. 116 S. Ct. at 1734 (emphasis in original).  **Thus, customer charges unrelated to a specific expense incurred by the bank were termed**

5

**interest**; charges related to a specific expense were excepted.   Regulation 7.4001 is reasonable and entitled to deference.  **Late fees or other default charges that benefit only the bank is considered interest and does not of benefit to the borrower.  A default charge is interest, if the charge results from the default.**  As in the instant case, the Plaintiff Robert Holland was charged  illegally a default.  For this reason, the Supreme Court in *Smiley* held that late fees, imposed solely because a payment was not timely made, are interest. 116 S. Ct. at 1734.  Or, as the Supreme Court puts it, the charges are "specifically assigned" to such advancements. *Id.*

The regulation states examples of what is "included" when determining interest, followed by examples of what is "not ordinarily included" when determining interest. "Include" is a word of illustration, not limitation. *Cf. Enis v. Continental Illinois Nat'l Bank & Trust Co. of Illinois*, 795 F.2d 39, 42 (1986) ("The words 'include' and 'such as' show that the specific instances are illustrative, not exhaustive.").

Because the term "interest" as used in 12 U.S.C. § 85. 12 C.F.R. § 7.4001 and 12 U.S.C. § 85 includes any payment compensating a creditor or prospective creditor for an extension of credit, making available of a line of credit, or any default or breach by a borrower of a condition upon which credit was extended and **it includes, among other things, the following fees connected with credit extension or availability: numeric periodic rates, late fees, not sufficient funds (NSF) fees, overlimit fees, annual fees, cash advance fees, and membership fees,** the following charges by Chrysler Financial, LLC, (Chrysler, LLC) even though Holland had made payment as agreed are interest and adding these charges to the **loan** balance result in usurious rate of interest prohibited by federal and state law. The loan sharking

6

statute makes it a criminal offense to charge an interest rate twice that provided in the IUCCC. I.C. § 35-45-7-2.  The Complaint (DE #1) and (DE #99) alleges that

1) $703 was stolen from Holland and paid to Chrysler Financial, LLC (Chrysler, LLC) (DE #99 Exhibit 12 – Letter from Chrysler Financial)

2) The stolen bumper to bumper warranty was worth $1,400. (DE #1 P. 12 Par. 72)

3) The charge off amount or the amount that Chrysler stated that Holland still owed and was due placed on Holland's credit report was $6,490.00. (DE #99 Exhibit 12 P.2 – Credit Report of Robert Holland)

4) The APR on the loan was 10.760%. (DE #99 Exhibit 12 P.1 Chrysler Financial Letter)

5) The Chrysler 300 was sold at less than Fair Market Value at auction because the Fair Market Value four years later is $14,995. (DE #99 Exhibit 5).

6) The amount owed on the loan on August 6, 2009 was $22,575.72 and 11 payments were made at $703.00 per payment.   The interest subtracted per payment at that time was$186.35 or a principal reduction amount of approximately $517.00 per month. ($703.00-$186.35). (See DE #99 Exhibit 12 P. 1 Letter from Chrysler Financial, LLC)(Holland was not behind at the time of the repo on or about July 3, 2010) Therefore, the principal amount owed at the time of the robbery/wrongful repo was $22,575.72 - $5,687.00 or approximately $17,111.28.

The reasonable auction moneys received for the car at Fair Market Value should have completely paid the loan balance with a slight credit amount Chrysler, Financial, LLC would have to pay to Holland.  However, even if we look at a worst case scenario by using the

approximate principal balance at the date of the robbery/wrongful repo $17,111.28 minus the Fair Market Value of the Chrysler 300 four (4) years later of $14,995, we get an interest balance owed of $2,116.28.

However, when you consider the other things of value that were taken from the Plaintiff Robert Holland for the benefit of Chrysler Financial, LLC, (Chrysler, LLC) such as the $703 was stolen from Holland and paid to Chrysler Financial, LLC (Chrysler, LLC) (DE #1 P. 23 Par. 129-130, P. 26 Par, 151; DE #99 Exhibit 12 – Letter from Chrysler Financial) plus the stolen bumper to bumper warranty worth $1,400 (DE #1 P. 12 Par. 72) plus the charge off amount or the amount that Chrysler stated that Holland still owed and was due placed on Holland's credit report was $6,490.00. (DE #99 Exhibit 12 P.2 – Credit Report of Robert Holland), the interest was a total of $8,593,00. Thus, Chrysler Financial, LLC, had more than tripled the amount that was owed even under a worst case scenario. This is an interest rate increase of more than 100% in less than one month. The allegations in the complaint not only state a valid claim but the Damages exhibits (DE #99) prove the RICO violation for the collection of an unlawful debt.

## CONCLUSION

18 U.S.C. § 1961(6). The factual allegations in Holland's complaint (DE #1) and the evidence (DE # 99) support a claim that defendants were attempting to collect an unlawful debt when they unilaterally and abruptly changed the terms of his loan. (Loan Sharking) Holland's debt is alleged to be connected to debt is unenforceable under state or federal usury laws. (DE #1 P. 28 Par. 167) 18 U.S.C. § 1961(6); The interest on the Chrysler 300 car loan is 10.760% simple interest that was not adjustable. (DE #99 Exhibit 12 Chrysler

Financial Letter)   However, when Chrysler Financial, LLC, illegally and fraudulently induced Holland to pay a payment of $703, robbed/wrongfully repoed his car, took his warranty, and sold the car at auction for an unreasonable price charging him for the loss, this interest was more than double the statutory interest cap in Indiana. Therefore, Holland has stated and proven by a claim under RICO that Defendants attempted to collect an unlawful debt. (DE #1 and DE #99)

Respectfully submitted,

Robert M. Holland III, Pro Se
Plaintiff
1120 Baker Street
Gary, Indiana 46404
TEL (219) 433-7526

## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF INDIANA
### CERTIFICATE OF SERVICE

I certify that on the 5th day of March, 2015, service of a true and complete copy of the

above and foregoing pleading or paper was made upon:

**The Clerk of the Court**, United States District Court, 5400 Federal Plaza, Hammond, IN 46320

**Judge Rudy Lozano**
7th Circuit District Court Judge
Northern District of Indiana, Hammond Division
5400 Federal Plaza, Hammond, Indiana 46320
TEL (219) 852-6700

**Jason R. Barclay and Mark D. Stuann**, Barnes & Thornburg, LLP, 11 South Meridian Street, Indianapolis, IN 46204

9

Attorneys for Defendants Cerberus Capital Management, LP, Stephen Feinberg (CEO of Cerberus Capital Management, LP), and Robert Nardelli (CEO of Cerberus O & AC, LLC)
TEL (317) 231-7250

**Howard Godnick and Joshua Schonauer**, Schulte, Roth & Zabel, LLP, 919 Third Avenue, New York, New York 10022
Attorneys for Defendants Cerberus Capital Management, LP, Stephen Feinberg (CEO of Cerberus Capital Management, LP), Robert Nardelli (CEO of Cerberus O & AC, LLC), Chrysler Financial, LLC (aka TD Bank, Group (N.A.))
TEL (212) 593-5955

**James P. Buchholz**, 127 W. Berry Street, Suite 1200, Fort Wayne, Indiana 46802
Attorney for Bosak Motors Auto Dealership, Mr. & Mrs. Skip Bosak (Owners of Bosak Motors Auto Dealership), John Schultheis (General Manager, Bosak Motors), Jonathan Jeffries (Service Manager, Bosak Motors)
TEL (260) 426-0545

**James Todd**, Weltman, Weinberg & Reis Co., LPA, 525 Vine St., Suite 800, Cincinnati, Ohio 45202
Attorney for Chrysler Financial, LLC and Kimberly Johnson (Chrysler Financial Collections/Repossession Unit)
TEL (513) 723-2200

**Paul Davis**

**CEO of Bull Dog Towing and Bull Dog Towing**

**Robert Holland**, Pro Se, Plaintiff, 1120 Baker Street, Gary, Indiana 46404
TEL (219) 427-4582

_____X_____ By depositing in the U.S. Mail properly addressed and with sufficient first class postage affixed or the federal electronic filing system at the office of the clerk.
_____ By personal delivery or fax.

Robert M. Holland III, Pro Se

**EXHIBIT**

   **PREDICATE ACT #3 SCHEME TO DEFRAUD Wrongful Repo (Robbery) on or about 07/0310 and sale of stolen motor vehicle** includes Bad Faith Breach of Sales Contract Terms, Fraudulent Misrepresentations made in Breaching Sales Contract, Fraudulent Inducement to make last car payment of $703, Theft (Last car payment of $703), Trespass (Cullison vs. Medley 570 N.E. 2d 27, Ind. S. Ct. 1991), Invasion of Privacy (False light to public eye – neighbors saw repo and damage to credit resulting in denial of purchase of car), Assault, Breach of Peace - Massengill v. Indiana National Bank, 550 N.E.2d 97 (Ind. Ct. App. 1990), IND. CODE § 26-1-9-503. Id. at 99.   ;J. Sheldon & R. Sable, *Repossessions,* § 6.3 (1988); State v. Hart, 669 N.E.2d 762, 764 (Ind. Ct. App. 1996); Census Federal Credit Union v. Wann, 403 N.E.2d 348, 350 (Ind. Ct. App. 1980);  Wallace v. Chrysler Credit Corporation, 743 F. Supp. 1228 (W.D.Va. 1990), Harassment (Repo, damage to credit, attempts to collect unlawful debt), Robbery, Intentional Infliction of Emotional Distress, (FCRA) Dalton v Capital Associated Indus. (2001, CA4 NC) 257 F3d 409, 17 BNA IER Cas 1313. *See **Stevenson***, 987 F.2d at 296-97; (15 USCS §§ 1681 et seq),as well as for injury to one's reputation and creditworthiness. *Bryant v. TRW, Inc.*, 689 F.2d 72 (6th Cir.1982), Intimidation, Extortionate Credit Transactions (18 USCS 891-894), Money Laundering Section 1956-57 (I.C. 35-45-15-5), Interference with Commerce, Mail fraud Section 1341, Wire fraud section 1343, Bank Fraud Section 1344, Receiving Stolen Property I.C. 35-43-4-2, Collection of an Unlawful Debt, Fraudulent sale of Chrysler 300 at Auction (Trafficking in Motor Vehicles)(Interstate sale of stolen motor vehicles), FDCPA violated, FCRA violated, Lowry v Croft (In re Croft) (2013,

11

BC WD Tex) 500 BR 823; ***BMW of N. Am. Inc. v. Gore***, 517 U.S. 559, 568, 116 S. Ct. 1589, 134 L. Ed. 2d 809 (1996). (nondischargeable under 11 U.S.C.S. § 523(a)(2)(A)). **Sections** 2312 **and** 2313 **(relating to interstate transportation of stolen motor vehicles), sections** 2314 **and** 2315 **(relating to interstate transportation of stolen property - items in trunk of Chrysler 300).** Athey Products Corp. v. Harris Bank Roselle, 89 F.3d 430 (7th Cir. 1996); Indemnuled Capital Investments, SA v. R.i O'Brien & Assoc., 12 F.3d 1406 (7th Cir. 1993) (Interstate Transportation and Sale of Motor Vehicles) (Also see *Weeks v. Samsung Heavy Industries Co.,* 126 F.3d 926, 942 (7th Cir. 1997) (holding promissory fraud is actionable). (DE #1 P. 22-26 Par. 118-153**)**

**The Bull Dog Towing Defendants – Agents of Chrysler, LLC**

On or about on or about July 2, 2010, **(When)** (DE # 1 P. 23 Par. 125-127)**,** CEO of Bull Dog Towing (Bull Dog Towing) **(Who)** (DE # 1 P. 22 Par. 119), the Defendant CEO of Bull Dog Towing, Bull Dog Towing and representatives acting on behalf of Bull Dog Towing and others known and unknown ( c o m i n g   f r o m ) the offices Bull Dog Towing located at 641 Joliet Street, Dyer, Indiana 46311, in furtherance of the conspiracy, ( **W h e r e** ) acted in concert and did engage in actions of extortion, trespass, breach of the peace, wrongful repossession and theft/conversion   by taking the Chrysler 300 of Robert Holland ( **W h a t** )from his residence located in Gary, Indiana, **(Where)** (DE # 1 P. 22-23 Par. 119, 125-127), did in furtherance of the conspiracy, commit mail and wire fraud, 18 U.S.C. sections 1341 and 1343, by (1) the defendant's participation in a scheme to defraud; (2) defendant's commission of the act with intent to defraud; and (3) use of the mails or wire communication in furtherance of the fraudulent scheme." United States v. Walker, 9 F.3d 1245, 1249 (7th Cir.

12

1993). **(What)** Slaney, 244 F.3d at 599 (citation omitted); Windy City Metal Fabricators & Supply, Inc. v. CIT Technology Financing Services, Inc., 536 F.3d 663, 668 (7th Cir. 2008)

**The CEO of Bull Dog Towing** failed to correct the actions (robbery, money laundering, i.e., liquidation of Chrysler 300 and knowing facilitating the damage to Holland's credit) of his employees.  Holland demonstrated to the Bull Dog Towing Tow truck driver and employee who answered the phone at Bull dog towing that he had made his payment and requested that he receive his car. (DE #1 P. 24 Par. 140-141)  The CEO of Bull Dog Towing cannot be purposely indifferent, ignorant and put his head in the sand in order to escape liability. (DE #1 P. 7 Par. 20)  **Bull Dog Towing** benefitted from the illegal actions of its staff and thus is liable pursuant to RICO. (DE #1 P. 8 Par. 21; P. 22-26 Par.118-153 ; P. 26 Par. 154 -175; P. 29-32 Par. 176-186)  Finally, **the titles of each one of these defendants is given indicating there role and function in the conspiracy** (DE #1 Par. 15-19) allow the complaint to survive a Motion to Dismiss.

**The Cerberus Defendants Continued Control of Chrysler, LLC**

**The Chrysler, LLC (Chrysler Financial, LLC, aka (TDAF)) Defendants**

On or about on or about June 28, 2010 - July 2, 2010, **(When)** (DE # 1 P. 25 Par. 152)**,** (DE # 1 P. 16 Par. 65)**, Kimberly Johnson,** Manager of the Collections Department at Chrysler Financial, **(Who)** (DE # 1 P. 14 Par. 52), at the offices of the Chrysler Corporate Headquarters located at 2777 Inkster Road, Farmington Hills, Michigan 48334, i.e., and the Defendant CEO of Bull Dog Towing, Bull Dog Towing and representatives acting on behalf of Bull Dog Towing and others known and unknown located at the offices Bull Dog Towing located at 641 Joliet Street, Dyer, Indiana 46311, in furtherance of the conspiracy, acted in concert and did engage in actions of extortion, trespass, breach of the peace, wrongful repossession

and theft/conversion by taking the Chrysler 300 of Robert Holland from his residence located in Gary, Indiana, **(Where)** (DE # 1 P. 22 Par. 119), did in furtherance of the conspiracy, commit mail, wire fraud, bank fraud, extortion, Theft (money), Robbery (Chrysler 300), etc., 18 U.S.C. sections 1341 and 1343, by (1) the defendant's participation in a scheme to defraud; (2) defendant's commission of the act with intent to defraud; and (3) use of the mails or wire communication in furtherance of the fraudulent scheme." United States v. Walker, 9 F.3d 1245, 1249 (7th Cir. 1993). **(What)** Slaney, 244 F.3d at 599 (citation omitted); Windy City Metal Fabricators & Supply, Inc. v. CIT Technology Financing Services, Inc., 536 F.3d 663, 668 (7th Cir. 2008)

Holland **(Who)** had contacted Chrysler Collections Manager Kimberly Johnson **(Who)** on or about June 28, 2010, to confirm that a payment would be made by July 3, 2010, and requested her assurance that the car would not be repossessed. Holland made his payment as

as agreed. (DE #1 P. 23, 25 Par. 128-130, 150)**(What)** The telephone conversation took place with a Chrysler Collections employee and Kimberly Johnson.

Also, shortly after the robbery of the Chrysler 300 and warranty on July 3, 2010, (DE #1 P. 23 Par. 131) (A few days because of the Fourth of July, 2010 holiday), **(When)** Holland had another telephone conversation took place with a Chrysler Collections employee and Kimberly Johnson. This can be logically inferred from the allegations in the complaint because the telephone conversation with Ms. Johnson occurred prior to the follow up letter being sent. The follow up letter was sent on July 16, 2010. (DE #1 P. 25 Par. 144-145) The Plaintiff Robert Holland contacted Ms. Kimberly Johnson of Chrysler, LLC (Chrysler Financial Collections/Repossession Unit) and told her about the trespass, breach of the

14

peace, robbery/wrongful repossession, and Theft of his Chrysler 300 and warranty. In spite of the proof of payment as agreed with Chrysler, Ms. Kimberly Johnson of Chrysler, LLC, (Chrysler Financial Collections/Repossession Unit) refused to direct Bull Dog Towing to release the vehicle. (DE #1 P. 24 Par. 142-143) (**What**)

On or about July 16,2010, Robert Holland wrote Ms. Kimberly Johnson of Chrysler Financial Collections/Repossession Unit to follow up the telephone conversations with Ms. Johnson regarding the wrongful repossession of his 2006 Chrysler 300.(DE #1 P. 23 Par. 144) CEO of Chrysler, LLC, Robert Nardelli, Paul Davis (Supervisor Chrysler Customer Assistance Team, and Kimberly Johnson, Chrysler Financial Collections/Repossession Unit were all notified and given a copy of the letter sent to Ms. Kimberly Johnson requesting that the wrongful repossession be stopped on or about July 16, 2010.( DE #1 P. 24 Par. 145) **Paul Davis** ratified the conduct.

The CEO of the Chrysler Corporation and Chrysler Financial, LLC, Paul Davis, Supervisor Chrysler Customer Assistance Team, and Kimberly Johnson (DE #1 P. 23 Par. 129-130), Chrysler Financial Collections/Repossession Unit were all notified and given a copy of the letter sent to Ms. Kimberly Johnson requesting that the wrongful repossession be stopped on or about July 16, 2010. They refused.

Robert Nardelli had returned to Cerberus, where he was named CEO of Cerberus Operations and Advisory Company. In this role, Mr. Nardelli still had influence and control of Chrysler Financial operations particularly its collections to generate much needed cash flows and the reduction of costs. (DE #1 P. 23 Par. 123) **Mr. Nardelli** ratified the conduct of Chrysler, LLC.(DE #1 P. 25 Par. 145) Mr. Nardelli was ranked as one of the worst CEOs of all time (DE #1 P. 23 Par. 121) and had committed similar bad acts in the past. (DE #32, 45 and 46)

Therefore, **Chrysler, LLC** ratified the conduct and stole the Chrysler 300 and its warranty. (DE #1, #32, #45 and #46)

Payment was received by Chrysler Financial from Robert Holland based upon the fraudulent representations on or about July 2, 2010 and, shortly thereafter, the payment was deposited in the bank by Chrysler Financial.(Bank Fraud and Money Laundering)(DE #1 P. 26 Par. 151) Chrysler Financial committed further, wire fraud, money laundering and bank fraud, occurred when the Chrysler 300 was sold/liquidated at auction approximately a month later.(the end of July beginning of August 2010) )(DE #1 P. 26 Par. 152)

**The content of the fraudulent communications** were (DE #1 P. 17-22 Par. 67-117) regarding the Chrysler 300 (payment of car note, robbery and auction of car, and negative credit) and "bumper to bumper" warranty. (DE #1 P. 13-16 Par. 51-66 and P. 17-22 Par. 67-117)(P. 17-22 Par. 67-117 **(What)**

**The method by which the misrepresentation was communicated (How)** was by "extortion, trespass, wrongful repossession, theft, mail fraud, wire fraud, and bank fraud occurred on or about July 3, 2010, at the residence of Robert Holland located in Gary, Indiana and the fraud (telephone conversation with Chrysler Collections), mail fraud, wire fraud, and bank fraud occurred on or about June 28, 2010 - July 2, 2010 through the mail, documents and invoices, wire transfers disseminated from Chrysler Financial **affecting** interstate commerce (telephone, fax, electronic, email, U.S. Mail, newspaper and electronic communications) the false and fraudulent information regarding the Chrysler 300 was disseminated to the public (major credit bureaus) at large and Robert Holland in particular.

**ADMISSIBLE EVIDENCE PROVING PREDICATE ACT #3** (DE #1, #32, #45 #46 and #99)

16



08/06/09

ROBERT M HOLLAND
5014 W 17TH AVE
GARY, IN  46406-2328

Dear Customer and Co-Buyer (if applicable):

Based on your verbal authorization, and receipt of the extension fee noted below, we have extended your payment due date.

Please read this document carefully.  If you have any questions, contact us at 800-556-8172.

**RETAIN FOR YOUR RECORDS**

| Account Number 1002902372 | Months Extended | 01 | Next Payment Due 09/05/2009 |
|---|---|---|---|
| Amount Extended $22,575.72 | Days Extended | 00 | Old Maturity Date  09/05/2012 |
| APR              10.760 | Old Due Date | 08/05/2009 | New Maturity Date 10/05/2012 |
| | Pay this Estimated Finance Charge Amount | | $186.35 |

Buyer understands and agrees that the earned but unpaid Finance Charge together with all Accrued Finance Charges which accrue from 08/05/2009 to the date the next payment is made, will be collected from the next regularly scheduled payments made by Buyer.

Buyer further understands and agrees that this Agreement does not cause the Unpaid Principal Balance to be reduced as originally scheduled and, therefore, the amount Buyer is obligated to pay increases accordingly.

Chrysler Financial has extended and postponed the due date(s) of the payment and/or payments beyond the due date of the final payment under the contract referenced under the account number above and executed by you and any Co-buyer and held by Chrysler Financial or its assigns.  The terms and conditions of that contract, except as changed herein, remain in full force and effect.

You have the right at any time to pay in advance the unpaid balance due under this Agreement and you may be entitled to a partial refund of the finance charge.

*Bent Black*

Chrysler Financial

$ 703.00  Monthly Payment

84-291-6924 SIMPLE INTEREST

**EXHIBIT**

12

CHRYEXTSI2

P.1

**CHRYSLER FINANCIAL  #100290****
PO BOX 551080
JACKSONVILLE, FL 32255
Phone number not available

| | | | |
|---|---|---|---|
| Date Opened: | 08/21/2006 | Balance: | $6,490 |
| Responsibility: | Individual Account | Date Updated: | 11/29/2010 |
| Account Type: | Installment Account | Payment Received: | $0 |
| Loan Type: | AUTOMOBILE | Last Payment Made: | 08/13/2010 |
| | | High Balance: | $6,490 |
| | | Original ChargeOff: | $6,090 |

| | |
|---|---|
| Pay Status: | >Charged Off< |
| Terms: | $0 per month, paid Monthly for 1 months |
| Date Closed: | 07/31/2010 |
| >Maximum Delinquency of 60 days in 05/2010< | |

Remarks: >UNPAID BALANCE CHARGED OFF<
Estimated month and year that this item will be removed: 01/2017

| | 10/2010 | 09/2010 | 08/2010 | 07/2010 | 06/2010 | 05/2010 | 04/2010 | 03/2010 | 02/2010 | 01/2010 |
|---|---|---|---|---|---|---|---|---|---|---|
| Rating | C/O | N/R | N/R | C/O | | 60 | | | | |

| | 12/2009 | 11/2009 | 10/2009 | 09/2009 | 08/2009 | 07/2009 | 06/2009 | 05/2009 | 04/2009 | 03/2009 |
|---|---|---|---|---|---|---|---|---|---|---|
| Rating | OK | OK | OK | OK | OK | OK | OK | OK | OK | OK |

| | 02/2009 | 01/2009 | 12/2008 | 11/2008 | 10/2008 | 09/2008 | 08/2008 | 07/2008 | 06/2008 | 05/2008 |
|---|---|---|---|---|---|---|---|---|---|---|
| Rating | OK | OK | OK | OK | OK | OK | OK | OK | OK | OK |

| | 04/2008 | 03/2008 | 02/2008 | 01/2008 | 12/2007 | 11/2007 | 10/2007 | 09/2007 | 08/2007 | 07/2007 |
|---|---|---|---|---|---|---|---|---|---|---|
| Rating | OK | OK | OK | OK | OK | OK | OK | OK | OK | OK |

| | 06/2007 | 05/2007 | 04/2007 | 03/2007 | 02/2007 | 01/2007 | 12/2006 | 11/2006 | 10/2006 | 09/2006 |
|---|---|---|---|---|---|---|---|---|---|---|
| Rating | OK | OK | OK | OK | OK | OK | OK | OK | OK | X |

**CREDIT ONE BANK  #444796111819****
PO BOX 98872
LAS VEGAS, NV 89193-8872
(877) 825-3242

| | | | |
|---|---|---|---|
| Date Opened: | 03/02/2006 | Balance: | $0 |
| Responsibility: | Individual Account | Date Updated: | 10/08/2010 |
| Account Type: | Revolving Account | Payment Received: | $0 |
| Loan Type: | CREDIT CARD | Last Payment Made: | 12/28/2009 |
| | | High Balance: | $2,525 |
| | | Original ChargeOff: | $2,525 |
| | | Credit Limit: | $2,000 |

| | |
|---|---|
| Pay Status: | >Charged Off< |
| Date Closed: | 05/07/2010 |
| >Maximum Delinquency of 120 days in 06/2010 for $527 and in 08/2010< | |

Account Sale Info: ACCOUNT SOLD TO SOLD TO ANOTHER LENDER
Remarks: CLOSED
Estimated month and year that this item will be removed: 01/2017

| | 09/2010 | 08/2010 | 07/2010 | 06/2010 | 05/2010 | 04/2010 | 03/2010 | 02/2010 | 01/2010 | 12/2009 |
|---|---|---|---|---|---|---|---|---|---|---|
| Rating | C/O | 120 | 120 | 120 | 90 | 60 | | OK | OK | OK |

| | 11/2009 | 10/2009 | 09/2009 | 08/2009 | 07/2009 | 06/2009 | 05/2009 | 04/2009 | 03/2009 | 02/2009 |
|---|---|---|---|---|---|---|---|---|---|---|
| Rating | OK | OK | OK | OK | OK | OK | OK | OK | OK | OK |

8·1          ZIP CODE: 46404 | Sign in (or Sign up)

home    |    car values    |    cars for sale    |    car reviews    |    awards & top 10s    |    research tools

THE CADILLAC ATS

LEARN MORE ››
BUILD YOUR OWN ››
LOCATE A DEALER ››
REQUEST A QUOTE ››

Popular at KBB.com
10 Best Sedans Under $25,000

Advertisement                                                                    Why ads?

Home > Cars for Sale > Gary > Used Cars > Sedan > Chrysler > 300 > Details          Back to Results     Previous | Next

Used
# 2006 Chrysler 300

Share      Print

### Sale Price
## $14,955

Get Blue Book® Value



## I'm interested!

**Al Piemonte Nissan**
## 888-866-9470

**33 miles from you**
1600 W. North Ave
Melrose Park, IL 60160

View Dealer Website
View All Dealer's Inventory

**Email seller:**

| | |
|---|---|
| Subject: | Select subject |
| From: | your email address |

Hi! My name is [first name] [last name]

and I'm writing to you today to learn more about the
**Used 2006 CHRYSLER 300** listed for **$14,955.**

Comments (optional)

Characters left: 250

Please contact me at [phone number (optiona]

☑ I'd like to receive useful tips, tools and
resources via email from Kelley Blue Book.

Privacy Policy          [ Send message ]

## About this Car

### Seller's Comments

-OIL CHANGED, AND MULTI-POINT
INSPECTED- -LOW MILES!- -POPULAR COLOR
COMBO- -NHTSA FIVE STAR CRASH TEST
RATING!- This 300 looks great with a clean
Drk/Lt Slate Gray interior and Brilliant Black
Crystal Prl exterior! Please call to confirm that
this 300 is still available! Call us today to
schedule a hassle-free test drive! We are
located at: 1600 W. North Ave, Melrose Park,
IL 60160. - - - 2006 Chrysler 300 - - - 4dr Sdn
300

### Disclaimer

Price excludes taxes, license and title fees,
and a documentary service fee.

### Model Details from KBB

Specs
Consumer Reviews

Free Vehicle History Report for this
**2006 Chrysler - ONE OWNER**

View now

✓AutoCheck

Lock in a Great Loan Rate

Simply apply online

**RoadLoans**

### Key Details

- 45,935 Miles
- Brilliant Black Crystal Prl
- 6 Cylinder Engine
- Gasoline
- 4 Speed Automatic Transmission
- 2 Wheel drive - rear
- Four-Door Sedan
- Stock No: N5901

## Buyer's Resources

### Know your credit score?
Get yours now

Save on auto insurance
Get a free quote



EXHIBIT

5



Recently Viewed Cars   |   My Saved Cars     Save car



- VIN: 2C3KA43R96H108813

### Installed Options

- 4 Wheel Disc Brakes
- AM/FM Stereo
- Additional Power Outlet(s)
- Air Bag - Driver
- Air Bag - Passenger
- Air Conditioning
- Air Conditioning - Rear
- Bucket Seats
- CD Player
- Child Safety Locks
- Cloth Seats
- Cruise Control
- Engine Immobilizer/Vehicle Anti-Theft System
- Intermittent Wipers
- Mirrors-Pwr Driver
- Mirrors-Vanity-Driver
- Mirrors-Vanity-Driver Illuminated
- Mirrors-Vanity-Passenger
- Mirrors-Vanity-Passenger Illuminated
- Power Door Locks
- Power Driver Seat
- Power Steering
- Power Windows
- Reading Lamps-Front
- Reading Lamps-Rear
- Rear Defrost
- Remote Keyless Entry
- Remote Trunk Release
- Seat-Lumbar-Driver
- Seat-Lumbar-Passenger
- Seat-Rear Pass-Through
- Tilt Wheel
- Trunk-Emergency Release
- Wheels-Steel
- Wheels-Wheel Covers
- Wipers-Variable Speed Intermittent

**I want extended vehicle protection**
Get an extended car warranty quote

**How much can I afford?**
Use our monthly payment calculator

**How much can I get for my car?**
Get cash or trade in your current car fast

## About Al Piemonte Nissan

 **Al Piemonte Nissan**



### Contact Us:

**888-866-9470**

**Why Buy from Us?**

Al Piemonte Nissan also maintains a large selection of used vehicles. Our used inventory boasts foreign and domestic and everything from cars to SUVs to trucks. Each vehicle is safety checked to the highest standards and they are all in pristine condition. It a selection that can meet any budget!

**Services & Specialties**

- Service Center
- Factory Authorized Service Center
- Parts & Accessories
- Courtesy Shuttle
- Loaner Cars
- Rental Cars

**33 miles from you**
1600 W. North Ave
Melrose Park, IL 60160

Our Website

**Have questions?**

Send email





Recently Viewed Cars |



1 of 7

## Not the right car for you?  Other cars you might like near Gary

See more cars








| 2013 Chrysler 300 S | Stock Photo 2014 Chrysler 300 AWD | 2010 Chrysler 300 S | 2014 Chrysler 300 C | Stock Photo 2013 Chrysler 300 | 2014 Chrysler 300 |
|---|---|---|---|---|---|
| $33,987 | $36,760 | $20,998 | $44,085 | $35,230 | $33,485 |
| River Front Chrysler Jeep Dodge | Michigan City Chrysler Dodge Jeep | CarMax Naperville | Mancari Chrysler Dodge Jeep RAM... | Jack Wolf Chrysler-Jeep-Dodge-Ram | South Chicago Dodge Chrysler... |

Search:  Find car values or features

| Popular Topics | Car Reviews & News | Help | Company | Industry Relations |
|---|---|---|---|---|
| New Cars for 2014 | Car Reviews | FAQ | About Us | Advertising |
| Car Classifieds | Car Videos | Site Map | Contact Us | Media Center |
| Best Resale Value Awards | Auto Shows | Find a New Car | Careers | Linking Policy |
| 5-Year Cost to Own Awards | Car News | What's My Car Worth | Corporate Information | Business Solutions |
| Brand Image Awards | Best Cars | KBB℠ Mobile | | |

**Follow KBB**  Facebook  Twitter  Google+  YouTube  LinkedIn  RSS  **Mobile Apps**  iPhone®  Android™  Windows®

© 1995-2014 Kelley Blue Book Co.®, Inc. All rights reserved. Copyright & Trademarks | Terms of Service | Privacy Policy | Ad Choices

© 2014 Kelley Blue Book Co., Inc. All rights reserved. Kelley Blue Book assumes no responsibility for errors or omissions. By using this service, you accept the terms of the kbb.com General Terms of Service. Information about a particular vehicle listed for sale on kbb.com is supplied by the seller or another third party, not by Kelley Blue Book. The price and other terms of any sale are subject to direct negotiation between the buyer and the seller. The prices listed by sellers on kbb.com may exclude sales tax, finance charges, delivery, title, license, regulatory, dealer documentary, emission testing and compliance fees, any or all of which may be added to the listed price to arrive at the final sale price of a particular vehicle. Kelley Blue Book does not verify the information sellers supply and does not guarantee any vehicle offered by any seller. Kelley Blue Book provides this service and information without representations or warranties of any kind, either expressed or implied. (v.14062)

Recently Viewed Cars  |  My Saved Cars   Save car     8+1